**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| ŌURA HEALTH OY, | |
| Plaintiff, | Case No. 6:22-cv-478 |
| v. | |
| CIRCULAR SAS, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff **Ōura Health Oy**, ("Ōura" or "Plaintiff") files this Original Complaint for Patent Infringement against Defendant **Circular SAS** ("Circular" or "Defendant").

**NATURE OF THE ACTION**

1.      Ōura brings this an action against Circular for infringement of United States Patent Nos. 10,893,833 ("the '833 Patent) and 10,842,429 ("the '429 Patent) pursuant to the patent laws of the United States, 35 U.S.C § 1 *et seq.*  *See* Ex. A (the '833 Patent), Ex. B (the '429 Patent).

**PARTIES**

2.      Plaintiff Ōura is a Finnish osakeyhtiö with its principal place of business at Elektroniikkatie 10, 90590, Oulu, Finland.  Ōura has an office at 415 Mission Street, 37th Floor, San Francisco, California 94105.  Ōura is the owner by assignment of the '833 Patent and the '429 Patent.

3.      Defendant Circular is a French société par actions simplifiée, located at 34 Avenue des Champs-Elysées, 75008, Paris, France.  Circular is offering to sell its infringing product within the United States through its website, circular.xyz.

**JURISDICTION AND VENUE**

4.      This Court has original subject matter jurisdiction over this action in accordance with 28 U.S.C §§ 1331 and 1338(a) because this action arises under the patent laws of the United

1

States 35 U.S.C. § 101, *et seq*.

5.      This Court has personal jurisdiction over Circular because it is offering to sell its infringing products, the Circular Ring and corresponding application ("Circular App") within the geographical boundaries of this judicial district.  Circular's website is interactive and has numerous pages allowing people to educate themselves about the product.  The website also includes a chat function allowing persons residing in the district to interact with Circular.  The website notably has a prominent shop button.  Clicking the shop button directs the user to a page on Circular's website with a button to reserve the Circular Ring and other buttons to buy accessories, such as a ring sizing kit and a charger.  Ex. C (available at: https://www.circular.xyz/shop. Retrieved May 11, 2022).  Circular currently anticipates delivering ordered Circular Rings sometime between July and August of 2022.  *Id*.  Clicking the reserve button directs the user to a page to purchase a Circular Ring.  Ex. D (available at: https://www.circular.xyz/circular-product-ring.  Retrieved May 11, 2022).  Circular requests payment information to "reserve" the ring.  If the customer does not know their ring size, the customer may include a ring sizing kit in their purchase that Circular will ship to a desired address.  Ex. C; Ex. D.  Circular represents on its LinkedIn page that ring sizing kits will be shipped around the last week of April.  Ex. E (available at https://www.linkedin.com/company/circularing. Retrieved May 11, 2022).  Circular allows the purchaser to download a 3-D ring to print on a 3-D printer to establish a proper ring size.  Ex. D. Circular purports to have a Circular App that is downloadable onto the user's mobile device. Ex. D.  On information and belief, the Circular App can communicate with the Circular Ring through the mobile device's Bluetooth.  *Id*.  Circular's privacy policy demonstrates that personal data of its customers within the district, including health data, will be collected and contemplates transferring this data out of the United States.  Ex. F (available at:

https://www.circular.xyz/privacy-policy. Retrieved May 11, 2022).

6.      Circular, including Circular's co-founders Laurent Bsalis and Amaury Kosman, advertised attending and was an exhibitor at South by Southwest Conference and Festivals ("SXSW") in Austin, Texas on or around March 13 – 16, 2022 to market the Circular Ring at the Creative Industries Expo (Booth #1423). Ex. E; Ex. N (available at: https://www.linkedin.com/feed/update/activity:6908781006237659136.      Retrieved May 11, 2022).

7.      Circular has purposefully availed itself of the privileges and benefits of the laws of the State of Texas and the United States for at least these reasons. *See* Tex. Civ. Prac. & Rem. Code § 17.042.

8.      Venue is proper in this district under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

### Patents-in-Suit

9.      The Patents-in-Suit relate to, among other things, novel wearable devices, such as rings, for "analysing and processing biological signals[.]" Ex. A, 1:65-67; Figure 1. Analysis of the biosignals provides the wearer insights into their health, including a readiness score.

### '833 Patent

10.      The '833 Patent generally describes and claims a wearable electronic device including a body part, an electronic part, and a coating. The body part is made of a non-ceramic material and has a cavity. The depth of the cavity is arranged within an inner surface of the body part, and the electronic part is arranged in the cavity. The electronic part has a thickness less than the depth of cavity. The coating is made of a moldable filler material on the inner surface of the body part covers the electronic part. The disclosed wearable device can be a ring as shown below:



FIG. 1

Ex. A, Figure 1.

## '429 Patent

11.     The '429 Patent generally describes and claims a method and system of obtaining a user's movements, using the movements to determine a rest period or activity period, measuring biosignals during the rest period, determining a rest period summary, determining an activity summary, determining a body response summary based on the rest summary and activity summary, calculating a readiness score, and showing elements contributing to the readiness score and instructions related to physical activity and mental activity for improving the readiness score on a user interface of a mobile communication device.

12.     "The readiness score indicates a level of readiness of the user as well as the recovery of the user from the mental and physical load."  Ex. B, 10:3-5.  The readiness score takes into account the user's sleep and activity to help the user understand their readiness to tackle the challenges of the day.  The user is provided "appropriate instructions to improve the readiness score."  *Id*. at 2:37-40.  Below are two examples from the '429 Patent of instructions provided to the user to improve the readiness score:

For example, if the readiness score of the user is poor or low (such as about 40%) after doing exercise, the user may be instructed to take more rest such that the heart rate, heart rate variability and stress level return to normal state.  This in turn may

improve the readiness score related to the physical load.  Similarly, if the readiness score of the user is poor or low (such as about 40%) after a sleep, the user may be instructed to sleep longer or to do mild exercise to have good quality sleep, which in turn may improve the readiness score related to the mental load.

Ex. B, 10:43-52.

### Ōura's Product

13.     Ōura sells the Ōura Ring Generation 3 ("Ōura Ring").   The Ōura Ring is connectable to Ōura's mobile application ("Ōura App") installed on the wearer's mobile communication device, such as a cell phone.   Below are example images of the Ōura Ring and the readiness score shown on the Ōura App.



**Ōura Ring Generation 3**



**Readiness Score Shown on Ōura's App**

14.    The Ōura Ring includes multiple sensors, including infrared light emitting diodes ("LEDs"), red LEDs, green LEDs, temperature sensors, and an accelerometer.

15.    The information obtained from the sensors is used to determine, amongst other things, if the wearer is asleep or active.

16.    The Ōura App displays, amongst other things, the user's readiness score.  The readiness score is calculated based on several metrics, including resting heart rate (often abbreviated as RHR), heart rate variability (often abbreviated as HRV), body temperature, respiratory rate, sleep, sleep balance, the previous day's activity, activity balance, and a recovery index.

17.    If the wearer's readiness is suboptimal, the Ōura App shows a "pay attention" message with a red progress bar to show that the metric needs to be improved to increase the readiness score.  Ōura also provides other messages to the wearer, such as alerting the wearer to

use tools like Rest Mode to help improve the readiness score.

18.     The Ōura Ring practices the '833 Patent.  The Ōura Ring and Ōura App practice the '429 Patent.

**Circular's Product**

19.     On information and belief, the Circular Ring is connectable to the Circular App that is downloadable to the wearer's mobile communication device, such as a cell phone.  *See* Ex. D. On information and belief, the Circular App is able to communicate with the Circular Ring through the mobile communication device by Bluetooth technology.  *Id*.

20.     Circular determines an energy score for the wearer.  Ex. G (available at: https://www.circular.xyz/features.   Retrieved   May   11,   2022);   Ex.   H   (available   at: https://www.circular.xyz/.   Retrieved   May   11,   2022);   Ex.   I   (available   at: https://www.circular.xyz/post/understanding-the-circular-r-energy-score-are-you-ready-or-not-for-the-day. Retrieved May 11, 2022).  Circular analyzes numerous other metrics, including blood oxygenation, temperature, steps, sleep, breathing rate, and heart rate.  Ex. H.

21.     Below is an example image of the Circular Ring, an exploded view of the Circular Ring, and the energy score displayed on the Circular App.



**Circular Ring – Ex. D**



**Exploded View of the Circular Ring – Ex. G**



**Energy Score – Ex. G**

22.     The Circular Ring includes one infrared LED sensor, one red LED sensor, one green LED sensor, a 3-axis accelerometer, and one surface temperature sensor.  Ex. D.

23.     The Circular Ring and Circular App ("Accused System") obtain the user's movements by using sensors.  Ex. J (available at:   https://www.circular.xyz/post/what-are-biosensors. Retrieved May 11, 2022); Ex. K (available at: https://www.circular.xyz/help#FAQ. Retrieved May 11, 2022).  Circular's FAQ page also explains how Circular measures body signals:

> ### — How does Circular measure my body signals?
>
> The ring first collects the body signals it needs thanks to its biosensors (green, infrared & red optical pulse sensor, 3-axis accelerometer, and temperature sensors). The ring contains a built-in processor that will process the data and send the data by Bluetooth to the Circular mobile app for analysis. The Circular app uses machine learning to better understand your habits and offer a personal experience with personalized recommendations to improve your lifestyle.

**Excerpt from Circular's FAQ Page – Ex. K**

24.     On information and belief, Circular is able to automatically detect what activity the wearer is undertaking.  *See* Ex. H; Ex. K.  The Accused System can also identify if the wearer is running, biking, or swimming based on collected data.  Ex. H.  Below are examples of Circular's website stating that the Accused System can identify an activity:



**Excerpt from Circular's Home Page – Ex. H**

### — Does Circular track my heart rate during exercise?

**Yes**, Circular tracks heart rate during exercise and many other activities. It automatically detects the activity you are doing. You can also input your activities manually in the in-app calendar.

**Excerpt from Circular's FAQ Page – Ex. K**

25.    The Accused System can determine if the wearer is active or sleeping.  Ex. H; Ex. L (available at: https://www.circular.xyz/sleep. Retrieved May 11, 2022).  On information and belief, the Circular Ring obtains biosignals while the wearer is both active and sleeping.  Below are examples of Circular's website stating that the Accused System analyzes if the wearer is asleep or active:





**Examples of Circular Analyzing if the Wearer is Active or Sleeping – Ex. H**

26.     On information and belief, the Accused System determines an activity summary for the activity period based on the obtained movements of an activity period and the obtained movements of a previous activity period.  Ex. G.  Circular provides an activity overview, activity metrics, and activity graphs to the wearer as shown below in an excerpt from Ex. G.



Additionally, the Accused System tracks activities over multiple days as shown below in the feed of the Circular App.



**Example Feed from Circular App – Ex. G.**

Circular explains that the activity volume metric "looks at your activities over a period of 1 week."

Ex. I.  The body recovery metric checks the wearer's activity volume within the previous 48 hours.

*Id*.  Heart rate variability is also established over a period of time rather than just one day.  Ex. M

(available  at:   https://www.circular.xyz/post/how-to-use-heart-rate-variability-hrv-with-circular.

Retrieved May 11, 2022).

27.     Circular also tracks the wearer's sleep.  Ex. K; Ex. L.  Circular explains how it

tracks a wearer's sleep on its FAQ page, as shown below. Ex. K.

---

**How does Circular track my sleep?**

Circular tracks your sleep thanks to the correlation of the data collected by the PPG sensor, the temperature sensor, and the motion sensor. The biometrics of your body evolve during your sleep and your biometrics are in very specific states at each stage of your sleep. That's how the ring monitors whether or not you are sleeping and in what sleep stage you are in. Circular tracks many other sleep factors to let you understand your sleep and improve it in the long run.

---

28.     On information and belief, the Accused System determines a summary of the

wearer's rest (sleep) based on biosignals, including at least one biosignal from a previous period

of the wearer's rest.  Ex. G; Ex. I; Ex. K; Ex. L.  As shown below in an excerpt from Ex. G,

Circular provides the wearer with a sleep quality score, a sleep over-view, sleep metrics, and sleep graphs.



Additionally, the sleep quality score and sleep balance metric are evaluated on at least two nights of sleep as shown below in an excerpt from Ex. I.

Sleep quality score & balance

It takes a number of contributions into consideration to determine your 2 last night's sleep; whether you slept long enough but also evaluate if it was of good quality sleep.

29.     On information and belief, the Accused System determines a body response summary based on the user's activity summary and sleep summary.  For example, the Accused System determines the following parameters: a heart rate variability (HRV), resting heart rate (RHR), breathing rate (BR), activity volume, body recovery, sleep quality score and balance, temperature variation, and wake up score.  Ex. I.

30.     Circular makes clear that the energy score is "composed of your last days" heart

rate variability, resting heart rate, breathing rate, activity volume, body recovery, sleep quality score and balance, temperature variation, and wake up score.  *Id.*

31.    Per Circular's website, the energy score "reflects your energy level for the day based on your sleep and activity data. Get to know when you can push yourself to max out your daily performances or when you may take it easy."  Ex. G.  Circular's website also states that the energy score "is made up of many day and night contributors that evaluate your vitality."  Ex. H.

32.    As shown below, the user interface of the Circular App shows the elements contributing to the energy score.



**Display of Energy Score Metrics on Circular App – Ex. I**

33.    On information and belief, the Circular Ring sends recommendations to the wearer

to improve the energy score.  For example, the Circular App tells the user information about each component of the energy score, such as showing a green, red, or orange bar and a message saying "Good" or "Optimal" for the metric.  Additionally, Kira, Circular's digital assistant, may tell "you that you should be careful and rest a certain day because your body signals are poor."  Ex. I. Additionally, the user can see recommendations on the user interface of the Circular App shown below in an excerpt from Ex. G.



Kira sends alerts to the wearer "if something unusual is happening, recommends you [sic] how to improve your well-being at the right time and accompanies you on your mission to achieve better health."  Ex. H.

### Circular is Offering to Sell Its Product Within the United States

34.     Circular is offering to sell the Circular Ring within the United States and in this district.  Ex. C; Ex. D.

35.     Circular, as of May 11, 2022, is offering a pre-sale exclusive deal of 12% off the purchase price.  Ex. C.  As of May 11, 2022, the Circular Ring can be purchased for $264.  Ex. D.

36.     Circular provides a ring sizing kit to allow purchasers to size their Circular Ring. Ex. C; Ex. D.  On information and belief, the delivery of the ring sizing kits into the United States is imminent.  *See* Ex. E.

37.     Circular anticipates delivering the purchased Circular Rings between July and August of 2022.  Ex. C; Ex. D.

38.     On information and belief, Circular is planning to import Circular Rings into the United States.  On information and belief, Circular is planning to make the Circular App available for download in the United States.  On information and belief, Circular anticipates people using both the Circular Ring and the Circular App within the United States.

**Pre-Suit Communications between Ōura and Circular**

39.     On January 21, 2022, Ōura sent a cease and desist letter to Circular ("Cease and Desist Letter").  Circular responded on February 4, 2022, denying infringement which lead to additional communications between the parties.  In particular, Circular admitted to knowing of and studying Ōura's patents prior to the Cease and Desist Letter in an email dated February 15, 2022, and promised, but failed, to follow up with a substantive response explaining why its product did not infringe.  Ōura diligently followed up with Circular for this promised analysis over the course of about six weeks.  Circular repeatedly asked for more time before ultimately hiring a Mr. Jonathan Pearce in April.  Mr. Pearce declined to provide Ōura the promised analysis.

40.     As shown on their website, Circular has not stopped offering to sell the Circular Ring and Circular App within the United States despite the Cease and Desist Letter and their admitted knowledge of Ōura's Patents.

41.     On information and belief, Circular is still planning on importing the Circular Ring into the United States and still planning to make the Circular App available in the United States despite receipt of the Cease and Desist Letter.

## COUNT I

### Infringement of U.S Patent No. 10,893,833

42.     Ōura re-alleges and incorporates by reference the allegations contained in paragraphs 1-41 of this Complaint as if fully set forth herein.

43.     On January 19, 2021, the United States Patent and Trademark Office ("USPTO") issued the '833 Patent, entitled "Wearable Electronic Device and Method for Manufacturing Thereof."  Ōura is the owner through assignment.

44.     The '833 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

45.     The '833 Patent complies with 35 U.S.C. § 101 because the claims are not individually or in combination well-understood, routine, and/or conventional.

46.     On information and belief, Circular has directly infringed, and continues to infringe, the claims of the '833 Patent pursuant to 35 U.S.C. § 271(a) by offering to sell the Circular Ring within the United States, as described herein.

47.     On information and belief, Circular's infringement has been and continues to be willful.

48.     On information and belief, the Circular Ring has infringing features that were especially made or especially adapted for use in an infringement of the '833 Patent, are not a staple article or commodity of commerce, and have no substantial use that does not infringe the '833 Patent.  Circular has committed, and continues to commit, contributory infringement of the '833 Patent under 35 U.S.C. § 271(c) by offering to sell the Circular Ring within the United States.

49.     Circular has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least claim 1, of the '833 Patent

by offering to sell the Circular Ring within the United States.  Below is labeled exploded view of the Circular Ring found on Circular's website to assist with the mapping of claim 1 of the '833 Patent to the Circular Ring.  Ex. G.



**High Level Map of Claim 1 to the Circular Ring (annotation added)**

50.  On information and belief, the Circular Ring includes a body part, an electronic part, and a coating.

51.  On information and belief, the body part is made of a non-ceramic material.

52.  On information and belief, the body part includes an inner surface and an outer surface.

53.  On information and belief, the body part includes at least one cavity formed on the inner surface of the body part.

54.  On information and belief, the cavity extends from the inner surface of the body part towards the outer surface of the body part.

55.  On information and belief, the cavity has a depth arranged within the inner surface

of the body part.

56.     On information and belief, the electronic part is arranged in the cavity.

57.     On information and belief, the electronic part has a thickness that is less than the depth of the cavity.

58.     On information and belief, the coating is made of a moldable filler material on the inner surface of the body part.

59.     On information and belief, the coating is covering the electronic part and the cavity.

60.     Accordingly, on information and belief, Circular infringes at least claim 1 of the '833 Patent in violation of 35 U.S.C. § 271(a) and/or (c).

61.     As a result of Circular's infringement of the '833 Patent, Ōura has suffered monetary damages and seeks recovery in an amount adequate to compensate for that infringement.

62.     On information and belief, Circular has gained profits by virtue of its infringement of the '833 Patent.

63.     Circular has had knowledge of the '833 Patent since it received Ōura's Cease and Desist Letter dated January 21, 2022.

64.     On information and belief, Circular had knowledge of the '833 Patent prior to the Cease and Desist Letter.

65.     Circular's infringement of the '833 Patent continues to be intentional, deliberate, willful, and without regard to Ōura's rights at least because they had knowledge of the '833 Patent. On information and belief, Circular's infringement has continued to be intentional, deliberate, willful, and without regard to Ōura's rights after receipt of the Cease and Desist Letter.

66.     The facts and circumstances surrounding the subject of the lawsuit, on information and belief, make this an "exceptional case" under 25 U.S.C. § 285 and as such, Ōura is entitled to

recovery of attorney fees under 25 U.S.C. § 285.

## COUNT II

### Infringement of U.S Patent No. 10,842,429

67.    Ōura re-alleges and incorporates by reference the allegations contained in paragraphs 1-66 of this Complaint as if fully set forth herein.

68.    On November 24, 2020, the USPTO issued the '429 Patent, entitled "Method and System for Assessing a Readiness Score of a User." Ōura is the owner through assignment.

69.    The '429 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

70.    The '429 Patent complies with 35 U.S.C. § 101 because the claims are not individually or in combination well-understood, routine, and/or conventional.

71.    On information and belief, Circular has directly infringed, and continues to infringe, one or more claims of the '429 Patent pursuant to 35 U.S.C. § 271(a) by offering to sell the Accused System within the United States, as described herein.

72.    Additionally, Circular expects and intends people to use the Accused System within the United States in direct infringement of the '429 Patent, including using the user interface to show the elements contributing to the readiness score and/or to show instructions related to physical activity and mental activity for improving the readiness score.  As such, Circular has induced infringement of the '429 Patent under 35 U.S.C. §271(b).

73.    On information and belief, the Accused System has infringing features that were especially made or especially adapted for use in an infringement of the '429 Patent, are not a staple article or commodity of commerce, and have no substantial use that does not infringe the '429 Patent.  Circular has committed, and continues to commit, contributory infringement of the '429

Patent under 35 U.S.C. § 271(c) by offering to sell the Accused System within the United States.

74.    Circular has infringed and continues to infringe, literally, directly or indirectly, or under the doctrine of equivalents, one or more claims, including at least claim 1, of the '429 Patent by offering to sell the Accused System. Claim 1 is a method for assessing readiness of a user.  The Accused System assesses the readiness of the user by way of the energy score.  Ex. I.  The Accused System obtains the user's movements using sensors.  Ex. D; Ex. H; Ex. I; Ex. J; Ex. K; Ex. L.  The Accused System uses the obtained movements to determine the nature of a period, wherein the nature of the period is selected from an activity period and a rest period, because the Accused System can differentiate between a user being active and resting (e.g., sleeping).  Ex. G. Ex. H; Ex. K; Ex. L.  The Circular Ring measures at least one biosignal of the user during the rest period, as evidenced by the Accused System's ability to provide the user sleep metrics, such as showing sleep graphs.  Ex. G; Ex. H; Ex. I; Ex. K; Ex. L.  The Accused System determines a rest summary for the rest period, such as by generating the sleep quality score, sleep balance, and sleep overview. Ex. H; Ex. G; Ex. I; Ex. K; Ex. L.  The Accused System determines the rest summary based on the measured at least one biosignal and at least one biosignal of a previous rest period, as evidenced by references to multiple nights of sleep to determine sleep metrics.  Ex. G; Ex. I (the sleep quality and balance score is based on two nights of sleep); Ex. K; Ex. L.  The Accused System determines an activity summary for the activity period based on the obtained movements of an activity period and obtained movements of at least one previous activity period.  Ex. G; Ex. H; Ex. I (Activity Volume and Body Recovery are based on activities occurring over multiple days); Ex. J.  The Accused System determines a body response summary based on the rest summary and the activity summary.  Ex. I.  The Accused System calculates a readiness score based on the body response summary and a previous body response summary by calculating the energy score.  Ex. G; Ex. H;

Ex. I.  The Accused System's energy score indicates a level of readiness of the user, because the energy score "reflects your energy level for the day based on your sleep and activity data. Get to know when you can push yourself to max out your daily performances or when you may take it easy."  Ex. G; *see also* Ex. I.  The Circular App has a user interface, and the Circular App uses the user interface of the mobile communication device to show elements contributing to the readiness score as shown below:



**Excerpt from Ex. I**

The user interface also provides instruction related to physical activity and mental activity for improving the readiness score, such as shown by the colored bar and "Good' or "Optimal" prompt

in the above figure or by other messages and recommendations displayed on the user interface. Ex. G; Ex. I.

75.     Accordingly, on information and belief, Circular infringes at least claim 1 of the '429 Patent in violation of 35 U.S.C. § 271(a), (b), and/or (c).

76.     As a result of Circular's infringement of the '429 Patent, Ōura has suffered monetary damages and seeks recovery in an amount adequate to compensate for that infringement.

77.     On information and belief, Circular has gained profits by virtue of its infringement of the '429 Patent.

78.     Circular has had knowledge of the '429 Patent since it received Ōura's Cease and Desist Letter dated January 21, 2022.

79.     On information and belief, Circular had knowledge of the '429 Patent prior to the Cease and Desist Letter.

80.     Defendant's infringement of the '429 Patent has been and continues to be intentional, deliberate, willful, and without regard to Ōura's rights at least because they had knowledge of the '429 Patent.  On information and belief, Circular's infringement has continued to be intentional, deliberate, willful, and without regard to Ōura's rights after receipt of the Cease and Desist Letter.

81.     The facts and circumstances surrounding the subject of the lawsuit, on information and belief, make this an "exceptional case" under 25 U.S.C. § 285 and as such, Ōura is entitled to recovery of attorney fees under 25 U.S.C. § 285.

## **JURY DEMAND**

Ōura hereby requests a trial by jury on issues so triable by right.

## PRAYER FOR RELIEF

**WHEREFORE**, Ōura respectfully requests judgement against Defendant as follows:

A.      Enter judgment that Circular has infringed the '833 Patent and the '429 Patent and that such infringement was willful;

B.      Enter an Order enjoining Circular, its agents, officers, servants, employees, attorneys, and all persons in active concert or participation with Circular from further infringement of the '833 Patent and the '429 Patent, including making, using, selling, and importing the Circular Ring and Circular App;

C.      Award Ōura damages in an amount sufficient to compensate it for Circular's infringement of the '833 Patent and the '429 Patent, including enhanced damages, together with pre-judgment and post-judgment interest and costs in accordance with 35 U.S.C. § 284;

D.      Award Ōura an accounting for acts of infringement not presented at trial and an award by the Court of additional damages for any such acts of infringement;

E.      Declare this case to be "exceptional" under 35 U.S.C. § 285, at least in part due to Circular's willfulness, and award Plaintiff its reasonable attorney fees, expenses, and costs incurred in this action; and

F.      Award Plaintiff such further relief to which the Court finds Plaintiff entitled under law or equity.

Dated: May 11, 2022

Respectfully submitted,

By: */s/ John A. Yates*

John A. Yates
Attorney In Charge
Texas Bar No. 24056569
jyates@pattersonsheridan.com

B. Todd Patterson
Texas Bar No. 00789537
tpatterson@pattersonsheridan.com

Kyrie Cameron
Texas Bar No. 24097450
kcameron@pattersonsheridan.com

Edgar N. Gonzalez
Texas Bar No. 24097450
egonzalez@pattersonsheridan.com

Joshua H. Park
Texas Bar No. 24121766
jpark@pattersonsheridan.com

**Patterson + Sheridan LLP**
24 Greenway Plaza, Suite 1600
Houston, Texas 77046
(Tel): 713-623-4844
(Fax): 713-623-4846

Abelino Reyna
Texas Bar No. 24000087
areyna@pattersonsheridan.com

**Patterson + Sheridan LLP**
729 Washington Ave., Suite 200
Waco, Texas 76701
(Tel.): 254-777-5248
(Fax): 877-777-8071

*Attorneys for Plaintiff,*
*Õura Health Oy*