# EXHIBIT G

**Copy of a July 12, 2022 Letter to Mr. Jonathan Pearce from Jay Yates**

**Re: Ōura Health Oy v. Circular SAS, No. 6:22-cv-00478-ADA (WDTX)**



ATTORNEYS AT LAW
24 Greenway Plaza, Suite 1600
Houston, TX 77046-2472

Jay Yates
(713) 577-4817
jyates@pattersonsheridan.com

July 12, 2022

Jonathan P. Pearce
SoCal IP Law Group LLP
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362
jpearce@socalip.com

Re:   *Ōura Health Oy v. Circular SAS*, No. 6:22-cv-00478-ADA (WDTX)

Dear Mr. Pearce:

As you know, we represent Ōura Health Oy in the above captioned litigation and write in furtherance of our prior communications, including your July 5, 2022 email. As explained herein, Ōura has a good faith basis to serve Circular SAS ("Circular") through the Texas Secretary of State. We believe that Circular was properly served and that Circular's response to the Complaint is past due.

**The Texas Secretary of State is Circular's involuntary agent for service of process.** The Texas Secretary of State is an involuntary agent for service of process for a non-resident who "is required by statute to designate or maintain a resident agent or engages in business in this state, but has not designated or maintained a resident agent for service of process[.]" Tex. Civ. Prac. & Rem. Code § 17.044(a)(1). The Texas Secretary of State is also an involuntary agent for a non-resident "who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party." *Id*. at § 17.044(b). The broad "doing business" language "allows the statute to reach as far as the federal constitutional requirements of due process will allow." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009).

To our knowledge, Circular is not a resident entity of Texas and does not have a regular place of business in Texas. At the time of service, Circular did not have a registered agent in Texas. On information and belief, Circular has done business in Texas in accordance with Tex. Civ. Prac. & Rem. Code § 17.042. For example, Circular, including Circular's co-founders Laurent Bsalis and Amaury Kosman, advertised attending and was an exhibitor at South by Southwest Conference and Festivals ("SXSW") in Austin, Texas on or around March 13 – 16, 2022 to market the Circular Ring at the Creative Industries Expo (Booth #1423). *See* Dkt. 1, Exhibits E and N. On information and belief, Circular contracted with SXSW to have a booth, and also contracted for food, lodging, and travel within the state while marketing their infringing product. Circular is also doing business

Patterson + Sheridan, LLP
July 12, 2022
Page 2

in this state by offering to sell its infringing product on its website, https://www.circular.xyz/. *Id.* at Exhibits C and D. Additionally, Circular has committed a tort in whole or in part within Texas by offering to sell a product that infringes Ōura's asserted patents. Circular is not registered with the Texas Secretary of State, despite the requirement to register in order to transact business within the state. Tex. Bus. & Orgs. Code § 9.001.

Based on the foregoing, the Texas Secretary of State is an appropriate substitute agent for service of process for nonresident Circular under Tex. Civ. Prac. & Rem. Code § 17.044(a) and (b).

**Ōura properly served Circular through the Texas Secretary of State.** A foreign corporation can be served in a judicial district within the U.S. as described by Rule 4(e)(1). *See* Rule 4(h)(1). Ōura followed Texas law to serve the summons. *See* Rule 4(e)(1). Two copies of the summons and the Complaint were mailed to the Texas Secretary of State on May 19, 2022. The Texas Secretary of State is located in Austin, Texas, which is located in the Western District of Texas. The Texas Secretary of State certified that it received these documents on **May 20, 2022**, which were mailed to Circular on June 15, 2022. Dkt. 6. The Texas Secretary of State mailed the documents to the address listed as Circular's headquarters on Circular's website. This *Whitney* certificate[1] establishes that Circular was served. *Buffalo Patents, LLC v. ZTE Corp.*, No. W-21-CV-01065-ADA, 2022 U.S. Dist. LEXIS 101232, *14-17 (W.D. Tex. June 3, 2022). Texas law does not require that the defendant actually receive the mailed documents—just that the documents are mailed by the Texas Secretary of State. *Id.* at *16-17.

**France does not object to service by mail.** In *Buffalo Patents,* Judge Albright provided a roadmap to properly serving a foreign company through the Texas Secretary of State despite the complex web of state and federal law surrounding the issue. The Hague Convention was implicated because the Texas Secretary of State sent the documents to a signatory country. *Id.* at *20. Service was ineffective because the Plaintiff had the Texas Secretary of State mail service to China, a country that objects to Article 10 of the Hague Convention, which addresses service by mail. *Id.* The present facts are distinguishable from those of *Buffalo Patents* because France (unlike China) does not object to Article 10 of the Hague Convention, despite your assertion. *See e.g., Stallard v. Goldman Sachs Grp., Inc.*, 2022 U.S. Dist. LEXIS 2904 at 24-25 (D.D.C Jan. 6, 2022) (noting that France does not object to Article 10); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 473-74 (D.N.J. July 7, 1998) ("Article 10(a) allows service by mail unless a country has formally objected. However, neither France nor Italy have objected."). France's lack of objection to Article 10 is also readily available on the Hague Conference website: https://www.hcch.net/en/states/authorities/details3/?aid=256 ("no opposition").

In a 2021 opinion, Judge Albright determined that substitute service through the Texas Secretary of State was ineffective because the mail was sent to countries that objected to Article 10. *ACQIS*

---

[1] *See Buffalo Patents, LLC v. ZTE Corp.*, No. W-21-CV-01065-ADA, 2022 U.S. Dist. LEXIS 101232, *14 (W.D. Tex. June 3, 2022) ("Texas case law shows that a *Whitney* certificate is not merely sufficient, it also is necessary to establish that the defendant has been served with process.").

Patterson + Sheridan, LLP
July 12, 2022
Page 3

*LLC v. Lenovo Grp. Ltd.*, No. W-20-CV-00967-ADA, 2021 U.S. Dist. LEXIS 220720, *13-16 (W.D. Tex. Nov. 16, 2021). Judge Albright distinguished the facts of *ACQIS* from a prior case in which the Texas Secretary of State sent mail to Italy, a Hague signatory that does not object to service by mail. *Id.* (citing *West v. Velo Enter. Co., No.,* 5:13-cv-00024, 2013 U.S. Dist. LEXIS 203330, 2013 WL 12086781 (W.D. Tex. May 22, 2017)). Likewise, a defendant in Japan was properly served through the Texas Secretary of State because Japan did not object to service by mail despite being a signatory to the Hague Service Convention. *Paradigm Entertainment, Inc. v. Video Sys. Co.*, No. 3:99-CV-2004-P, 2000 U.S. Dist. LEXIS 2667, *20 (N.D. Tex. March 3, 2000). Judge Albright has also allowed service by mail under Rule 4(f)(2), in part, because Denmark did not object to Article 10(a). *Densys Ltd. v. 3Shape Trios A/S*, 336 F.R.D. 126, 130 (W.D Tex. June 4, 2020).

**We believe you are mistaken about France and service by mail.** In support of your position that France objects to service by mail, you did not provide a case citation or information provided by the Hague Convention or French Government. Instead, you only cited what appears to be a 2013 informational notice about service in France provided by the US Embassy. Nothing in that document indicates that France objects to service by mail. Instead, that document notes three available methods of serving someone in France. As noted above, United States courts and the French Government disagree with your position that France objects to service by mail.

In particular, you point to no authority that the three methods in the informational notice are the only available methods of serving someone in France. The Supreme Court of the United States has made clear that:

> Article 10(a) simply provides that, as long as the receiving state does not object, the Convention does not "interfere with . . . the freedom" to serve documents through postal channels. In other words, in cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law.

*Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1513 (2017).

The *Water Splash* test is satisfied. *First*, France does not object to service by mail under the Hague Convention. *Second*, Texas State Law authorizes substitute service of defendants through the Texas Secretary of State. Accordingly, we believe that Judge Albright is amenable to service by the Secretary of State because France does not object to Article 10(a).

**Circular's response is past-due.** In summary, Circular has been properly served through the Texas Secretary of State, and Ōura had a good faith basis for pursing this method of service. Ōura has not sidestepped any process procedures, but instead learned from the mistakes of prior plaintiffs attempting to serve a defendant through the Texas Secretary of State. Your assertion that France objects to service by mail is contrary to the findings of United States courts and the French government's own lack of objection to Article 10(a).

Patterson + Sheridan, LLP
July 12, 2022
Page 4

Circular had 21 days to respond to the Complaint once service was effectuated. *See* Fed. R. Civ. P. 12. Our interpretation of Rule 12 is that the 21 days ran from the date the Texas Secretary of State received the summons and complaint on May 20, 2022. This date is passed. Based on your focus on the "valid and complete" language of *Buffalo Patents*, we believe your position is that the 21 day period began to run on June 15, 2022. That date has also come and gone. In any event, Circular has failed to file a response to the Complaint.

**Circular has actual knowledge of the Complaint.** In your June 28, 2022 email, you alleged that we had "no proof [your] client ever received a copy of the complaint." That is, you raised the issue of Circular's actual knowledge of the lawsuit, and we pointed out that a Circular spokesperson provided a statement about the Complaint to at least Wareable on or around May 13, 2022. Moreover, we sent you a copy of the Complaint and the Waiver required by Rule 4 on May 12, 2022, which we assume was sent to your client in the course of your representation of Circular. Regardless, the statement in your July 5, 2022 email—"Your second assertion, 'Circular knows about the case' and, therefore, service is valid, is also legally irrelevant."—misreads our prior communication as well as the law.

Texas law does not require the defendant to receive a copy of the complaint for service by the Texas Secretary of State to be effective. *Buffalo Patents*, 2022 U.S. Dist. LEXIS 101232 at *16-17. But, this does not mean that knowledge of the suit is "irrelevant," and the relevancy of this fact has yet to be litigated. For example, Circular's knowledge of the suit is relevant for alternate service under Rule 4(f)(3). Indeed, Judge Albright allowed alternate service on counsel because the foreign Defendant was "[i]n all likelihood … already aware of the pending actions and demands service pursuant to the Hague Convention as a means of creating a procedural hurdle to timely litigation." *Terrestrial Comms LLC v. NEC Corp.*, No. 6-20-CV-00096-ADA, 2020 U.S. Dist. LEXIS 110983, *10-11 (W.D. Tex. June 24, 2020). Therefore, Circular's knowledge of the Complaint, which you originally raised, may very well be relevant to service.

**Alleged Lack of Damages.** Your July 5, 2022 email alleged a lack of damages. The assertion that "no products have even been sold by" Circular is at odds with what Circular has communicated on Kickstarter. At least 20 ordered Circular Rings have shipped as of July 11, 2022:

Patterson + Sheridan, LLP
July 12, 2022
Page 5



https://www.kickstarter.com/projects/circular-ring/circulartm-smart-ring-sleep-energy-performance-evolved/comments (accessed July 12, 2022).

Circular sent an update to customers, according to Lynn Martrell Mcphearson on Kickstarter, telling customers that Circular plans to finalize shipment of 200 units by the end of June, and the rest of batch 1 by the end of July. Additional batches will be shipped later in the year. Circular thanked Lynn Martrell Mcphearson for sharing this information in the comments, without any correction. And, at least one person at r/CircularRing posted about receiving their Circular Ring. https://www.reddit.com/r/CircularRing/comments/vrzgzu/got_this_in_the_mail_im_size_8_btw/ (accessed July 11, 2022). Indeed, the Circular App is downloadable to U.S. customers through the Apple Store. Most importantly, it is our understanding that Circular is charging and has charged customers up front for purchase of the Circular Ring.[2]

Regardless of damages, injunctive relief is available in competitor patent litigation.

---

[2] From https://www.circular.xyz/terms-of-sale (accessed July 12, 2022):

Orders are placed using the Website. You undertake to read the contact information notice for each Product. You shall then be asked to read the GCS, to agree to them unconditionally and to expressly acknowledge your payment obligation. You shall access the payment interface to pay the total amount of your order. A sale is considered complete when you have carried out the final approval and completed your payment. All paid orders constitute an agreement to the GCS, supplemented by the GCU, and to the prices and descriptions of the Products. Your order shall be confirmed by Circular via an email. A first email shall confirm the contractual contact information regarding orders and a second email shall provide you with a tracking number.

Patterson + Sheridan, LLP
July 12, 2022
Page 6

**Your request for settlement proposal.** Ōura appreciates your request for a "settlement proposal or any indication of how you think this dispute might resolve." However, Ōura does not believe this letter is the proper vehicle for a FRE 408 negotiation. Any settlement discussions will be in a follow up communication.

**Conclusion.** As discussed herein, Ōura's position on service is supported by state, federal, and international law; contrary to your baseless assertion, Ōura is not harassing Circular through an unauthorized method of service. Instead, Ōura has served Circular in compliance with Texas law and France's lack of objection to Article 10 to advance the litigation.

Ōura attempted to work with Circular to waive service. We mailed and emailed the waiver and complaint to your office on May 12, 2022, as required by Rule 4. Your office received the mailed copy on May 16, 2022. Circular never accepted the waiver. Your May 18, 2022 email indicated that you were conferring with prospective local counsel and that you believed that waiver of service allowed 60 days, rather than 90 days to respond to the complaint under the Rules (disputing the express language in the Waiver stating "or 90 days if it was sent outside the United States"). This May 18, 2022 email was in response to Ōura's offer to not oppose a motion to extend the deadline for an additional 30 days if service was waived. You told us to proceed if your "delay is too much." We never heard back from you on this point, and it is unclear if local counsel ever materialized. Unfortunately, Ōura was not surprised by your failure to timely respond, which was consistent with prior communications between my client and yours.

While we contemplate Ōura's next steps, which will undoubtedly include motion practice before the Court, we provide the analysis herein to rebut your allegations and to show that Circular's response is past due. Ōura expects Circular to respond to the Complaint, even if to assert insufficient service of process under Rule 12(b)(5).

Very truly yours,

PATTERSON + SHERIDAN LLP

*/s/ Jay Yates*

John "Jay" Yates