**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| Ōura Health Oy, | |
| Plaintiff, | Case No. 6:22-cv-00478-ADA |
| v. | |
| Circular SAS, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT
INJUNCTION AGAINST DEFENDANT CIRCULAR SAS,
<u>OR IN THE ALTERNATIVE, MOTION FOR ALTERNATE SERVICE</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

TABLE OF EXHIBITS ............................................................................................... vi

I.     INTRODUCTION ........................................................................................... 1

II.    RELEVANT FACTS ....................................................................................... 1

III.   THE COURT HAS JURISDICTION TO ENTER A DEFAULT JUDGMENT ................ 2

IV.    CIRCULAR WAS SERVED—BUT REFUSES TO ANSWER ....................................... 3

V.     ŌURA IS ENTITLED TO DEFAULT JUDGMENT ................................................... 9

  A.   Default Judgment is Procedurally Warranted ..................................................... 9

  B.   The Complaint Sets Forth Facts Sufficient to Establish Ōura is Entitled to Relief ........... 11

  C.   Ōura is Entitled to the Requested Relief .......................................................... 12

VI.    ŌURA IS ENTITLED TO MONETARY DAMAGES IN AN AMOUNT TO BE
       DETERMINED, BUT WILL FORGO A MONETARY DAMAGES AWARD FOR
       PAST INFRINGEMENT IF THE PERMANENT INJUNCTION IS GRANTED ........... 18

VII.   ŌURA IS ENTITLED TO RECOVER ITS REASONABLE ATTORNEY FEES AND
       COSTS ......................................................................................................... 18

VIII.  IN THE ALTERNATIVE, MOTION FOR ALTERNATE SERVICE ............................. 19

IX.    CONCLUSION ............................................................................................... 20

# **TABLE OF AUTHORITIES**

### CASES

*Apple Inc. v. Samsung Elecs. Co.*,
    809 F.3d 633 (Fed. Cir. 2015) ................................................................. 14

*Aprese Sys. Tex., LLC v. Audi AG*,
    No. 6:21-CV-01014-ADA, 2022 U.S. Dist. LEXIS 53901 (W.D. Tex. Mar. 25, 2022) ........ 19

*Aria Diagnostics, Inc.. v. Sequenom, Inc.*,
    726 F.3d 1296 (Fed. Cir. 2013) ............................................................... 12

*Babbala LLC v. Shenzhen Jia Yu Tong Tech. Co. Ltd.*,
    No. 6:20-CV-01032-ADA-JCM, 2022 U.S. Dist. LEXIS 127987 (W.D. Tex. Mar. 8, 2022) 10

*Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Tamraz*,
    No. 97 Civ. 4759 (SHS), 2006 U.S. Dist. LEXIS 39256 (S.D.N.Y June 13, 2006) ................ 6

*BidPrime, LLC v. SmartProcure, Inc.*,
    No. 1:18-CV-478-RP, 2018 U.S. Dist. LEXIS 180546 (W.D. Tex. Oct. 22, 2018) ................ 3

*Buffalo Patents, LLC v. ZTE Corp.*,
    No. W-21-CV-01065-ADA, 2022 U.S. Dist. LEXIS 101232 (W.D. Tex. June 3, 2022) .... 6, 7

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ................................................................................. 3

*Capitol Brick, Inc. v. Fleming Mfg. Co., Inc.*,
    722 S.W.2d 399 (Tex. 1986) .................................................................... 7

*Ceiva Logic Inc. v. Frame Media Inc.*,
    No. SACV 08-00636-JVS-RNBx, 2014 U.S. Dist. LEXIS 176328 (C.D. Cal. Dec. 19, 2014) ................................................................................................ 18

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
    664 F.3d 922 (Fed. Cir. 2012) ............................................................. 12, 13

*Crescent Services, Inc. v. Michigan Vacuum Trucks, Inc.*,
    714 F. Supp. 2d 425 (W.D.N.Y. May 12, 2010) ..................................... 18

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
    528 F.3d 696 (9th Cir. 2008) ................................................................ 18

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
    717 F.3d 1336 (Fed. Cir. 2013) ............................................................. 15

*DynaEnergetics Eur. GmbH v. Rock Completion Tools, LLC*,
No. 6:21-cv-00084, 2022 U.S. Dist. LEXIS 21085 (W.D. Tex. Feb. 4, 2022) ............... 11, 16

*eBay, Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) ........................................................................................... 12

*Eli Lilly & Co. v. Roussel Corp.*,
23 F. Supp. 2d 460 (D.N.J. July 7, 1998) .......................................................... 5, 6

*Golden Hour Data Sys. v. emsCharts, Inc*,
No. 2:06-CV-381-JRG, 2014 U.S. Dist. LEXIS 95640 (E.D. Tex. Mar. 31, 2014) ... 13, 14, 15

*Hybritech Inc. v. Abbott Labs.*,
849 F.2d 1446 (Fed. Cir. 1998) ......................................................................... 16

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) ........................................................................... 17

*In re Combat*, No. 3:19-md-2885,
2020 U.S. Dist. LEXIS 173730 (N.D. Fla. Feb. 18, 2020) ...................................... 6

*In re OnePlus Tech. (Shenzhen) Co., Ltd.*,
No. 2021-165, 2021 U.S. App. LEXIS 27282 (Fed. Cir. 2021) ................................. 20

*Jiaxing Super Lighting Elec. Appliance Co. v. CH Lighting Tech. Co.*,
No. 6:20-cv-00018-ADA, 2022 U.S. Dist. LEXIS 146033 (W.D. Tex. Aug. 16, 2022) ........ 12

*Joe Hand Promotions, Inc. v. Fusion Hookah, LLC*,
No. 1:19-CV-618-RP, 2020 U.S. Dist. LEXIS 218735 (W.D. Tex. Nov. 23, 2020) ............... 9

*John Perez Graphics & Design, LLC v. Green Tree Inv. Group, Inc.*,
No. 3:12-cv-4194-M,  2013 U.S. Dist. LEXIS 61928 (N.D. Tex. May 1, 2013) ................... 10

*Lindsey v. Prive Corp.*,
161 F.3d 886 (5th Cir. 1998) ............................................................................. 10

*Melia v. Les Grands Chais de France*,
135 F.R.D. 28 (D.R.I. 1991) ............................................................................... 6

*Moki Mac River Expeditions v. Drugg*,
221 S.W.3d 569 (Tex. 2007) .............................................................................. 4

*New York Life Ins. Co. v. Brown*,
84 F.3d 137 (5th Cir. 1996) ............................................................................... 9

*PACT XPP Techs., AG v. Xilinx, Inc.*, Case
No. 2:07-CV-563-RSP, 2013 U.S. Dist. LEXIS 125819 (E.D. Tex. Sept. 3, 2013) ............. 18

*Polymer Techs., Inc. v. Bridwell*,
    103 F.3d 970 (Fed. Cir. 1996) ................................................................ 15

*Portalp Int'l SAS v. Zuloaga*,
    198 So. 3d 669 (Fla. Dist. Ct. App. 2015) .............................................. 6

*Qin v. P'ships & Unincorporated Ass'ns on Schedule "A"*,
    2022 U.S. Dist. LEXIS 3298 (W.D. Tex. Jan. 7, 2022) .................................... 16, 17

*Retamco Operating, Inc. v. Republic Drilling Co.*,
    278 S.W.3d 333 (Tex. 2009) .................................................................. 4

*Rubbermaid Commercial Products, LLC v. Trust Commercial Products*,
    No. 2:13-cv-02144-GMN-GWF, 2014 U.S. Dist. LEXIS 142745 (D. Nev. Aug. 22, 2014) . 18

*Smith v. Intern., Inc. v. Hughes Tool Co.*,
    718 F.2d 1573 (Fed. Cir. 1983) ................................................................ 17

*Stallard v. Goldman Sachs Grp., Inc.*,
    No. 20-2703-RBW, 2022 U.S. Dist. LEXIS 2904 (D.D.C. Jan. 6, 2022) ................. 5, 6

*United Fin. Cas. Co. v. Spirit of the Lion, LLC*,
    No. MO:19-CV-7-DC, 2020 U.S. Dist. LEXIS 164218 (W.D. Tex. July 16, 2020) ........... 2

*Water Splash, Inc. v. Menon*,
    137 S. Ct. 1504 (2017) ........................................................................ 6

*Whitney v. L & L Realty Corp.*,
    500 S.W.2d 94 (Tex. 1973) .................................................................... 7

*Wooten v. McDonald Transit Assocs. Inc.*,
    788 F.3d 490 (5th Cir. 2015) .................................................................. 11

*WSOU Invs., LLC v. TP-Link Techs. Co.*,
    No. 6:20-cv-1012-ADA-6:20-cv-1022-ADA, 2021 U.S. Dist. LEXIS 167111 (W.D. Tex. Sept. 1, 2021) ......................................................................................... 19

*Ziegler v. Subalipack (M) SDN BHD*,
    No. H-16-2598, 2018 U.S. Dist. LEXIS 110777 (S.D. Tex. July 3, 2018). ............ 8

## STATUTES

28 U.S.C. § 1331 ...................................................................................... 2

28 U.S.C. § 1338(a) .................................................................................. 2

28 U.S.C. § 1391 ...................................................................................... 3

35 U.S.C. § 101 ............................................................................................................... 3

35 U.S.C. § 271 ............................................................................................................. 20

35 U.S.C. § 283 ....................................................................................................... 12, 20

35 U.S.C. § 284 ............................................................................................................. 18

35 U.S.C. § 285 ................................................................................................... 11, 18, 20

TEX. BUS. & ORGS. CODE § 9.001 ................................................................................. 5

TEX. CIV. PRAC. & REM. CODE § 17.042 ................................................................... 3, 5

TEX. CIV. PRAC. & REM. CODE § 17.044 ...................................................................... 4

## RULES

FED. R. CIV. P. 12 ........................................................................................................... 2

FED. R. CIV. P. 4 ............................................................................................... 3, 5, 6, 20

FED. R. CIV. P. 54(d) ................................................................................................ 19, 20

FED. R. CIV. P. 55 ................................................................................................... 1, 9, 12

FED. R. CIV. P. 8 .................................................................................................... 10, 12

Local Rule CV-54 ......................................................................................................... 19

Local Rule CV-7 ............................................................................................................. 1

## TREATIES

Article 1 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in
    Civil and Commercial Matters, Nov. 15, 1965 (Hague Service Convention), 20 U. S. T. 361,
    T. I. A. S. No. 6638 ............................................................................................................. 19


Article 10 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in
    Civil and Commercial Matters, Nov. 15, 1965 (Hague Service Convention), 20 U. S. T. 361,
    T. I. A. S. No. 6638 .......................................................................................................... 5, 6

**TABLE OF EXHIBITS**

| Ex. No. | Name | Cross-Cite to Related Docket Entry |
|---|---|---|
| A | Declaration of John A. Yates in Support of the Motion for Default Judgment and Permanent Injunction, and in the alternative, Motion for Alternate Service | |
| B | Excerpt of Circular's Website retrieved on August 20, 2022 at: https://www.circular.xyz/about-circular | 8-2 |
| C | Excerpts of the General Terms & Conditions of Sale of Circular, retrieved on August 23, 2022 at:  https://www.circular.xyz/terms-of-sale | 8-3 |
| D | Excerpts of the General Conditions of Use for Circular, retrieved on August 23, 2022 at:  https://www.circular.xyz/terms-of-use | 8-4 |
| E | Copy of an Assignment, Reel: 056605 Frame 0991, submitted by Circular to the United States Patent and Trademark Office, retrieved on August 18, 2022, from the United States Patent and Trademark Office. | 8-5 |
| F | Copy of a printout of an English version of an Infogreffe, retrieved on August 20, 2022, at: https://www.infogreffe.fr/entreprise-societe/850542804-circular-750121B164370000.html?typeProduitOnglet=EXTRAIT &afficherretour=tru | 8-6 |
| G | Copy of a July 12, 2022 sent to Mr. Jonathan Pearce | 8-7 |
| H | Copy of a printout of a May 13, 2022 article published by Wareable.com, retrieved August 20, 2022, at: https://www.wareable.com/wearable-tech/oura-sues-circular-as-smart-rings-go-to-war-8798. | 8-8 |
| I | Copy of a printout of a May 13, 2022 article published by Engagenet, retrieved on August 20, 2022, at: https://www.engadget.com/oura-circular-smart-ring-lawsuit-133032301.html. | 8-9 |
| J | Printout of the Apple Store website showing the Circular App, retrieved August 19, 2022 at: https://apps.apple.com/US/app/circular-ring/ | |

| Ex. No. | Name | Cross-Cite to Related Docket Entry |
|---------|------|-----------------------------------|
| K | Printout of a July 18, 2022 post authored by Mr. Pearce, Retrieved on August 20, 2022 at:  https://socalip.org/socal-ip-law-institute-mcle-meeting-june-20-2022-2/ | |
| L | Excerpt of website retrieved on August 19, 2022 at: https://www.circular.xyz/ | |
| M | Excerpt of website retrieved on September 7, 2022 at: https://www.circular.xyz/shop | |
| N | Excerpt of website retrieved on August 21, 2022 at: https://www.indiegogo.com/projects/circular-smart-ring-sleep-energy-performance#/updates/all | |
| O | Declaration of Ralph Morales III in Support of Injunctive Relief | |

Plaintiff Ōura Health Oy ("Ōura") respectfully moves for entry of default judgment and permanent injunction against Defendant Circular SAS ("Circular").

## I.    INTRODUCTION

Ōura is asking the Court through this motion to stop Circular's ongoing patent infringement.  Circular is a French company competing with Ōura by offering to sell infringing devices, namely the Circular Ring and corresponding application ("Circular App"), to residents of this District via its website.

Circular has failed to appear or answer despite having been served and having full knowledge of the suit.  Ōura has requested the clerk to enter default (Dkt. 8), which was served on Circular's counsel, Jonathan Pearce, on August 23, 2022.  Ex. A, Declaration of John A. Yates, at ¶19.  Circular has not timely opposed the motion to enter default, which means the motion may be treated as unopposed per Local Rule CV-7 and that Circular has waived its objections.

Circular has continued to infringe with impunity while ignoring this suit and appears to be gearing up to ship its knock-off Circular Rings into the United States later this year, and may have already shipped at least one ring to a customer in the United States.  Ōura respectfully requests that the Court enter a default judgment under FED. R. CIV. P. 55(b) and enter a permanent injunction against Circular.

## II.    RELEVANT FACTS

Ōura filed the Complaint commencing this suit against Circular on May 11, 2022, asserting infringement of United States Patent Nos. 10,893,833 ("the '833 Patent") and 10,842,429 ("the '429 Patent") ("Asserted Patents").  Dkt. 1, ¶1.  The Complaint sets forth that Ōura was duly and legally issued the '833 Patent entitled "Wearable Electronic Device and Method for Manufacturing Thereof" on January 19, 2021.  *Id.* at ¶¶43-44.  The Complaint sets forth that Ōura was duly and

legally issued the '429 Patent, entitled "Method and System for Assessing a Readiness Score of a User" on November 24, 2020. *Id.* at ¶¶68-69.

Circular is a French société par actions simplifiée, purportedly located at 34 Avenue des Champs-Elysées, 75008, Paris, France. Circular is a French company, and is not a resident entity of Texas nor does it have a regular place of business in Texas. Ex. A at ¶3. Nor is Circular a minor, incompetent, or in the military service. *Id.* Circular is offering to sell its infringing Circular Ring and Circular App within the United States through its website. Dkt. 1, at ¶¶3, 34-38. The Circular Ring infringes, directly or indirectly, at least claim 1 of the '833 Patent. *Id.* at ¶¶42, 46, 48-60. The Circular Ring and Circular App ("Accused System") infringes, directly or indirectly, at least claim 1 of the '429 Patent. *Id.* at ¶¶67, 71-75. Ōura put Circular on notice of the infringement prior to the lawsuit. *Id.* at ¶39. Circular admitted knowing of and studying Ōura's patents prior to suit. *Id.* at ¶39. Ōura has been, and continues to be, harmed by Circular's willful infringement. *Id.* at ¶¶60-66, 75-81.

On May 20, 2022, Circular was served on its involuntary agent for service of process, the Texas Secretary of State ("Secretary of State"). Ex. A, at ¶¶5, 6; Dkt. 6; Dkt 7-1. Under FED. R. CIV. P. 12(a), an answer or other responsive pleading was due on June 10, 2022. Circular has failed to file an answer or responsive pleading, or otherwise appear. Nor has Circular appeared or opposed Ōura's Request for Entry of Default (Dkt. 8), which is pending.

## III.    THE COURT HAS JURISDICTION TO ENTER A DEFAULT JUDGMENT

A plaintiff must make a *prima facie* showing of jurisdiction for a Court to enter default judgment. *United Fin. Cas. Co. v. Spirit of the Lion, LLC*, No. MO:19-CV-7-DC, 2020 U.S. Dist. LEXIS 164218, *7 (W.D. Tex. July 16, 2020). This Court has original subject matter jurisdiction over this action in accordance with 28 U.S.C. §§ 1331 and 1338(a) because this action arises under

the patent laws of the United States 35 U.S.C. § 101, *et seq.*  Venue is proper in this district under 28 U.S.C. § 1391 since Circular is a non-resident.

The Court also has personal jurisdiction over Circular.  A single contact with a forum can be sufficient to establish jurisdiction over a defendant if the contact "creates a 'substantial connection' with the forum."  *BidPrime, LLC v. SmartProcure, Inc.*, No. 1:18-CV-478-RP, 2018 U.S. Dist. LEXIS 180546, *4 (W.D. Tex. Oct. 22, 2018) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985)).  In this case, Circular came to Austin, Texas to market its infringing product at South by Southwest Conference and Festivals ("SXSW") on or around March 13-16, 2022.  Dkt. 1-5, at 3.  Co-founders Laurent Bsalis and Amaury Kosman came to Texas.  Dkt. 1-14, at 2.  Circular also targets customers in Texas, and the United States at large, with its interactive website that allows Texans to purchase a Circular Ring and chat directly with Circular.  Dkt. 1, at ¶5; Dkts. 1-3, 1-4.  The Circular App is currently downloadable in this district through at least Apple's App Store.  Ex. J.  Circular's privacy policy demonstrates that personal data of its customers within the district, including health data, will be collected, and contemplates transferring this data out of the United States.  Dkt. 1, at ¶5; Dkt. 1-6, at 6.  Circular has purposefully availed itself of the privileges and benefits of the laws of the State of Texas and the United States for at least these reasons.  *See* TEX. CIV. PRAC. & REM. CODE § 17.042.  Circular's activities are such that Circular can reasonably anticipate being brought into Court in Texas.

## IV.    CIRCULAR WAS SERVED—BUT REFUSES TO ANSWER

Ōura sent Circular's counsel, Mr. Pearce,[1] a copy of the Complaint and waiver required by FED. R. CIV. P. 4 on May 12, 2022.  Ex. A, at ¶2.  A Circular spokesperson provided a statement

---

[1] Circular directed Ōura to Mr. Pearce after reneging on a pre-suit promise to explain why its products did not infringe.  *See* Dkt. 1, at ¶39.

about the Complaint to at least the publication Wareable.com on or around May 13, 2022.  Ex. H,
Ex. I.  On May 16, 2022, Mr. Pearce initially responded saying that he could not accept service
before reaching out to the undersigned counsel regarding a potential agreement to accept the
waiver.  Ex. A, at ¶2.  Mr. Pearce indicated in a May 18, 2022, email that he was conferring with
prospective local counsel regarding the rules of Waiver, as there was a disagreement between the
parties as to whether Circular had 60 or 90 days to respond if the Waiver was accepted.  *Id.* at ¶2.
Ōura's position was that Circular would have 90 days as a foreign defendant.  *Id.*  Mr. Pearce's
email told Mr. Yates to proceed if his "delay is too much[.]"  *Id.*; Ex. G.  It is unclear if local
counsel ever materialized.

The Secretary of State is an involuntary agent for service of process for a non-resident who
"is required by statute to designate or maintain a resident agent or engages in business in this state,
but has not designated or maintained a resident agent for service of process[.]"  TEX. CIV. PRAC.
& REM. CODE § 17.044(a)(1).  The Secretary of State is also an involuntary agent for a non-resident
"who engages in business in this state, but does not maintain a regular place of business in this
state or a designated agent for service of process, in any proceeding that arises out of the business
done in this state and to which the nonresident is a party."  *Id*. at § 17.044(b).  The "broad doing
business language 'allows the [Texas long-arm] statute to reach as far as the federal constitutional
requirements of due process will allow.'"  *Retamco Operating, Inc. v. Republic Drilling Co.*, 278
S.W.3d 333, 337 (Tex. 2009)(quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569,
575 (Tex. 2007)) (citations omitted)).

Circular is not a resident entity of Texas and does not have a regular place of business in
Texas.  Ex. A, at ¶3.  At the time of service, Circular did not have a registered agent in Texas.  *Id.*
at ¶5.  On information and belief, Circular has done business in Texas in accordance with TEX.

CIV. PRAC. & REM. CODE § 17.042.  *Id* at ¶4.  For example, Circular, including Circular's co-founders Laurent Bsalis and Amaury Kosman, advertised attending and was an exhibitor at SXSW in Austin, Texas on or around March 13-16, 2022 to market the Circular Ring at the Creative Industries Expo (Booth #1423).  *Id.*; *See* Dkts. 1-5, 1-14.  On information and belief, Circular contracted with SXSW to have a booth, and also contracted for food, lodging, and travel within the state while marketing their infringing product.  Ex. A, at ¶4.  Circular is also doing business in this state by offering to sell its infringing product on its website, https://www.circular.xyz/.  *Id.*; Dkts. 1-3, 1-4.  Additionally, Circular has committed a tort in whole or in part within Texas by offering to sell a product that infringes Ōura's Asserted Patents.  Circular is not registered with the Secretary of State, despite the requirement to register in order to transact business within the state. *See* TEX. BUS. & ORGS. CODE § 9.001.

A foreign corporation may be served in a judicial district within the U.S. as described by FED. R. CIV. P. 4(e)(1).  *See* FED. R. CIV. P. 4(h)(1).  Texas law allows substitute service on the Secretary of State.  Mr. Pearce acknowledged that Texas has rules that allow service of foreign corporations by the Secretary of State in a post on his firm's website dated July 18, 2022.  Ex. K. France does not object to Article 10 of the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Service Convention), 20 U. S. T. 361, T. I. A. S. No. 6638.  *See e.g., Stallard v. Goldman Sachs Grp., Inc.*, No. 20-2703-RBW, 2022 U.S. Dist. LEXIS 2904 at *24-25 (D.D.C. Jan. 6, 2022) (noting that France does not object to Article 10); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 473-74 (D.N.J. July 7, 1998) ("Article 10(a) allows service by mail unless a country has formally objected.  However, neither France nor Italy have objected").  France's lack of objection to Article

$10^2$ is also readily available on the Hague Service Convention website: https://www.hcch.net/en/states/authorities/details3/?aid=256 ("no opposition").  Service by mail to France "is permissible" because "receiving state has not objected to service by mail [under Article 10(a)]; and second, service by mail is authorized" by Texas law.[3]  *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1513 (2017); *Buffalo Patents, LLC v. ZTE Corp.*, No. W-21-CV-01065-ADA, 2022 U.S. Dist. LEXIS 101232, *8-18 (W.D. Tex. June 3, 2022) (service through Secretary of State ineffective because China objects to Article 10(a)).

Courts have also allowed service by mail to France.  *See e.g.*, *Stallard*, 2022 U.S. Dist. LEXIS 2904 at 24-26 (noting that service by mail under Fed. R. Civ. P. 4(f)(2)(c)(ii) to a defendant in France was permissible in view of *Water Splash* and Article 10); *In re Combat*, No. 3:19-md-2885, 2020 U.S. Dist. LEXIS 173730, at *18-21 (N.D. Fla. Feb. 18, 2020) (permitting service of subpoena by mail to France); *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Tamraz*, No. 97 Civ. 4759 (SHS), 2006 U.S. Dist. LEXIS 39256, *17 (S.D.N.Y June 13, 2006) (authorizing service of order to defendant by Federal Express to an address in France); *Eli Lily*, 23 F. Supp. at 470-74, (service by mail to defendant's office in France was proper and not prohibited); *Melia v. Les Grands Chais de France*, 135 F.R.D. 28, 31-32, 35-36 (D.R.I. 1991) (defendant in France was properly served by mail); *Portalp Int'l SAS v. Zuloaga*, 198 So. 3d 669, 671-75 (Fla. Dist. Ct. App. 2015) (same).

As explained in the Ōura's Request for Entry of Default (Dkt. 8), Ōura mailed two (2) copies of the Complaint and Summons on May 19, 2022, to Circular's involuntary agent for service

---

[2] Article 10(a) does not require translation of the documents sent by mail.

[3] Mr. Pearce's post makes clear that he agrees with Ōura's position that service by mail is proper when the country, in this case France, has not objected to Article 10(a) and service by mail is authorized by law.  Ex. K.

of process—the Secretary of State. Dkt. 8, at 1-4; Ex. A, at ¶5. Ōura requested that the Secretary of State mail the documents to the address Circular lists as its headquarters. Dkt. 8, at 2-3; Ex. A, at ¶¶6-7; Dkt. 7-2. This address is (i) listed throughout Circular's website, (ii) has been submitted to the United States Patent and Trademark Office, and (iii) also appears to be the address Circular represents it is located at to the French Government. Dkt. 8, at 3; Exs. B, C, D, E, and F. Indeed, Circular's General Conditions of Use represent that Circular can be mailed at this address. Ex. D.

The Secretary of State certified that it received these documents on May 20, 2022, which were mailed to Circular on June 15, 2022. Dkt. 6 at 3 (first *Whitney* certificate). This first *Whitney* Certificate was included in the executed Summons. *Id.* The Secretary of State mailed the documents to Circular's address. *Id.* On August 5, 2022, the Secretary of State received a return. Ōura asked the Secretary of State to issue a second *Whitney*[4] certificate, which has been submitted to the Court. Dkt. 7-1. The return receipt shows that the package—addressed to the location Circular represents as its headquarters—was "Undeliverable as addressed, unable to forward." *Id.* To be clear, Texas law does not require that the defendant actually receive the mailed documents— just that the documents are mailed by the Secretary of State. *Buffalo Patents*, 2022 U.S. Dist. LEXIS 101232 at \*16-17.

"Absent fraud or mistake, the Secretary of State's [*Whitney*] certificate is conclusive evidence that the Secretary of State, as agent of [the defendant], received service of process for [the defendant] and forwarded the service as required by the statute." *Capitol Brick, Inc. v. Fleming Mfg. Co., Inc.*, 722 S.W.2d 399, 401 (Tex. 1986). When the Secretary of State receives a return receipt showing that the package was undeliverable as addressed, this is *prima facie*

---

[4] "Texas case law shows that a *Whitney* certificate is not merely sufficient, it is also necessary to establish that the defendant has been served with process." *Buffalo Patents,* 2022 U.S. Dist. LEXIS 101232, at \*15 (citing *Whitney v. L & L Realty Corp.*, 500 S.W.2d 94, 96 (Tex. 1973)).

evidence that the requesting party "provided an incorrect address to the Secretary of State." *Ziegler v. Subalipack (M) SDN BHD*, No. H-16-2598, 2018 U.S. Dist. LEXIS 110777, *2 (S.D. Tex. July 3, 2018) (granting motion for default judgment). The requesting party can offer evidence to show that the Secretary of State was provided the correct address. *Id.* Ōura submitted the cover letter it sent to the Secretary of State into the record. Dkt. 7-2. This cover letter shows that Ōura provided the correct address—the address Circular holds out to the world as its own—to the Secretary of State. *See Ziegler*, 2018 U.S. Dist. LEXIS 110777, *2 ("[Plaintiff] has provided proof that he provided the Secretary of State with the address [defendant] has on file with the New York Secretary of State …. Because [plaintiff] provided the Texas Secretary of State with the address [defendant] has on file with the New York Secretary of State, service was proper"). In other words, there is no mistake to render service ineffective. *Id.* at *2 ("If [defendant's] address changed, [defendant] should have updated it with the New York Secretary of State").

Mr. Pearce was emailed a copy of the executed summons (Dkt. 6), on June 27, 2022, showing that the Secretary of State mailed the summons and Complaint to Circular's address on June 15, 2022. Ex. A, at ¶12. At no point did Mr. Pearce notify Ōura that mail could not be delivered to Circular's address. Circular's deadline to respond to the Complaint started on May 20, 2022, the day the Secretary of State received the summons and Complaint. This date has passed. Ōura did not rush to file a default judgment, but instead gave Circular ample opportunity to file an Answer after being notified through counsel on June 27, 2022. Even if the response deadline is found to start on June 15, 2022, the day the Secretary of State mailed the summons and complaint, Circular's deadline to answer has still passed. Indeed, Circular is late regardless of matter how the 21 day deadline is computed.

In an email dated July 19, 2022, one day after his post (Ex. K), Mr. Pearce attempted to

use Circular's failure to answer to further delay this litigation, requesting that Ōura send a new waiver to allow Circular another 60 days to respond. Ex. A, at ¶13. Mr. Pearce's email was in response to Ōura's July 12, 2022 letter explaining why service through the Secretary of State was proper and notifying Mr. Pearce that Circular was late. *Id.* Ōura declined to reward Circular's delay, due to their pattern of unresponsiveness and delay, and instead patiently waited for the Secretary of State to receive the return. Notably, Ōura would not have to rely on service through an involuntary agent if Circular had identified a registered agent as required by Texas law to engage in business within the State.

## V.    ŌURA IS ENTITLED TO DEFAULT JUDGMENT

In evaluating a motion for default judgment, the Court must consider: "(1) whether default judgment is procedurally warranted; (2) whether the [plaintiff's] complaint sets forth facts sufficient to establish that it is entitled to relief; and (3) what form of relief, if any, [plaintiff] should receive." *Joe Hand Promotions, Inc. v. Fusion Hookah, LLC*, No. 1:19-CV-618-RP, 2020 U.S. Dist. LEXIS 218735, *3 (W.D. Tex. Nov. 23, 2020). The Court should grant Ōura's motion because default is procedurally warranted and the Complaint is well-pled. As for relief, the Court should grant Ōura a permanent injunction against Circular.

### A.    Default Judgment is Procedurally Warranted

Entry of a default judgment requires a default by the defendant, entry of default by the Clerk, and entry of the judgment by the Court. FED. R. CIV. P. 55; *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). Ōura has requested that default be entered against Circular. Dkt. 8. The Clerk can enter default under FED. R. CIV. P. 55(a) because Circular has failed to plead or otherwise defend the lawsuit despite being served. The Court has subject matter jurisdiction, personal jurisdiction, and venue is proper.

Courts consider the *Lindsey* Factors to determine if default judgment is procedurally warranted. The *Lindsey* Factors include:

> whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998) (citation omitted).

No genuine issue of material fact exists because Defendant has failed to file an Answer and thus admits the allegations as true. *Babbala LLC v. Shenzhen Jia Yu Tong Tech. Co. Ltd.*, No. 6:20-CV-01032-ADA-JCM, 2022 U.S. Dist. LEXIS 127987, *5 (W.D. Tex. Mar. 8, 2022) (granting motion for default judgment); Fed. R. Civ. P. 8(b)(6).

Circular is not prejudiced since it has admitted the allegations by failing to Answer, including that it willfully infringes the '833 Patent and '429 Patent. *Babbala*, 2022 U.S. Dist. LEXIS 127987, at *5 ("Defendant does not face prejudice as it has admitted to the allegations through its default"). Ōura, on the other hand, will be prejudiced if the motion for default judgment and permanent injunction are denied because Circular's failure to Answer "threatens to bring the adversary process to a halt, effectively prejudicing [Ōura's] interests in pursuing its rights afforded by law." *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *9 (N.D. Tex. May 1, 2013) (citing *Lindsey*, 151 F.3d at 893).

The grounds of default are clearly established, as Circular was served and chose not to timely respond or respond at all. *Babbala*, 2022 U.S. Dist. LEXIS 127987, at *5-6.

Circular's default is not caused by a good faith mistake or excusable neglect. Ōura's July 12, 2022 letter to Mr. Pearce made clear that substitute service by the Secretary of State was proper and that Circular was late. Ex. G. Circular cannot refute that Courts have allowed service by mail to France. Circular's own Counsel agrees with Ōura's position. Ex. K.

Nor is default harsh "because judgement would be the equivalent to what [Ōura] is entitled to receive by law." *DynaEnergetics Eur. GmbH v. Rock Completion Tools, LLC*, No. 6:21-cv-00084, 2022 U.S. Dist. LEXIS 21085, at *5 (W.D. Tex. Feb. 4, 2022).

Nor is there any reason for the Court to set aside the default, as Circular is content to duck this litigation entirely while continuing to infringe Ōura's Asserted Patents.

**B.    The Complaint Sets Forth Facts Sufficient to Establish Ōura is Entitled to Relief**

The pleadings must contain a sufficient basis for the requested relief in order for a court to grant default judgment. *Wooten v. McDonald Transit Assocs. Inc.*, 788 F.3d 490, 496 (5th Cir. 2015). This requirement is met, as the Complaint alleges patent infringement on the part of Circular as follows:

- The Court has personal jurisdiction and subject matter jurisdiction, and venue is proper. Dkt. 1, at ¶¶4-8.
- Ōura is the owner of the '833 and '429 Patents, each of which were duly and legally issued by the USPTO. *Id.*, at ¶¶43-45, 68-70.
- Ōura put Circular on notice of the infringement prior to the lawsuit. *Id.* at ¶39.
- Circular admitted knowing of and studying Ōura's patents prior to suit. *Id.* at ¶39.
- Circular is offering for sale its infringing Circular Ring and Circular App in the United States and in this district. *Id.* at ¶¶34-38, 46, 71.
- The Complaint establishes how the Circular Ring infringes at least claim 1 of the '833 Patent. *Id.* at ¶¶19-33, 42, 46, 48-60.
- The Complaint establishes how the Accused System infringes at least claim 1 of the '429 Patent. *Id.* at ¶¶19-33, 67, 71-75.
- Circular has not stopped offering their infringing products for sale despite the notice and prior knowledge of the suit, and that their infringement was and continues to to be willful. *Id.* at ¶¶39-41, 47, 63-66, 78-81.
- Ōura has been and continues to be damaged as a result of Circular's infringing activities. *Id.* at ¶¶61-62, 76-77.
- Ōura requested injunctive relief, damages, and that this court declare the case to be "exceptional" under 35 U.S.C. § 285. *Id.* at ¶¶66, 81, and p. 24.
- Requested an order enjoining infringement by Circular. *Id.* at p. 24.

The well-pled allegations of the Complaint establish that Circular is offering for sale products (Circular Ring and Circular App) that infringe at least one claim of the Asserted Patents.

These specific allegations provide the Court a sufficient basis to enter a default judgment on Ōura's claims of patent infringement under FED. R. CIV. P. 55.  *See also* FED. R. CIV. P. 8(a).

## C.    Ōura is Entitled to the Requested Relief

Ōura requests entry of a permanent injunction as a remedy to Circular's patent infringement.  District courts are authorized to grant an injunction to restrain ongoing patent infringement "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  35 U.S.C. § 283.

A court may enter a permanent injunction when the requesting party shows the following four *eBay* factors are present: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (citations omitted).  Here, each of these factors weighs in favor of granting a permanent injunction.

### 1.    Ōura has Suffered and Will Continue to Suffer Irreparable Harm

A showing of irreparable harm is made by showing that "(1) [Ōura] will suffer irreparable harm absent an injunction, and (2) a sufficiently strong causal nexus relates the alleged harm to the alleged infringement."  *Jiaxing Super Lighting Elec. Appliance Co. v. CH Lighting Tech. Co.*, No. 6:20-cv-00018-ADA, 2022 U.S. Dist. LEXIS 146033, *48-49 (W.D. Tex. Aug. 16, 2022) (citation omitted).  "Under [Federal Circuit] precedent, '[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.'"  *Aria Diagnostics, Inc.. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) (quoting *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012); *Golden Hour Data*

*Sys. v. emsCharts, Inc*, No. 2:06-CV-381-JRG, 2014 U.S. Dist. LEXIS 95640, *34-35 (E.D. Tex. March 31, 2014) ("Loss of market share and price erosion are both valid grounds for finding irreparable harm.") (citing *Celsis*, 664 F.3d at 930).

Circular and Ōura are direct competitors in the emerging market of smart rings. Ex. O, Declaration of Ralph Morales III, at ¶8. The Ōura Ring Generation 3 sells for either $299 or $399 based on the model and a $5.99/month membership which allows Ōura to provide the health insights to the consumer. *Id*. at ¶9. Ōura also has partnered with Gucci to produce the Gucci X Ōura, which is only sold by Gucci online or at select locations. The Gucci X Ōura sells for $950. *Id.* Circular has been undercutting Ōura by previously selling the Circular Ring for $264, and now selling the Circular Ring for $284, while not charging a subscription for the Circular App. Dkt. 1-4, at 2; Dkt. 1-11, at 3; Ex. O, at ¶10. Mr. Pearce has represented that Circular has not made any sales. Ex. A, at ¶12. However, Circular is charging and has charged customers up front for purchase of the Circular Ring. Ex. G at 4-5; Ex. O, at ¶11.

Below is a comparison of the Ōura Ring and Circular Ring, and a Comparison of subcomponents of the Readiness Score of the Ōura App and subcomponents of the Energy Score on the Circular App.

| Ōura Ring Generation 3 | Circular Ring |
|:---:|:---:|
|  |  |

**Ōura App**



**Circular App**



Ōura loses a potential sale and potential subscription every time a consumer orders a Circular Ring. Loss of market share is sufficient to show irreparable harm. *See Golden Hour Data Sys.*, 2014 U.S. Dist. LEXIS 95640, *34-35. Without a permanent injunction, Circular continues to erode Ōura's market share while willfully infringing Ōura's Asserted Patents. Ex. O, at ¶¶11, 15, and 21. Ōura and Circular directly compete in the emerging market of smart rings. *Id.* at ¶8. The Federal Circuit has "repeatedly held after *eBay* that competition between the patentee and the infringer, particularly direct competition, strongly militates toward a finding of irreparable harm." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 653 (Fed. Cir. 2015).

Circular's infringement is creating a marketplace, which is still emerging, where consumers expect a lower price and no membership fee. Ex. O, at ¶¶8, 11, and 16. Allowing Circular's infringement to continue will force Ōura to decide between a continued loss of its

market share or a reduction of the retail price for its novel ring and system, including a reduction or elimination of the membership fee that powers the Ōura App, to compete against Circular's infringing products.  *Id.* at ¶¶16-18, and 21; *see Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions"); *Golden Hour Data Sys.,* 2014 U.S. Dist. LEXIS 95640, *34-35 (price erosion sufficient to establish irreparable harm).  Indeed, allowing Circular's infringement to continue will change the marketplace and may make it impossible to restore Ōura's "exclusive position."  *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996) ("Requiring purchasers to pay higher prices after years of paying lower prices to infringers is not a reliable business option.").  Ōura is also suffering irreparable harm because Circular's knock-off imperils the goodwill and reputation earned by Ōura in the marketplace.  Ex. O, at ¶¶18 and 21.  Ōura will suffer irreparable harm if the Circular Ring and Circular App fail to perform, as customers may believe Circular's deficiencies are shared with Ōura's products.  *Id.* at ¶19.

Customers are not buying an Ōura Ring or Circular Ring solely for their jewelry value. Instead, consumers are buying Ōura Rings and Circular Rings to track their health and sleep.  *Id.* at ¶20.  Indeed, Circular's website identifies activity, health, and sleep as "Use Cases."  Ex. L. The Accused System's energy score indicates a level of readiness of the user, because the energy score "reflects your energy level for the day based on your sleep and activity data.  Get to know when you can push yourself to max out your daily performances or when you may take it easy." Dkt. 1-7, at 8; *see also* Dkt. 1-9.  The Circular Ring infringes the apparatus claimed in '833 Patent and the Circular Ring and Circular App infringe the system and method claimed in the '429 Patent

to provide the customer with a readiness score. The practice of the '833 Patent and the '429 Patent is a substantial reason for consumers' demand of the Circular Ring and Circular App. *Qin v. P'ships & Unincorporated Ass'ns on Schedule "A"*, 2022 U.S. Dist. LEXIS 3298, *7 (W.D. Tex. Jan. 7, 2022) (Causal nexus established because use of patented design was substantial reason for consumer demand in view of the relative simplicity of the products); Ex. O, at ¶20.

Therefore, Ōura has shown irreparable harm and a causal nexus. Ōura has suffered and will continue to suffer irreparable harm without a permanent injunction since Circular has decided to avoid engaging in this litigation and instead has chosen to focus their efforts on shipping Circular Rings into the United States later this year. Ex. M. Circular has told its backers at Indiegogo that shipments could arrive in October, despite listing December 2022 as its current delivery date on its shop page. *Compare* Ex. M, *with* Ex. N.

### 2.    Remedies at Law are Inadequate

Monetary damages are inadequate because Ōura's patent rights give it the right to exclude others from making, using, selling, or offering for sale its claimed apparatuses, systems, and methods. *See Hybritech Inc. v. Abbott Labs.,* 849 F.2d 1446, 1456-57 (Fed. Cir. 1998) ("the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole"). Circular's decision to avoid the litigation makes it impossible for Ōura to adequately determine the scope of damages caused by Circular's infringement. *DynaEnergetics*, 2022 U.S. Dist. LEXIS 21085, at *7 ("[plaintiff] has no adequate remedy at law because [defendant] competes with [plaintiff] and will continue to cause indeterminate harm because [plaintiff] cannot determine the full scope of damages without [defendant's] participation in litigation discovery"). Nor is Ōura likely to recover monetary damages from a foreign defendant who refuses to participate in

litigation after being served.  *Qin*, 2022 U.S. Dist. LEXIS 3298, at *7-8 (agreeing that plaintiff would not likely be able to collect monetary damages from foreign defendant).

### 3.    Balance of Hardships Favors Granting the Injunction

The balance of hardships favors issuing this injunction.  Circular has failed to participate in this litigation.  Ōura has suffered irreparable harm.  Allowing Circular to continue to infringe will encourage other actors to do the same.  Ōura should not be punished for Circular's refusal to defend itself.  Circular assumed the risk[5] of litigation by infringing Ōura's patents—of which it was well aware, which is a reason not to "assign any 'harm' to an infringing defendant[.]"  *Qin*, 2022 U.S. Dist. LEXIS 3298, at 7-8 (defendants' assumption of risk ameliorates harm).  Nor should the Court consider the cost or expense on the part of Circular in creating its infringing products.  *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010) ("irrelevant are the consequences to [defendant] of its infringement, such as the cost of redesigning the infringing products … neither commercial success, nor sunk development costs, shield an infringer from injunctive relief.") (citations omitted).

### 4.    Enjoining Circular's Continued Infringement Promotes the Public Interest

Public policy favors protecting the rights of patentees.  *Qin*, 2022 U.S. Dist. LEXIS 3298, at *9-10; *see also Smith v. Intern., Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1578 (Fed. Cir. 1983) ("Without the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research.").  The Court should find that the public interest is served by allowing Ōura to exercise its right to exclude Circular's infringing products by granting the injunction.  *Qin*, 2022 U.S. Dist. LEXIS 3298, at *9-10.

---

[5] Circular admitted it new about Ōura's patents and that they studied them.  Dkt. 1, at ¶39.

**VI.     ŌURA IS ENTITLED TO MONETARY DAMAGES IN AN AMOUNT TO BE DETERMINED, BUT WILL FORGO A MONETARY DAMAGES AWARD FOR PAST INFRINGEMENT IF THE PERMANENT INJUNCTION IS GRANTED**

Circular has infringed the Asserted Patents and has profited from this infringement.  As a result, Ōura is entitled to monetary damages not less than a reasonable royalty.  35 U.S.C. § 284.  Circular's decision to avoid engaging in litigation makes it impossible for Ōura to particularize a request for monetary damages at this time.  Ōura is willing to forgo monetary damages for past infringement at this time, should the Court grant the permanent injunction.  Ōura reserves the right to seek monetary damages for violations of the injunction, or in the event this Motion is denied.

**VII.    ŌURA IS ENTITLED TO RECOVER ITS REASONABLE ATTORNEY FEES AND COSTS**

The Court can award reasonable attorney fees in an exceptional case.  35 U.S.C. § 285.  Circular has admitted that its infringement was willful by default.  Dkt. 1, at ¶¶47, 63-66, ¶¶78-81.  Courts have awarded attorney fees when willful infringement has been proven.  *See e.g.*, *PACT XPP Techs., AG v. Xilinx, Inc.*, No. 2:07-CV-563-RSP, 2013 U.S. Dist. LEXIS 125819, *5-11 (E.D. Tex. Sept. 3, 2013).  Courts have also found that—in the context of default—"a pleading that infringement was willful is sufficient to establish[] entitlement to attorneys' fees."  *Ceiva Logic Inc. v. Frame Media Inc.*, No. SACV 08-00636-JVS-RNBx, 2014 U.S. Dist. LEXIS 176328, at *10-11 (C.D. Cal. Dec. 19, 2014) (citing *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) and *Rubbermaid Commercial Products, LLC v. Trust Commercial Products*, No. 2:13-cv-02144-GMN-GWF, 2014 U.S. Dist. LEXIS 142745, at *14-24 (D. Nev. Aug. 22, 2014) (defendant admitted willfulness on default and the court awarded attorney fees)); *Crescent Services, Inc. v. Michigan Vacuum Trucks, Inc.*, 714 F. Supp. 2d 425, 430-31 (W.D.N.Y. May 12, 2010) (awarding fees against defaulting willful infringer that failed to respond to efforts to resolve the dispute or defend the suit).  Circular continues to willfully infringe Ōura's patents

to this day.  Ōura respectfully requests that the Court find this to be an exceptional case and award Ōura its reasonable attorney fees.  Upon entry of a default judgment, Ōura may file a claim for attorney fees pursuant to Local Rule CV-54.  Ōura is entitled to its reasonable costs in this case and costs are awarded to the prevailing party as a matter of course unless the court provides otherwise.  FED. R. CIV. P. 54(d).  Ōura respectfully requests that the Court's final judgment by default include an award of Ōura's reasonable attorney fees and costs.

## VIII.   IN THE ALTERNATIVE, MOTION FOR ALTERNATE SERVICE

Should the Court find service to be deficient, Ōura respectfully requests that it be permitted to serve Circular via their domestic counsel, whether it be Mr. Pearce or Sandy Lipkin—who is currently prosecuting Circular's patent application[6]—to put an end to the delay tactics.  Circular has been content to ignore the lawsuit and continues infringing with impunity.  Service on an attorney is reasonably calculated to give notice.  *WSOU Invs., LLC v. TP-Link Techs. Co.*, No. 6:20-cv-1012-ADA-6:20-cv-1022-ADA, 2021 U.S. Dist. LEXIS 167111, *13-15 (W.D. Tex. Sept. 1, 2021).  Ōura has tried to serve Circular through traditional means.  Ōura requested that Circular waive service, but was rebuffed.  *See Aprese Sys. Tex., LLC v. Audi AG*, No. 6:21-CV-01014-ADA, 2022 U.S. Dist. LEXIS 53901, at * 6 (W.D. Tex. Mar. 25, 2022) ("This Court finds service on a foreign defendant's domestic counsel to constitute a reasonable attempt to effectuate service").  Ōura then served Circular via the Secretary of State.  Attempting to serve under the Hague Service Convention would be futile since Circular is concealing its actual address.  Article 1, Hague Service Convention ("This Convention shall not apply where the address of the person to be served with the document is not known").  Thus, granting alternative service under FED. R. CIV. P. 4(f)(3) would be proper based on the Court's practice after *In re OnePlus Tech. (Shenzhen)*

---

[6] United States Pat. App. Serial No. 16/797,038.

19

*Co., Ltd.*, No. 2021-165, 2021 U.S. App. LEXIS 27282 (Fed. Cir. 2021).

## IX.    CONCLUSION

For the foregoing reasons, Ōura respectfully requests that the Final Judgment be entered granting Ōura the following relief:

a) Judgment declaring that Circular has infringed one or more claims of the '833 Patent and the '429 Patent in violation of 35 U.S.C. § 271 by its offer for sale;

b) Entry of a permanent injunction pursuant to 35 U.S.C. § 283 against continued infringement of the '833 Patent and the '429 Patent by Circular, its agents, officers, servants, employees, attorneys, and all persons in active concert or participation with Circular, including selling, offering to sell, distributing, importing, or advertising the Circular Ring and Circular App, or any other product or system that infringes the Asserted Patents, including removal of the Circular App from the Apple Store, Android Store, and any other application vendor in the United States;

c) Declare this case to be "exceptional" under 35 U.S.C. § 285, at least in part due to Circular's willfulness and decision to not defend against the suit;

d) An assessment of costs, including reasonable attorney fees and expenses, pursuant to 35 U.S.C. § 285 and Fed. R. Civ. P. 54(d); and

e) Award Ōura further relief to which the Court finds Plaintiff entitled under law or equity.

Ōura, therefore, respectfully requests that this Court grant its Motion for Judgment by Default against Circular and enter the proposed Final Judgment attached hereto.

Alternatively, should the Court decide that Circular was not properly served, Ōura respectfully requests that the Court grant alternative service under Fed. R. Civ. P. 4(f)(3) upon Circular via their domestic counsel, whether it be Mr. Pearce or Sandy Lipkin.

Dated:  September 9, 2022

Respectfully submitted,

By: */s/ John. A. Yates*

John A. Yates
Attorney In Charge
Texas Bar No. 24056569
jyates@pattersonsheridan.com

B. Todd Patterson
Texas Bar No. 00789537
tpatterson@pattersonsheridan.com

Kyrie Cameron
Texas Bar No. 24097450
kcameron@pattersonsheridan.com

Edgar N. Gonzalez
Texas Bar No. 24097450
egonzalez@pattersonsheridan.com

**Patterson + Sheridan LLP**
24 Greenway Plaza, Suite 1600
Houston, Texas 77046
(Tel): 713-623-4844
(Fax): 713-623-4846

Abelino Reyna
Texas Bar No. 24000087
areyna@pattersonsheridan.com

**Patterson + Sheridan LLP**
729 Washington Ave., Suite 200
Waco, Texas 76701
(Tel.): 254-777-5248
(Fax): 877-777-8071

*Attorneys for Plaintiff,*
*Ōura Health Oy*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2022, the following document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed.

I further certify that I caused a copy of the foregoing documents to be served on what Ōura believes to be Circular's counsel:

Jonathan Pearce
SoCal IP Law Group LLP
310 N. Westlake Blvd., Suite 120
Westlake Village, CA 91362-3788
jpearce@socalip.com

/s/ *John A. Yates*
John A. Yates