**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| OURA HEALTH OY,<br><br>       Plaintiff,<br>v.<br><br>THE CIRCULAR SAS,<br><br>       Defendant. | No. 6:22-cv-00478-ADA<br><br>JURY TRIAL DEMANDED |

## DEFENDANT'S OPPOSITION TO MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION

## <u>TABLE OF CONTENTS</u>

<b>Page(s)</b>

I.     SPECIAL APPEARANCE .............................................................................1

II.    INTRODUCTION ........................................................................................1

III.   BACKGROUND AND RELEVANT FACTS ...............................................2

IV.   OURA HAS NOT SERVED CIRCULAR AND ELECTED TO WASTE THIS COURT'S TIME WITH A MOTION RATHER THAN AGREE TO CIRCULAR'S WAIVER OF SERVICE ..................................................................................3

V.    OURA HAS NOT COMPLETED SERVICE IN FRANCE ..........................3

     A.   Whitney Service Requires Compliance with the Hague Service Convention........3

     B.   The Hague Convention, FED. R. CIV. P. and French Law are Exacting.................4

     C.   Oura's Proof of Service is Likewise Inadequate ......................................6

     D.   The French Cases Cited by Oura are all Inapposite, Other Cases Hold Service More-Alike Oura's Purported "Service" Inadequate ...............................7

     E.   The Rest of Oura's Positions are Unsupported in the Law .....................8

VI.   DEFAULT JUDGMENT AND A PERMANENT INJUNCTION ARE NOT MERITED...................................................................................................9

     A.   Default judgment is not procedurally warranted...................................10

         1.   The motion for default judgment is premature. ............................10

         2.   Without proper service, this Court lacks personal jurisdiction.....................11

         3.   The Lindsey Factors weigh against default judgment. ..................................11

     B.   The complaint fails to set forth facts sufficient to entitle Oura to relief. .............14

     C.   A permanent injunction is not warranted. ..............................................15

         1.   Oura will not suffer irreparable harm. ..........................................15

         2.   Monetary damages will be adequate..............................................16

         3.   The balance of hardships favors denying the motion for an injunction.........16

         4.   The public interest in an injunction favors Circular. ....................................17

VII.  CONCLUSION.............................................................................................17

## TABLE OF AUTHORITIES

**CASES**                                                                                    **Page(s)**

*Acquis LLC v. Lenovo Group Ltd et al.*,
   No. W-20-CV-00967-ADA (November 16, 2021) ...............................................................9

*Admar Int'l, Inc. v. Eastrock, L.L.C.*,
   18 F.4th 783(5th Cir. 2021)..................................................................................................9

*Aria Diagnostics, Inc. v. Sequenom, Inc.*,
   726 F.3d 1296 (Fed. Cir. 2013) .........................................................................................13

*Ayres v. Jacobs & Crumplar, P.A.*,
   99 F.3d 565 (3d Cir. 1996) ...................................................................................................9

*Babbala LLC v. Shenzhen Jia Yu Tong Tech. Co. Ltd.*, No.
   6:20-CV-01032-ADA-JCM, 2022 U.S. Dist. LEXIS 127987
   (W.D. Tex. Mar. 8, 2022)....................................................................................................10

*Bank of Credit & Commerce Int'l (Overas) Ltd. v. Tamraz*,
   No. 97 Civ. 4759 (SHS), 2006 U.S. Dist. LEXIS 39256 (S.D.N.Y. June 13, 2006) ............6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 555 (2007). ..................................................................................................12

*Buffalo Patents, LLC v. ZTE Corp.*,
   No. W-21-CV-01065-ADA, 2022 U.S. Dist. LEXIS 101232,(June 3, 2022)....................1, 3

*Celgard, LLC v. SK Innovation Co.*,
   792 F.3d 1373 (Fed. Cir. 2015). ...........................................................................................9

*Christiana Tr. v. Jacob*,
   No. MO:15-CV-00033-DAE-DC, 2015 U.S. Dist. LEXIS 141691
   (W.D. Tex. July 21, 2015).................................................................................................10

*eBay, Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006). ..........................................................................................................12

*Ellibee v. Leonard*,
   226 F. App'x 351 (5th Cir. 2007) .........................................................................................7

*Ely Lily & Co. v. Roussel Corp.*,
   23 F. Supp. 2d. 460, 469 (D.N.J. 1998)..............................................................................6

*Gamez v. Hosp. Klean of Tex., Inc.*,
   No. SA-12-CV-517-XR, 2013 U.S. Dist. LEXIS 35608 (W.D. Tex. Mar. 14, 2013) .........10

*Goodwin v. Housing Authority of New Orleans*,
  No. Civ. A. 11-1397, 2013 U.S. Dist. LEXIS 104396, 2013 WL 3874907
  (E.D. La. July 25, 2013), .................................................................................9

*Iglesias v. Ricard*,
  No. 20-CV-20157-KMW, 2020 U.S. Dist. LEXIS 164117 (S.D. Fla. Aug. 17, 2020) .........7

*In re Combat*,
  No. 3:19-md-2885, 2020 U.S. Dist. LEXIS 173730 (N.D. Fla. Feb. 18, 2020)....................6

*In re Cooper Marine & Timberlands Corp.*,
  No. 1:20-CV-191-DMB-DAS, 2020 U.S. Dist. LEXIS 217330
  (N.D. Miss. Nov. 20, 2020) .................................................................................9

*Innogenetics, N.V. v. Abbott Labs.*,
  512 F.3d 1363 (Fed. Cir. 2008) ...........................................................................13

*Intel Corp. v. ULSI Sys. Tech.*,
  995 F.2d 1566 (Fed. Cir. 1993) ...........................................................................14

*International Shoe Co. v. Washington*,
  326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) .........................................9

*Koss Corp. v. Pilot Air Freight Corp.*,
  242 F.R.D. 514, 518 (E.D. Wisc. 2007) ..............................................................4

*Lewis v. Ly*nn,
  236 F.3d 766 (5th Cir. 2001)................................................................................8

*Lindsey v. Prive Corp.*,
  161 F.3d 886 (5th Cir. 1998)..........................................................................8, 10

*Melia v. Les Grands Chais de France*,
  135 F.R.D. 28, 30 (D.R.I. 1991),.........................................................................6

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
  526 U.S. 344, 350-51, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999). .......................9

*N.Y. Life Ins. Co. v. Brown*,
  84 F.3d 137 (5th Cir. 1996) .................................................................................9

*Portalp Int'l SAS v. Zuloaga*,
  198 So. 3d 669 (Fla. Dist. Ct. App. 2015),..........................................................6

*RoyaltyStat, LLC v. IntangibleSpring Corp.*,
  Civil Action No. PX 15-3940, 2017 U.S. Dist. LEXIS 7302, at *17
  (D. Md. Jan. 19, 2017)........................................................................................7

*Schoenbauer v. Deutsche Bank Nat'l Tr. Co.*,
   Civil Action No. 3:20-CV-1901-E-BH, 2021 U.S. Dist. LEXIS 199946
   (N.D. Tex. Sep. 28, 2021) ............................................................................... 9

*Seitz v. Envirotech Sys. Worldwide Inc.*,
   No. H-02-4782, 2008 U.S. Dist. LEXIS 17395  (S.D. Tex. Mar. 6, 2008); ........................ 13

*Sindhi v. Raina*,
   905 F.3d 327 (5th Cir. 2018) .......................................................................... 8

*Spencer v. Experian Info. Sols., Inc.*,
   Civil Action No. 4:21-CV-00393, 2022 U.S. Dist. LEXIS 77465
   (E.D. Tex. Apr. 28, 2022) .............................................................................. 12

*St. Claire v. EnsureLink*,
   No. 3:01-CV-1548-G, 2001 U.S. Dist. LEXIS 20108  (N.D. Tex. Dec. 4, 2001). ............. 11

*Stallard v. Goldman Sachs Grp., Inc.*,
   20-2703, 2022 U.S. Dist. LEXIS 2094, *22-24 (D.D.C. January 6, 2022) ......................... 6

*Sun Bank of Ocala v. Pelican Homestead & Savings Ass'n*,
   874 F.2d 274 (5th Cir. 1989) ....................................................................... 8, 11

*Trzaska v. L'Oréal USA, Inc.*,
   No. 15-cv-02713-SDW-LDW, 2017 U.S. Dist. LEXIS 203991 (D.N.J. Dec. 12, 2017) ...... 6

*Waltner v. Aurora Loan Servs., L.L.C.*,
   551 F. App'x 7415th Cir. 2013) ....................................................................... 10

*Water Splash, Inv. V. Menon*,
   127 S.Ct. 1504 (2017) ................................................................................. 3, 6

*Way v. Mueller Brass Co.*,
   840 F.2d (5th Cir. 1988) ................................................................................. 7

*Whitney v. L&L Realty Corp.*,
   500 S.W.2d 94, (Tex. 1973) ............................................................................. 3

**STATUTES**

35 U.S.C. 284 ............................................................................................... 13

**RULES**

Fed. R. Civ. P 4(f), and (h) ............................................................................... 4

Fed. R. Civ. P. 12 ......................................................................................... 1

**OPPOSITION TO MOTION FOR DEFAULT JUDGEMENT – Page iii**

Fed. R. Civ. P. 55..............................................................................................................10

Fed. R. Civ. P. 55..............................................................................................................10

## I.    SPECIAL APPEARANCE

The undersigned specially appears on behalf of Defendant Circular SAS for the sole pur-

pose of contesting Oura's Motion for Default Judgment and Permanent Injunction (Dkt. 9) for lack

of proper service and personal jurisdiction under FED. R. CIV. P. 12(B)(5) & 12(b)(2).

## II.    INTRODUCTION

Oura Heath Oy ("Oura"), a $2.5 billion company was so threatened by a tiny, new com-

petitor that it chose a lawsuit rather than simply compete in the marketplace. Ex. 1[1]. Oura carefully

timed this lawsuit to have the largest impact on new entrant Circular's future business just as Cir-

cular prepared to ship its first products. Oura's CEO claims "the wearables market is still small,

with plenty of room for competitors to coexist." Ex. 2 at 10. Apparently, that is only true so long

as those competitors are bigger and better funded, like Google®-owned Fitbit®. Ex. 2 at 9.

Oura was in such a hurry to get this case started that it could not be bothered to actually

serve its complaint in conformity with the requirements of the Hague Service Convention, FED. R.

CIV. P. 4, and French Code of Civil Procedure, Article 55 & 651 *et seq*. Instead, Oura chose to rely

upon so-called *Whitney* service. As this Court explained only a few months ago, completion of

*Whitney* service is not the end of the analysis because when international comity is implicated,

"the Hague Service Convention controls." *Buffalo Patents, LLC v. ZTE Corp.*, No. W-21-CV-

01065-ADA, 2022 U.S. Dist. LEXIS 101232, *19 (June 3, 2022). If Oura's actual goal was to

begin the case, rather than to increase costs to Circular and waste Court resources and time, it

would have accepted any of Circular's *three offers* to simply waive service of its complaint to

---

[1] All exhibits are to the Declaration of Jonathan Pearce ("Pearce Decl.").

allow this case to begin. Exs. 5 & 6 at 1 & 6. Circular's proposed response date of September 19 is well before this motion will even be heard. Circular remains unserved.

Because Circular has not actually been served with the complaint, because the Court Clerk has not yet entered default, because this Court lacks personal jurisdiction, because the *Lindsey* factors for entry of default favor Circular, and because every factor considered before granting an injunction favors Circular or is neutral; Oura's motion for an injunction also must be denied.

### III.    BACKGROUND AND RELEVANT FACTS

Circular SAS is a small startup company made up of only a few employees. It began as a Kickstarter and Indiegogo project in approximately January of 2020. Exs. 3 and 4. Kickstarter and Indiegogo are online platforms where individuals may "back" a company by putting down a deposit to fund a project that they believe would be a good product in exchange for certain rewards. Some rewards are merely kudos, while others are physical products or swag related to the company or products. Circular raised $375,789 on Indigogo and € 307,009 on Kickstarter from project funders in approximately March of 2020. *Id.*

This funding was primarily from consumers who recognized that the market for fitness wearables, particularly smaller fitness wearables, had become stagnant. Since Oura launched, it has consistently increased its prices and had recently added a monthly subscription which its users strongly disliked. Exs. 7, 8, & 9. Circular saw an opening in the market for a well-priced and non-subscription wearable device. Circular had initially planned on a late 2020 delivery of products to project backers. Exs. 3 & 4.  Unfortunately, COVID-19 restrictions and worldwide supply chain issues delayed production and delivery of products. As of this filing, Circular has only just begun shipping products to its Kickstarter and Indiegogo backers. *See, e.g.* Ex. 4.

**OPPOSITION TO MOTION FOR DEFAULT JUDGEMENT – Page 2**

Just as Oura received significant bad press for its newest product and subscription model, Circular appeared offering a viable alternative at a lower price point. Oura was so threatened by Circular's entry into the market that it approached claiming patent infringement in January of 2022. At the time of this approach, Circular's product was still in its final design process prior to manufacture – i.e. no consumer Circular products actually existed and none at all in the U.S.[2] Circular has only now begun delivering products. Ex. 4.

Even assuming Circular is infringing – which it is not – the potential damages in this case cannot exceed $50,000 at this early stage. Oura's outsized concern belies its real intent – to strangle a prospective competitor in the cradle. Destroying nimble and inexpensive competitors will enable Oura to continue to charge unjustifiably high prices and to pursue its unpopular subscription model.

### IV.  OURA HAS NOT SERVED CIRCULAR AND ELECTED TO WASTE THIS COURT'S TIME WITH A MOTION RATHER THAN AGREE TO CIRCULAR'S WAIVER OF SERVICE

Circular offered to sign a waiver of service not once, but three times. Exs. 5 & 6 at 1 & 6. Oura refused. Now, Oura comes to the Court to enforce its improper service in a significant waste of time and resources for all involved.

### V.  OURA HAS NOT COMPLETED SERVICE IN FRANCE

### A.  Whitney Service Requires Compliance with the Hague Service Convention

As explained multiple times in its correspondence with Oura's counsel on whether service had been affected on Circular, so-called *Whitney* must also comport with the requirements of the Hague Service Convention. *Whitney v. L&L Realty Corp.,* 500 S.W.2d 94, (Tex. 1973); *Buffalo,*

---

[2] Circular had created internal prototypes and some test production models in France.

2022 U.S. Dist. LEXIS 101232 at *19-20 ("because the mailing of process abroad culminates in service subject to the Hague Service Convention, and that process is being transmitted to a foreign country that is a signatory, the Hague Service Convention controls."); Exs. 5 & 6. For *Whitney* service to succeed, the real question is whether that service is adequate under the Fed. R. Civ. P. 4, the Hague Service Convention, and French law. So, to the extent Oura is arguing that *Whitney* service, a Texas law, "preempts the international treaty," "[t]hat cannot be." *Buffalo*, 2022 U.S. Dist. LEXIS 101232 at *18; *see also* Motion at 4-6 (arguing that service is complete because *Whitney* service was adequate for various Texas- and US-centered cases). "Simply put, an international treaty supersedes Texas state law." *Buffalo*, 2022 U.S. Dist. LEXIS 101232 at *18.

## B.    The Hague Convention, FED. R. CIV. P. and French Law are Exacting

*Water Splash, Inc. v. Menom* recently resolved a circuit split and set the standard for consideration of service by mail abroad under the Hague Service Convention. No. 16-254, 137 S. Ct. 1504, 2017 U.S. LEXIS 3212 (May 22, 2017). *Water Splash* held that, "in cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law." *Id.* at *19.

FED. R. CIV. P 4(f), and (h) are the bases upon which Oura could rely for service. Section (h) indicates that service on a corporation may be made "(2) at a place not within any judicial district of the United States [e.g. France], in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Section (f)(1) indicates that service may be made "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Article 10 provides that the Hague Convention essentially indicates

that it does not prohibit "the freedom to send judicial documents, by postal channels, directly to persons abroad" but otherwise provides no significant guidance.

As reasoned in *Koss Corp. v. Pilot Air Freight Corp.*, 242 F.R.D. 514, 518 (E.D. Wisc. 2007) "by incorporating the Convention, [Rule 4(f)(1)] in turn affirmatively authorizes use of a central authority [under Article 5 of the Convention]. However, Rule 4(f)(1) does not go beyond means of service affirmatively authorized by international agreements." Said another way, 4(f)(1) incorporates the Hague Convention on Service by reference, but the Hague Convention Article 10 does not authorize service by mail. Instead, it merely fails to forbid it. This Court agrees. *Buffalo*, 2022 U.S. Dist. LEXIS 101232 at *18 ("To be clear, this does not mean that the Convention affirmatively authorizes service by mail.").

Oura responds – and has responded repeatedly – pointing to Texas Civ. Prac. & Rem Code § 17.044 which authorizes *Whitney* service. However, Rule 4(f)(1) does not authorize "Texas agreed means of service," but "internationally agreed means of service." As this Court noted only a few months ago, Texas law does not preempt or supersede international treaty and Rule 4(f)(1) does not indicate that compliance with the *forum* state's law is all that is required. *Buffalo*, 2022 U.S. Dist. LEXIS 101232 at *19-20. Oura's attempt to rely almost exclusively on state-law-based *Whitney* service does not satisfy this requirement. The purpose is to "impart notice onto the Defendant" of the suit. *Id.* at *19. Oura has not shown that notice has been imparted on Circular.

French law does not authorize service by mail of suit-initiating documents. In fact, Article 654 of the French Code of Civil Procedure indicates that "service must be personal." French Code of Civ. Proc. (Ex. 10), Article 651 *et seq*. So, Oura's attempt to rely upon *Whitney* service contravenes Fed. R. Civ. P. 4(f)(1) and French law. Service by mail – particularly when Circular did not actually receive the mailing – is inadequate as not "by internationally agreed means" of service.

**OPPOSITION TO MOTION FOR DEFAULT JUDGEMENT – Page 5**

Under *Water Splash*, undelivered mailing is not "authorized by otherwise-applicable law." 2017 U.S. LEXIS 3212 at *19; Dkt. 7-1, pg. 2.

No other section of FED. R. CIV. P 4 is applicable. Oura cannot be relying upon (f)(2)(A) because they did not serve in compliance with French law which requires a French translation, and service by a court-appointed bailiff. *Compare* French Articles of Civil Procedure, Articles 55 & 654 (Ex. 10) *with* FED. R. CIV. P 4(f)(2)(A). Oura made no letter rogatory or letter of request. *See* FED. R. CIV. P 4(f)(2)(B). Oura did not have the Court's clerk address and send any document in conformity with FED. R. CIV. P 4(f)(2)(C)(ii). *See*, Dkt. 7-1 at 2 (addressed and sent by the Texas Secretary of State) and 7-2 at 1 (addressed by plaintiff's counsel). Finally, the Court has not yet made any order regarding service, so Oura cannot rely upon (f)(3).

Oura never served Circular.

## C.      Oura's Proof of Service is Likewise Inadequate

Oura relies, alternatively, upon their mere mailing of a letter requesting the Texas Secretary of State to engage in *Whitney* service (Dkt. 6) or upon return of the Texas Secretary of State's effort to engage in Whitney service (Dkt. 7-1) as proof of service. These proofs of service are inadequate as not in compliance with FED. R. CIV. P 4(l)(2). Specifically, Oura points to no "applicable treaty or convention" under which service was purportedly made. Presumably, Oura believes it has served under the Hague Service Convention, but as pointed out above, Oura failed to satisfy the Hague Convention. Oura likewise cannot show any "receipt signed by the addressee…that the summons and complaint were delivered to the addressee." FED. R. CIV. P 4(l)(2)(B). In fact, Oura's proof of service shows it was returned undeliverable. Dkt. 7-1. For this reason, Oura's duplicate proofs of service both should be quashed. Dkts. 6, and 7-1.

### D.   The French Cases Cited by Oura are all Inapposite, Other Cases Hold Service More-Alike Oura's Purported "Service" Inadequate

Oura points to several cases as purportedly authorizing service by mail in France. Dkt. 9 at 6. All cited cases are inapposite. In *Stallard v. Goldman Sachs Grp., Inc.*, the court authorized alternative service by mail after months of attempted, improper service and granted plaintiff a limited time to effect service by mail. No. 20-2703, 2022 U.S. Dist. LEXIS 2094, *22-24 (D.D.C. January 6, 2022). *In re Combat*, No. 3:19-md-2885, 2020 U.S. Dist. LEXIS 173730, at *18-21 (N.D. Fla. Feb. 18, 2020) pertains to a subpoena served after a lawsuit was already initiated, not service of an initial complaint. In *Bank of Credit & Commerce Int'l (Oversas) Ltd. v. Tamraz*, No. 97 Civ. 4759 (SHS), 2006 U.S. Dist. LEXIS 39256, *17 (S.D.N.Y. June 13, 2006) the court authorized service of a contempt order long after the complaint had been served. In *Ely Lily & Co. v. Roussel Corp.*, the plaintiff provided proof that the complaint was actually received by the defendant when mailed. 23 F. Supp. 2d. 460, 469 (D.N.J. 1998). In *Melia v. Les Grands Chais de France*, 135 F.R.D. 28, 30 (D.R.I. 1991), the defendant signed a receipt indicating the complaint was actually received. Finally, in *Portalp Int'l SAS v. Zuloaga*, 198 So. 3d 669 (Fla. Dist. Ct. App. 2015), the complaint was received and signed-for by the CEO.

Oura has attempted to serve a complaint, so the first group of cases for non-complaint documents is irrelevant. The second group of cases is uniform in its requirement that there be *some* proof the complaint was actually received, thereby conforming with FED. R. CIV. P 4(l)(2)(B) ("receipt signed by the addressee…that the summons and complaint were delivered to the addressee."). Here, Oura asked the Texas Secretary of State to mail some documents, and they were returned undeliverable. Dkt. 7-1, pg. 2. That is not service.

Unlike Oura's mishmash of cases, there are many district court cases following *Water Splash* and in much more persuasive courts that hold the contrary. The District of New Jersey

**OPPOSITION TO MOTION FOR DEFAULT JUDGEMENT – Page 7**

indicated that "although the Hague Convention permits service by mail…the United States Supreme Court recently held that it does not 'affirmatively authorize service by mail.'" *Trzaska v. L'Oréal USA, Inc.*, No. 15-cv-02713-SDW-LDW, 2017 U.S. Dist. LEXIS 203991, at *6 (D.N.J. Dec. 12, 2017) (citing *Water Splash, Inv. V. Menon*, 127 S.Ct. 1504 (2017) and indicating service by mail in France was not proper under 4(f)(1)). In *Iglesias v. Ricard*, No. 20-CV-20157-KMW, 2020 U.S. Dist. LEXIS 164117, at *37 (S.D. Fla. Aug. 17, 2020), the court found that French law imposed several requirements for proper complaint service under Rule 4(f)(1), including translation and service by a bailiff, but that service had been perfected under the facts presented including personal service reliant upon a bailiff. In *RoyaltyStat, LLC v. IntangibleSpring Corp.,* the court found that merely leaving a complaint at the last address of the defendant was insufficient under French law in which the only valid means of service under the French Code of Civil Procedure, Article 654 is "personal service" by the National Chamber of Bailiffs. Civil Action No. PX 15-3940, 2017 U.S. Dist. LEXIS 7302, at *17 (D. Md. Jan. 19, 2017). Mail is not a proper means of service if France. Ex. 10 at 61 (Article 654). Far from "internationally agreed means of service," Oura seeks to rely upon exactly a kind of service other district courts have found unacceptable under French law following *Water Splash*.

### E.    The Rest of Oura's Positions are Unsupported in the Law

Oura seems to suggest that it may shirk its obligations to serve merely by pointing out that Circular is aware that it has been sued. Dkt. 9 at 8-9. Awareness of a suit is not the standard, compliance with service under FED. R. CIV. P. 4 is. *Ellibee v. Leonard*, 226 F. App'x 351, 357 (5th Cir. 2007) *accord and citing Way v. Mueller Brass Co.*, 840 F.2d (5th Cir. 1988) ("actual notice is not sufficient for service of process").

Oura only now asks for alternative service, while claiming to have already completed service. This is again much like the *Buffalo* case where this Court declined to order alternative service until the plaintiff made some effort to comply with the proper procedure for international service at the outset. 2022 U.S. Dist. LEXIS 101232 at *21. Oura should at least attempt proper service first, especially after declining Circular's three offers to waive service. Exs. 5 & 6. For example, the Convention enables service under French law through a bailiff. Ex. 10 at 61 (Article 654); Ex. 11 at Article 5. Once proper service is attempted and fails, Oura is welcome request alternative service. Allowing alternative service for at the outset, particularly to an intractable Oura who refused waiver three times and forced Circular to oppose this wasteful motion would be inappropriate under the circumstances.

Even if the Court views Oura's service and proof of service as adequate, the law favors resolution on the merits over default judgment. *Sindhi v. Raina*, 905 F.3d 327, 331 (5th Cir. 2018). The court should enter default judgment only "when the adversary process has been halted because of an essentially unresponsive party." *Sun Bank of Ocala v. Pelican Homestead & Savings Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Circular is engaged and even offered to waive service months ago. Exs. 5 & 6. Even if this Court determines service was made, it should set a reasonable deadline for Circular's response.

## VI.    DEFAULT JUDGMENT AND A PERMANENT INJUNCTION ARE NOT MERITED

A "party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default. Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Lewis v. Ly*nn, 236 F.3d 766, 767 (5th Cir. 2001) (internal quotations and citations omitted). Further, "any doubt as to whether to enter or set aside a default judgment must be resolved in favor of the defaulting party." *Lindsey v. Prive Corp.*,

161 F.3d 886, 893 (5th Cir. 1998).  This is so because the Fifth Circuit has "'adopted a policy in favor of resolving cases on their merits and against the use of default judgments." *Sindhi v. Raina*, 905 F.3d 327, 331 (5th Cir. 2018).

Oura is not entitled to default judgment because default judgment is procedurally premature, not warranted under the current posture, and the Complaint does not set forth sufficient facts to entitle Oura to relief.  Furthermore, a permanent injunction is not warranted because the balance of the factors strongly favors Circular.

### A.    Default judgment is not procedurally warranted.

Default judgment is not procedurally warranted because the motion is premature, this Court lacks personal jurisdiction, and because the Lindsey factors weigh against default judgment.

### 1.    The motion for default judgment is premature.

In keeping with every other aspect of this case, Oura was so impatient to get some resolution, it has acted hastily and in contravention of the required procedure. Specifically, Oura moved for default judgment before the Clerk has entered default. Dkt. 9 at 9. Entry of default by the Clerk must proceed entry of a default judgment. Fed. R. Civ. P. 55. Thus, Oura's motion is premature. *Schoenbauer v. Deutsche Bank Nat'l Tr. Co.*, Civil Action No. 3:20-CV-1901-E-BH, 2021 U.S. Dist. LEXIS 199946, at *6 (N.D. Tex. Sep. 28, 2021) (denying motion for default judgment prior to entry of default and collecting cases); *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) ("After defendant's default has been entered, plaintiff may apply for a judgment based on such default.") (emphasis added); *In re Cooper Marine & Timberlands Corp.*, No. 1:20-CV-191-DMB-DAS, 2020 U.S. Dist. LEXIS 217330, at *5 (N.D. Miss. Nov. 20, 2020) ("However, because there has been no entry of default entered by the Clerk, entry of a default judgment would be improper."). The Court should deny the entirety of Oura's motion on this basis alone.

2.    **Without proper service, this Court lacks personal jurisdiction.**

"Federal Circuit law governs personal jurisdiction where 'a patent question exists.'" *Acquis LLC v. Lenovo Group Ltd et al.*, No. W-20-CV-00967-ADA (November 16, 2021) *citing Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015). Oura's failure to properly serve Circular means the Court lacks personal jurisdiction. *Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3d Cir. 1996) ( "The failure of a plaintiff to obtain valid process from the court to provide it with personal jurisdiction over the defendant in a civil case is fatal to the plaintiff's case."). Strict compliance with the requirements in Rule 4 is mandatory for personal jurisdiction to attach. *Goodwin v. Housing Authority of New Orleans*, No. Civ. A. 11-1397, 2013 U.S. Dist. LEXIS 104396, 2013 WL 3874907, at *13 (E.D. La. July 25, 2013), *citing Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350-51, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999). On the pleaded facts, it is not even clear if personal jurisdiction would exist once Circular is served. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 785 (5th Cir. 2021). Regardless, this Court cannot enter a permanent injunction until Circular has been served.

3.    **The Lindsey Factors weigh against default judgment.**

When making a determination as to whether or not to enter a default judgment, district courts are to consider the following factors: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). All factors weigh against granting default judgment.

First, all the material facts are at issue. Oura argues that Circular has admitted all allegations by failing to answer, relying on *Babbala LLC v. Shenzhen Jia Yu Tong Tech. Co. Ltd.*, No. 6:20-CV-01032-ADA-JCM, 2022 U.S. Dist. LEXIS 127987, *5 (W.D. Tex. Mar. 8, 2022). However, the Defendant in Babbala failed to answer or defend the case at all. *Id*. at *1 ("Defendant has not appeared or otherwise defended the suit."). Unlike that case, Circular has both specially appeared and is defending this suit.

Circular disputes many of the allegations of the Complaint, but it need not present those facts and arguments until it has properly been served. Circular will dispute the validity of Oura's patents and Circular's infringement in Circular's responsive pleadings. For purposes of this motion, the burden rests with Oura which has made no allegations at all on many crucial facts. For example, Oura has not provided a detailed claim chart, proposes no claim constructions, provides no definition of the market used to determine whether an injunction is merited, provides no facts regarding damages, nor any specific facts about price erosion that would support its request for a permanent injunction. Circular expects to dispute these allegations once the case begins.

Second, there has not been substantial prejudice to Oura. Oura's only support for prejudice to it is a case where the Defendant did not appear or defend the case for over six months.  This is not the case here, nor would it be sufficient to support default judgment in any event. *Waltner v. Aurora Loan Servs., L.L.C.*, 551 F. App'x 741, 744 (5th Cir. 2013) ("Indeed, we have held that when the plaintiff has made no showing of prejudice stemming from the defendant's delay, a default judgment should not be granted on the claim, without more, that the defendant ha[s] failed to meet a procedural time requirement.").  Even under Oura's own position, nothing of substance has changed since the case was filed or purported served that would constitute prejudice to Oura. For example, there is no indication that proceeding on the merits will affect the discovery process,

**OPPOSITION TO MOTION FOR DEFAULT JUDGEMENT – Page 12**

impair Oura's ability to litigate the case, or encourage fraud or collusion. *Gamez v. Hosp. Klean of Tex., Inc.*, No. SA-12-CV-517-XR, 2013 U.S. Dist. LEXIS 35608, at *7 (W.D. Tex. Mar. 14, 2013); *Christiana Tr. v. Jacob*, No. MO:15-CV-00033-DAE-DC, 2015 U.S. Dist. LEXIS 141691, at *13 (W.D. Tex. July 21, 2015). And the mere possibility of delay and requirement to litigate on the merits is not prejudice sufficient to require the default judgment to stand. *St. Claire v. En-sureLink*, No. 3:01-CV-1548-G, 2001 U.S. Dist. LEXIS 20108, at *7 (N.D. Tex. Dec. 4, 2001). Should Oura succeed, the same damages and presumably more will be available to Oura after it serves its complaint, and the case is decided on the merits.

The third and fourth factors also weigh against default. Regarding the third, the grounds for default are not clearly established. Whether service of Circular was effective is hotly contested, as evidence by the parties' motion, opposition, reply and multiple exhibits devoted to the topic. Circular explained its position months ago on whether service was completed, and Oura chose to move for default judgment rather than agree to waiver of service. Ex. 6 at 2-4. Months elapsed while Oura prepared its motion – months when Circular could have been preparing a responsive pleading had Oura agreed. Similarly, the fourth factor weighs against default because Circular's alleged failure to respond to the Complaint was in reliance on counsel's reasonable interpretation of the applicable laws regarding service.

Fifth, default judgment would be harsh because there is a reasonable argument that service has not been completed. An adverse ruling on this issue would be unduly harsh if it were to result in a default judgment of the entire case. This is even more harsh where Circular has specially appeared and is defending the action.

Sixth, it would be reasonable for a court to "feel obligated" to set aside a default judgment under these circumstances. A default judgment where the parties dispute service and the defendant

has appeared and defended the case would not support the judicial policy favoring resolution of cases on their merits. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Entering an injunction now would resolve the case on a disfavored "procedural maneuver." *Id.*

## B.  The complaint fails to set forth facts sufficient to entitle Oura to relief.

Even if taken as true, the Complaint does not include any claim charts or claim constructions. Instead, Oura provided a "High Level Map of Claim 1 [of the '833 Patent] to the Circular Ring." Dkt. 1, at 18, ¶¶ 50-59. This "high level map" does not provide sufficient facts to establish patent infringement. The high level map only recites shorthand for elements of the claim and alleges that the Circular product has those elements. These "labels and conclusions, and a formulaic recitation of the elements" are insufficient to entitle Oura to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Spencer v. Experian Info. Sols., Inc.*, Civil Action No. 4:21-CV-00393, 2022 U.S. Dist. LEXIS 77465, at *8 (E.D. Tex. Apr. 28, 2022) (noting the Fifth Circuit uses Rule 8 jurisprudence to determine if the pleadings demonstrate a sufficient basis).

The Complaint does not sufficiently map its allegations to its diagram of the Circular product.  For example, the Complaint does not sufficiently show how the claimed "electronic part" purportedly fits within the claimed "cavity." Dkt. 1 at 18. Nor does the Complaint show how the coating covers the electronic part (it appears that the electronic part is not covered by the coating and is in direct contact with the wearer's finger). *Id*. Nor does the map illustrate which part of the electronic part has a thickness less than the depth of the cavity. *Id*. Even if the map was more detailed, the Complaint does not construe the term "electronic part" or "coating" sufficiently to establish infringement. The Court is not bound to accept the legal conclusions of the Complaint as facts sufficient to entitle Oura to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Unsurprisingly, many of these are elements of the '833 patent claims that should be the subject of claim construction. Likewise, infringement should be demonstrated by more than mere conclusory arguments. That process can take place once Circular is properly served, and the case begins.

The allegations relating to the '429 patent fare much worse. These allegations do not even include a "high level map." Instead, the Complaint recites its '429 patent infringement allegations in a single paragraph that does not track the language of any claim. Dkt. 1 at ¶ 74; Dkt. 1-2 at 29-30. This recitation does not even meet the low bar of the *Twombly* pleading standards for patent infringement.

### C.    A permanent injunction is not warranted.

An injunction is not warranted because the balance of the four factors favors Circular. *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Oura's harm can be redressed with monetary damages in the form of lost profits or a reasonable royalty, therefore, the first two factors favor Circular. The third factor, balance of hardships, favors Circular because an injunction would be extremely harsh, likely putting Circular out of business. Finally, the fourth factor favors neither party because the public's interest in enforcing patents is balanced by its interest in ensuring that only valid and infringed patents are enforced.

### 1.    Oura will not suffer irreparable harm.

Oura argues that it will suffer irreparable harm because Circular's product will reduce Oura's market share and create price erosion. However, neither is grounds for an injunction if monetary damages are sufficient. *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1380 (Fed. Cir. 2008) (injunctive relief improper when the jury's damages award included both a market entry fee and an ongoing royalty, by which the patentee had been fully compensated); *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) (remanding with guidance to

determine if damages were sufficient to remedy price erosion and loss of market share). Oura compares products, not patents, and claims its market is being damaged irreparably, provides no market definition, offers no facts on why it is entitled to the entire market or to set the pricing for the market, offers no description of the purported price erosion or damage to its reputation purportedly taking place, and seems to assume its chosen pricing structure is the only relevant consideration. Even taking Oura's position as fact, Oura will not suffer irreparable harm because monetary damages will be adequate compensation.

### 2.    Monetary damages will be adequate.

Monetary damages in the form of lost profits or a reasonable royalty will be adequate to compensate Oura. *Seitz v. Envirotech Sys. Worldwide Inc.*, No. H-02-4782, 2008 U.S. Dist. LEXIS 17395, at *20 (S.D. Tex. Mar. 6, 2008); 35 U.S.C. 284. Oura has not even argued that lost profits or a reasonable royalty cannot be calculated through litigation. And, just as in negotiations related to potential settlement of this dispute, Oura refuses to provide any damages calculation. Despite this deficiency, damages will be sufficient compensation should Oura succeed.

### 3.    The balance of hardships favors denying the motion for an injunction.

An injunction will likely put Circular out of business. That is almost certainly the point of this entire suit for the plaintiff. Circular only has one main product, the ring at issue here. Circular was capitalized though fundraising on kickstarter.com and indigogo.com, therefore, it does not have the capital or resources to develop additional products if it is enjoined from selling its ring. Although Circular has taken preorders for its ring, it has only just begun shipping them to its "backers." Ex. 4. An injunction would also require Circular to refund its backers for the as-of-yet-undelivered rings. These factors would likely bankrupt Circular. Accordingly, the balance of

hardships tips in favor of Circular because it "would in all likelihood be forced out of business if it were enjoined."

> *Intel Corp. v. ULSI Sys. Tech.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993).

Likewise, Oura chose the particular "hardship" of selecting an inadequate method of service and then filing this default judgment motion. That it chose this path is entirely its own making. It could have chosen to reliably serve under Hague Service Convention Article 5 *et seq.* or to accept Circular's offers to waive service. Ex. 5 & 6. So, that Oura has been "forced" to file a default judgment motion – and its choice of the timing of that motion – is entirely a problem of its own making.

### 4.      The public interest in an injunction favors Circular.

The public interest in the protection of patents is balanced by its interest in allowing an accused product to remain in the marketplace until liability is fully adjudicated. *Intel Corp. v. ULSI Sys. Tech.*, 995 F.2d 1566, 1567 (Fed. Cir. 1993).  The public would not be well served by a permanent injunction on a default judgment motion, particularly when Circular has appeared and is defending the suit.

## VII.    CONCLUSION

For the foregoing reasons, Oura has failed to serve Circular, no personal jurisdiction over Circular exists, and the Oura's default judgment motion and request for permanent injunction should be denied. Oura's request for alternative service should be denied to provide it time in which to attempt proper service.

September 23, 2022                          _/s/ Kevin E. Cadwell_____

                                           Kevin E. Cadwell
                                           Texas Bar No. 24036304
                                           kcadwell@ccrtlaw.com

                                           Lisa M. Thomas
                                           Texas Bar No. 24079455
                                           lthomas@ccrtlaw.com

                                           **Cadwell Clonts Reeder & Thomas LLP**
                                           5373 W. Alabama St., Suite 457
                                           Houston, TX 77056
                                           Telephone: (713) 360-1560
                                           Facsimile: (940) 233-8587

                                           Jonathan Pearce, Cal Bar. No. 245,776
                                           jpearce@socalip.com
                                           _pro hac vice_

                                           **SoCal IP Law Group LLP**
                                           310 N. Westlake Blvd., Suite 120
                                           Westlake Village, CA 91362-3788
                                           Phone: (805) 230-1350
                                           Fax: (805) 230-1355

                                           Attorneys for Defendant Circular SAS

## <u>CERTIFICATE OF SERVICE</u>

On this 23rd day of September 2022, the undersigned hereby certifies that a true and correct copy of the foregoing has been served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per local Rule CV-5(B)(1).

September 23, 2022                                          */s/ Kevin E. Cadwell*
                                                            Kevin E. Cadwell