IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| ŌURA HEALTH OY,<br>　　*Plaintiff,* | §<br>§<br>§ | |
| v. | §<br>§ | 6:22-CV-00478-ADA |
| CIRCULAR SAS,<br>　　*Defendant.* | §<br>§<br>§<br>§ | |

**ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND
GRANTING PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE**

Before the Court is Plaintiff Ōura Health Oy's ("Ōura") Motion for Default Judgment and Permanent Injunction against Defendant Circular SAS ("Circular"). ECF No. 9. Having reviewed the Motion, the governing law, and the case file, the Court **DENIES** Ōura's Motion for Default Judgment and **GRANTS** Ōura's Motion for Alternative Service.

**I. BACKGROUND**

Ōura filed the Complaint commencing this suit against Circular on May 11, 2022, asserting infringement of United States Patent Nos. 10,893,833 and 10,842,429 ("Asserted Patents") related to wearable ring technology for monitoring a user's health, which were issued on January 19, 2021, and November 24, 2020, respectively. ECF No. 1 ¶¶ 1, 43–44, 68–69.

Circular is a small startup company that sells a wearable ring capable of monitoring a user's health after receiving funding in January 2020. ECF No. 13 Exs. 3–4. Circular's product is available for sale on Kickstarter and Indiegogo, two popular crowdfunding sites. *Id.* Circular is a French société par actions simplifiée, a type of limited liability entity. ECF No. 9 at 2. Circular indicates on their website and in their legal documents that the address they can be reached at is 34 Avenue des Champs-Elysées, 75008, Paris, France. *Id.* Exs. B–D. This is the same address that

1

they have registered with the USPTO and the French Government. *Id.* Exs. E–F. According to Ōura, Circular conducts business in the state of Texas and came to the Creative Industries Expo at South by Southwest Conference and Festivals in Austin, Texas to have attendees "try our circular ring." ECF No. 1 Ex. E.

Ōura sought a service waiver from Circular on May 12, 2022. ECF No. 13-5 at 1. Circular did not accept the initial waiver, but subsequently offered to waive service. *Id.*; ECF No. 13-6 at 1. On May 20, 2022, Circular was served on the Texas Secretary of State in her capacity as an involuntary agent for service of process, who acknowledged and issued a certificate of service on June 16, 2022. ECF No. 6 at 3. Circular repeatedly offered to waive service following service on the Secretary of State. ECF No. 13-6. On August 18, 2022, the Secretary of State issued another certificate, indicating that the process was returned on August 5, 2022, as "Return to Sender, Not Deliverable As Addressed, Unable to Forward." ECF No. 7 Ex. A. On March 7, 2023, the Clerk entered default. ECF No. 16. Ōura filed its Motion for Default Judgment on September 9, 2022. ECF No. 9. Circular specially appeared to respond, filing an Opposition to Ōura's Motion on September 23, 2022. ECF No. 13.

## II. LEGAL STANDARD

**1. Service**

The United States and France are both signatories to the Hague Service Convention, a multilateral treaty intended to "simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash v. Menon*, 137 S. Ct. 1504, 1507 (2017). The Hague Service Convention applies whenever a forum state's process for completing service requires the transmittal of documents abroad. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988); *ACQIS LLC v. Lenovo Grp. Ltd.*, No. W-20-CV-00967-ADA, 2021 WL 5332314, at

*1 (W.D. Tex. Nov. 16, 2021). Article 10 of the Hague Service Convention states the sending of judicial documents via postal channels directly to persons abroad is allowed if the destination State does not object. 20 U.S.T. 361, Article 10. France has indicated they do not object to Article 10. *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 470 (D.N.J. 1998). Article 10(a) specifically allows for the mailing of judicial documents, including initial service documents, directly to nonresidents abroad. *Water Splash*, 581 U.S. at 282–84.

Yet the Hague Service Convention does not apply when the address of the recipient is unknown. 20 U.S.T. 361, Article 1. This Court looks at "the efforts made by plaintiffs to discover whether an address is 'unknown.'" *Mendoza v. PGT Trucking Inc.*, No. 1:18-CV-0432-LY-ML, 2019 WL 6048031, at *2 (W.D. Tex. Apr. 29, 2019). Courts have found an address is unknown "if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so." *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14-CV-1112 (VSB), 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018); *Compass Bank v. Katz*, 287 F.R.D. 392, 394–95 (S.D. Tex. 2012) (same); *see RPost Holdings, Inc. v. Kagan*, No. 2:11-CV-238-JRG, 2012 WL 194388, at *2 (E.D. Tex. Jan. 23, 2012); *cf. United States v. Real Prop. Known As 200 Acres of Land Near FM 2686 Rio Grande City, Tex.*, 733 F.3d 654, 659 (5th Cir. 2014) (finding that an address is unknown under the Tex. R. Civ. P. after extensive measures undertaken by the plaintiff were unsuccessful).

Here, Ōura served Circular through substituted service on the Texas Secretary of State. The laws of Texas require the Secretary of State to transmit that process to the nonresident defendant to complete service. *ACQIS*, 2021 WL 5332314, at *1; *Buffalo Patents, LLC v. ZTE Corp.*, 605 F. Supp. 3d 917, 925 (W.D. Tex. 2022). The mailing between Ōura and the Secretary of State does not constitute service of process; the Secretary of State must forward the process to the nonresident

for service to be "'valid and complete' under state law." *Buffalo Patents*, 605 F. Supp. 3d at 926. Evidence of whether a defendant was properly served is shown through "*Whitney* certificates, which certify that the [Texas] Secretary of State forwarded process to the defendant." *Id.* at 925 (alteration in original). *Whitney* certificates are both sufficient and necessary to indicate that the defendant served process. *Whitney v. L & L Realty Corp*, 500 S.W.2d 94, 96 (Tex. 1973). When the Secretary of State receives a return receipt showing that the package was undeliverable as addressed, this is *prima facie* evidence that the requesting party "provided an incorrect address to the Secretary of State." *Ziegler v. Subalipack (M) SDN BHD*, No. H-16-2598, 2018 WL 3241230, at *1 (S.D. Tex. July 3, 2018) (citing *GMR Gymnastics Sales, Inc. v. Walz*, 117 S.W.3d 57, 59 (Tex. App.—Fort Worth 2003, pet. denied)); *see also Advanced Stimulation Techs., Inc. v. Putnam Energy, LLC*, No. MO-14-CV-118, 2016 WL 8229782, at *2–3 (W.D. Tex. May 11, 2016). But a showing of proof that the address provided to the Secretary of State is valid, such as the nonresident's registration with their respective governing body, can overturn the presumption. *Ziegler*, 2018 WL 3241230, at *2 (citing *Campus Invs., Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004)). Additionally, the *Whitney* certificate is "conclusive evidence that the Secretary of State, as agent of [the defendant], received service of process." *Capitol Brick, Inc., v. Fleming Mfg. Co., Inc.*, 722 S.W.2d 399, 401 (Tex. 1986).

When the Hague Service Convention does not apply, a corporation may be served either in the United States according to state law or in a foreign country according to that country's laws. Fed. R. Civ. P. 4(e)(1), 4(f)(2)(A); *see* Fed. R. Civ. P 4(h)(1–2). The Texas Secretary of State receives service as an agent for the defendant in Texas when served, absent any fraud or mistake by the plaintiff. *Capitol Brick*, 722 S.W.2d at 401. The defendant receives proper notice as required once the Secretary of State forwards the service to the defendant. *Buffalo Patents*, 605 F. Supp. 3d

at 926. This does not mean that the service is completed within Texas; service on the Secretary of State requires the sending of documents abroad and therefore must comply with foreign laws as required. *STS Products, Inc. v. Boss Solutions LLC*, No. H-19-4003, 2020 WL 13413995, at *4 (S.D. Tex Jan. 21, 2020). France requires service be personal via a French bailiff and, at the recipient's request, in French. ECF No. 13-10, Articles 651, 654, 688-6 ("French R. Civ. P.").

**2. Default Judgment**

"Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001). A "party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Settlement Funding, LLC v. TransAmerica Occidental Life Ins. Co.*, 555 F.3d 422, 424 (5th Cir. 2009). "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After a defendant has defaulted, the Court may enter a default judgment upon motion. Fed. R. Civ. P. 55(b). Additionally, the plaintiff must file an affidavit stating whether the defendant is in military service before the Court can issue a default judgment. 50 U.S.C § 3931. "In determining whether to enter a default judgment against a defendant, Courts in the Fifth Circuit use a three-part analysis: (1) whether default judgment is procedurally warranted; (2) whether the [] Complaint sufficiently sets forth facts establishing that [plaintiff] is entitled to relief; and (3) what form of relief, if any, the [plaintiff] should receive." *United States v. Giles*, 538 F. Supp. 2d 990, 993 (W.D. Tex. 2008). The Fifth Circuit uses six factors to determine whether a default judgment is procedurally warranted. *Alvarado Martinez v. Eltman L., P.C.*, 444 F. Supp. 3d 748, 752 (N.D. Tex. 2020) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). The factors are: "(1) whether material issues of fact exist; (2)

5

whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion." *Id.* In considering whether the Complaint sets forth facts establishing that plaintiff is entitled to relief, the court accepts as true the well-pleaded allegations of facts in the complaint (except regarding damages) but must determine whether those facts state a claim upon which relief may be granted. *United States ex rel. M-Co. Constr., Inc. v. Shipco Gen.*, Inc., 814 F.2d 1011, 1014 (5th Cir. 1987); *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Thus, for a plaintiff to obtain a default judgment, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu*, 515 F.2d at 1206.

### 3. Alternative Service

Under Fed. R. Civ. P. 4(f)(3), the plaintiff may request that the court allow an alternative method of service not otherwise provided by law. This rule is "not a last resort or a type of extraordinary relief for a plaintiff seeking to serve process on a foreign defendant." *In re OnePlus Tech. (Shenzhen) Co., Ltd.*, No. 2021-165, 2021 U.S. App. LEXIS 27282, at *9 (Fed. Cir. 2021) (internal citation and quotations omitted). Alternative service is especially appropriate when "defendants have actual notice of and are actively participating in" the suit. *SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, No. 2:20-CV-00003-JRG, 2020 WL 6578411, at *3 (E.D. Tex June 15, 2020) (citing *WorldVentures Holdings, LLC v. Mavie*, No. 4:18-CV-393, 2018 WL 6523306, at *14 (E.D. Tex. Dec. 12, 2018)). This Court has previously found service upon domestic counsel to be an effective means of alternative service to give the defendant notice.

*WSOU Invs., LLC v. TP-Link Techs. Co.*, No. 6:20-cv-1012-ADA, 2021 U.S. Dist. LEXIS 167111, at *13–15 (W.D. Tex. Sept. 1, 2021).

### III. DISCUSSION

**1. The Service Provided to Circular is Invalid**

    **A. The Hague Service Convention Does Not Apply**

The search efforts undertaken by Ōura are more involved than that of the plaintiff in *Mendoza* because Ōura reviewed several different sources, such as Circular's filing with the USPTO, Circular's registration with the French Government, and multiple of Circular's official documents. *See Mendoza*, 2019 WL 6048031, at *4; ECF No. 9 Exs. B–F. The defendant in *Mendoza* failed to research the accurate address, struggling three separate times with three similar, but different, addresses and failing to ensure that all the addresses were invalid. *Mendoza*, 2019 WL 6048031, at *4. Here, Circular's alleged address was identical in all publicly available documents and in the records of all relevant government entities, suggesting this is the only known address for Circular. Because there is only one address for Circular and it is invalid, Circular's true address is unknown. *See Advanced Access Content Sys.*, 2018 WL 4757939, at *4. Therefore, the Hague Service Convention does not apply here.

    **B. Service on the Secretary of State did not Satisfy French Law**

The Secretary of State is an agent for service of process because Circular conducts business within the state. Tex. Civ. Prac. & Rem. § 17.044(a)(1). The Secretary of State indicated that process was forwarded to Circular on June 15, 2022. ECF No. 6 at 3. By indicating that the Secretary of State received and forwarded the process, service was "valid and complete" under state law. *Buffalo Patents*, 605 F. Supp. 3d at 926. But because the documents received by the

Secretary of State must be mailed abroad, the documents must also comply with foreign service laws. *STS Products*, 2020 WL 13413995, at *4.

The second *Whitney* certificate indicated that the package by sent by the Secretary of State was "[n]ot [d]eliverable [a]s addressed, [u]nable to [f]orward." ECF No. 7 Ex. A. Although this does create a presumption that Ōura failed to provide the Secretary of State an accurate address, which would invalidate service, Ōura refuted this presumption by showing Circular registered the same address with several government entities, including France's Centre de formalités des entreprises, and in their own legal documents. ECF No. 9 Exs. B–F. Therefore, Ōura satisfied Texas's requirements for serving the Secretary of State as an involuntary agent of Circular.

Even so, the service did not meet the requirements of Fed. R. Civ. P. 4(h). Service was complete once the Secretary received and forwarded the documents to Circular's alleged address. *Capitol Brick*, 722 S.W.2d at 401. At the same time, service was not completed within a judicial district of the United States because the mailing by the Secretary of State must be sent abroad, making Fed. R. Civ. P. 4(f)(2) the governing law. Ōura most closely attempted to serve process under Fed. R. Civ. P. 4(f)(2)(A), as there is no proof Ōura interacted with the French government to serve process in compliance with Fed. R. Civ. P. 4(f)(2)(B) nor did Ōura have the clerk mail process to Circular to satisfy Fed. R. Civ. P. 4(f)(2)(C)(ii). Therefore, because the process was not personally delivered, by a French bailiff, and accompanied with a French translation, service was not in compliance with French law and is therefore does not meet the requirements for proper service under Fed. R. Civ. P. 4(f)(2)(A).

Ōura argues that service was therefore completed within a judicial district of the United States once the Secretary of State mailed the process documents to Circular's alleged address, making Fed. R. Civ. P. 4(e)(1) the correct governing law. This Court has previously held that

8

service on an involuntary agent of service requires the sending of documents overseas invokes the Hague Service Convention. *ACQIS*, 2021 WL 5332314, at *1; *Buffalo Patents*, 605 F. Supp. 3d at 925. Implicitly, service using these measures has invoked Fed. R. Civ. P. 4(f)(1). In the rare occurrence when the Hague Service Convention does not apply to member states, the service is still conducted in a foreign country, rather than in the United States. Furthermore, allowing service to be done in such a manner is equivalent to *notification au parquet*. This Court in *Buffalo Patents* specifically noted the Due Process concerns resulting from *notification au parquet* and found practically there is no notice given to the defendant. Although Circular did have actual notice here, that is not sufficient to meet the requirements of service under Fed. R. Civ. P. 4. *Ellibee v. Leonard*, 226 F. App'x 351, 357 (5th Cir. 2007).

**2. Default Judgment and a Permanent Injunction are Unwarranted**

The Fifth Circuit, which the Federal Circuit follows in procedural matters, has consistently held that a default judgment based on improper service is void. *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 399 (5th Cir. 2001); *Rogers v. Hartford Life and Acc. Ins. Co.*, 167 F.3d 933, 937 (5th Cir. 1999). In other words, "[u]ntil the plaintiff serves the defendant, the defendant has no duty to answer the complaint and the plaintiff cannot obtain a default judgment." *Rogers*, 167 F.3d at 937. Because improper service overturns an entry of default, this Court will not further analyze whether a default judgment is otherwise warranted. This Court cannot enter default judgment because it has not been established that service was proper.

**3. Alternative Service on Circular's Counsel is Permitted**

The sole reason that service was not valid is because of Circular's failure to maintain a proper address, as required by law with both the USPTO and the French Government.

Had the Hague Service Convention applied, Ōura's service would have been valid. Service to the Texas Secretary of State was valid under Texas law for the aforementioned reasons. The forwarding by the Secretary of State is a mailing subject to the Hague Service Convention under Fed. R. Civ. P. 4(f)(1). *Buffalo Patents*, 605 F. Supp. 3d at 926. Service by mail directly to a nonresident defendant to a valid address is allowed under Article 10(a) of the Hague Service Convention when the nonresident's country does not object. *Water Splash, Inc.*, 581 U.S. at 282–84. France does not object to Article 10 and therefore Circular could have been served by mail directly. *Paradigm Entm't, Inc. v. Video Sys. Co., Ltd.*, No. 99-CV-2004, 2000 WL 251731, at *7 (N.D. Tex. Mar. 3, 2000) (finding that service by mail under Article 10 of the Hague Service Convention is valid even when service by mail is prohibited under Japanese law because Japan does not object to Article 10). The translation of documents is not required to comply with French law under Article 10 of the Hague Service Convention, only under Article 5.

Because it was Circular's inability to provide an accurate address that prevented proper service, rather than Ōura's failure to reasonably serve Circular, and Circular has actual notice of the suit, alternative service is warranted. In holding with prior decisions and Ōura's request, Ōura may serve Circular's domestic counsel, Jonathan Pearce or Sandy Lipkin, under Fed. R. Civ. P. 4(f)(3).

## IV. CONCLUSION

Based on the foregoing analysis of the facts and legal principles, Ōura's Motion for Entry of Default Judgment and Permanent Injunction against Circular (ECF No. 9) is **DENIED**. Ōura's Motion for Alternative Service on Circular's counsel is **GRANTED**. Ōura has 21 days to serve Circular's counsel and submit evidence to the Court.

SIGNED this 1st day of June, 2023.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE