UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| ŌURA HEALTH OY, | ) | |
| | ) | |
| Plaintiff and Counterclaim Circular, | ) ) | |
| | ) | |
| v. | ) | Case No. 6:22-cv-478 |
| | ) | |
| CIRCULAR SAS, | ) | |
| | ) | |
| Circular and Counterclaim Plaintiff. | ) ) | JURY TRIAL DEMANDED |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**DEFENDANT CIRCULAR'S OPENING CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ...................................................................................................... iii

I.    Introduction ................................................................................................................... 1

II.   Overview of the Asserted Patents ............................................................................... 1

    A.    U.S. Patent No. 10,842,429 ("'429 Patent") ................................................... 1

    B.    U.S. Patent No. 10,893,833 ("'833 Patent") ................................................... 2

III.  Level Of Ordinary Skill ............................................................................................... 3

IV.   Agreed Claim Terms .................................................................................................... 3

V.    Disputed Claim Terms .................................................................................................. 4

    A.    '429 Patent, Claims 1, 8: "using the obtained user's movements to determine a nature of the period, wherein the nature of the period is selected from an activity period and a rest period" ....................................................................... 4

    B.    '429 Patent, Claim 5: "a sleep balance" ......................................................... 7

    C.    '429 Patent, Claim 8: "means for measuring at least one biosignal of the user" ................................................................................................................... 8

    D.    '429 Patent, Claims 8, 9: "means for measuring the user's movements during an active period and the rest period" ............................................................... 10

    E.    '833 Patent, Claim 1: "inner surface" ........................................................... 11

    F.    '833 Patent, Claim 6: "the cavity a bottom of the cavity" ............................. 12

    G.    '833 Patent, Claim 7: "a bottom of the at least one cavity" .......................... 14

    H.    '833 Patent, Claim 10: "ink" ......................................................................... 14

VI.   Conclusion ................................................................................................................... 15

<u>**TABLE OF AUTHORITIES**</u>

## <u>Cases</u>

*ACTV, Inc. v. Walt Disney Co.*,
   346 F.3d 1082 (Fed. Cir. 2003) ................................................................................. 6

*Bennett Regul. Guards, Inc. v. Atlanta Gas Light Co.*,
   825 F. App'x 773 (Fed. Cir. 2020) ........................................................................... 1

*Chef Am., Inc. v. Lamb–Weston, Inc.*,
   358 F.3d 1371 (Fed. Cir. 2004) ............................................................................... 13

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*,
   815 F.3d 1314 (Fed. Cir. 2016) .......................................................................... 12, 15

*Ericsson, Inc. v. D-Link Sys., Inc.*,
   773 F.3d 1201 (Fed. Cir. 2014) ................................................................................. 7

*Hafeman v. LG Elecs., Inc.*,
   No. 621CV00696ADADTG, 2023 WL 2978968 (W.D. Tex. Apr. 17, 2023) ............ 13

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
   755 F.3d 1367 (Fed. Cir. 2014) ............................................................................ 9, 12

*Interval Licensing LLC v. AOL, Inc.*,
   766 F.3d 1364 (Fed. Cir. 2014) ................................................................................. 5

*IQASR LLC v. Wendt Corp.*,
   825 F. App'x 900 (Fed. Cir. 2020) .......................................................................... 14

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004) ............................................................................. 1, 12

*Media Rights Techs., Inc. v. Capital One Fin. Corp.*,
   800 F.3d 1366 (Fed. Cir. 2015) ................................................................................. 6

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014) ....................................................................................... 5, 6, 13

*Novo Indus., L.P. v. Micro Molds Corp.*,
   350 F.3d 1348 (Fed. Cir. 2003) ................................................................................. 6

*O2 Micro Int'l. Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) .......................................................................... 12, 15

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) .......................................................... 6, 7

*Rembrandt Data Techs., LP v. AOL, LLC*,
   641 F.3d 1331 (Fed. Cir. 2011) ............................................................................... 13

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
   653 F.3d 1296 (Fed. Cir. 2011) ................................................................................. 1

*Via Vadis, LLC v. Buffalo Americas, Inc.*,
   No. A-14-CV-808-LY, 2016 WL 5239626 (W.D. Tex. Sept. 20, 2016) .............. 5, 13

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ................................................................................... 8

**<u>Statutes</u>**

35 U.S.C. § 112(b) ................................................................................................. 4, 6, 12, 14

35 U.S.C. § 112(f) .................................................................................................. 8, 9, 10

I.      **Introduction**

Defendant Circular ("Circular") seeks to clarify the scope of the asserted claims through constructions that comport with the claims, specifications, and file histories of the patents-in-suit and appropriately "tether the claims to what the specifications indicate the inventor[s] actually invented." *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011). Conversely, Plaintiff Ōura Health Oy's ("Plaintiff" or "Ōura") claim construction positions either ignore obvious problems with the claim terms as written or seek to impermissibly narrow the scope of certain claims in an attempt to avoid prior art and preserve their validity. Plaintiff is not entitled to modify its claims through rehabilitating claim construction. *See Bennett Regul. Guards, Inc. v. Atlanta Gas Light Co.*, 825 F. App'x 773, 777 (Fed. Cir. 2020) ("Claims are construed to preserve validity ***only if***, 'after applying all the available tools of claim construction ... the claim is still ambiguous.'") (emphasis added) (*quoting Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 911 (Fed. Cir. 2004)). The Court should adopt Circular's constructions in order to clarify the scope of the claims so as to inform the parties' forthcoming invalidity and non-infringement arguments.

II.     **Overview of the Asserted Patents**

A.      **U.S. Patent No. 10,842,429 ("'429 Patent")**

The '429 Patent generally claims a method and system of collecting data regarding a user's movements, using the movement data to determine a rest period and an activity period, measuring the user's biosignals during the rest period, determining a rest period summary, determining an activity summary, determining a body response summary based on the rest summary and activity summary, calculating a readiness score, and, on a user interface of a mobile communication device, showing elements contributing to the readiness score as well as instructions related to physical activity and mental activity for improving the readiness score. '429 Patent at Abstract. The

specification explains that the "readiness score indicates a level of readiness of the user as well as the recovery of the user from the mental and physical load." *Id*. at 10:3–5. The specification describes providing the user with "appropriate instructions to improve the readiness score." *Id*. at 2:37–40.

Independent claim 1 of the '429 Patent is a process claim disclosing a "method for assessing readiness of a user." *Id*. at claim 1. Asserted claims 3–6 each depend directly from claim 1.[1] Independent claim 8 claims a "system for assessing readiness of a user" comprising a "ring configured to be worn by the user," a "mobile communication device configured to communicate with the ring," and a "server configured to communicate with the mobile communication device," the server being operable to perform a method substantially similar to the method of claim 1. *Id*. at claim 8. Asserted claims 9–12 depend directly from claim 8.

**B.      U.S. Patent No. 10,893,833 ("'833 Patent")**

The '833 Patent generally describes and claims a wearable electronic device including a body portion, an electronic part, and a coating. '833 Patent at Abstract. The body portion is made of a non-ceramic material with at least one cavity on its inner surface. *Id*. The electronic part has a thickness less than the depth of the cavity, and the coating is made of a moldable filler material on the inner surface of the body part that covers the electronic part. *Id*. The disclosed wearable device can be a ring as shown below:

---

[1] Plaintiff is no longer asserting claim 2 of the '429 Patent against Circular.



**FIG. 1**

*Id.* at FIG 1.

## III. Level Of Ordinary Skill

A person of ordinary skill in the art ("POSA") for the '429 Patent would have a bachelor's degree in health data science, equivalent professional experience, or a similar level of education in a related field, and would have three years of experience in the design, prototyping, or manufacture of wearable devices or other small form-factor consumer electronic devices. Graduate education may substitute for professional experience or a different undergraduate background and vice versa.

A POSA for the '833 Patent would have a bachelor's degree in mechanical engineering, physics, industrial or operational design, equivalent professional experience, or a similar level of education in a related field, and would have three years of experience in the design, prototyping, or manufacture of wearable electronic devices or other small form-factor consumer electronic devices. Graduate education may substitute for professional experience or a different undergraduate background and vice versa.

## IV. Agreed Claim Terms

The parties have agreed on the constructions for the following terms:

| Claim Term | Asserted Claims | Agreed Construction |
|---|---|---|
| "obtaining the user's movements" | '429 Patent Claim 1 | "collecting data regarding the user's movements" |
| "instructions related to physical activity and mental activity for improving the readiness score" | '429 Patent Claims 1, 8 | "instructions related to at least one physical activity and at least one mental activity for improving the readiness score" |
| "an activity determination device" | '429 Patent Claim 9 | "a device other than the ring or the mobile device that measures activity and can communicate with the mobile communication device" |
| The preamble: "A wearable electronic device" | '833 Patent Claim 1 | The parties agree that the preamble is limiting. |

## V.    Disputed Claim Terms

### A.    '429 Patent, Claims 1, 8: "using the obtained user's movements to determine a nature of the period, wherein the nature of the period is selected from an activity period and a rest period"

| CIRCULAR'S PROPOSAL | PLAINTIFF'S PROPOSAL |
|---|---|
| The term is indefinite under 35 U.S.C. § 112(b) .<br><br>OR<br><br>"based on the collected data regarding the user's movements, identifying a period of time when the user is at rest and a period of time when the user is active" | No construction is necessary. This term is self-explanatory within the context of the claim, and therefore should receive its plain and ordinary meaning. |

As written, and in light of the rest of the claims, this term is indefinite because it fails to inform a POSA of the steps necessary to practice the claimed method. The specification does not explain how a POSA should "determine" a "nature" of a period.  Additionally, the term as written renders claims 1 and 8 indefinite because it allows for determination of *either* an activity period *or* a rest period, but subsequent steps of the claimed methods require that *both* an activity period and a rest period be determined.

A claim is indefinite if its language, when read in light of the specification and the prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Notably, "a patent does not satisfy the definiteness requirement of § 112 merely because 'a court can ascribe **some** meaning to a patent's claims.'" *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (*quoting Nautilus*, 572 U.S. at 911) (emphasis in original). Rather, the claims "must provide objective boundaries for those of skill in the art." *Id.*

There are multiple fundamental problems with this claim term. First, the claim term requires a POSA "to determine a nature of **the** period," without first defining what **a** period is (i.e., it has no antecedent basis). *See Via Vadis, LLC v. Buffalo Americas, Inc.*, No. A-14-CV-808-LY, 2016 WL 5239626, at *7 (W.D. Tex. Sept. 20, 2016) (subsequent history omitted) (finding "the lack of antecedent basis and inability of a person of ordinary skill in the art to determine to what the term is referring renders the limitation indefinite."). As written, the use of the definite article "the" in this term means that this limitation refers to a singular "period," yet the claims continue on to instruct a POSA to perform steps related to **both** an activity period **and** a rest period. The language of this term cannot be reconciled with the remainder of the claim language and, therefore, is indefinite.

Second, the term requires the "nature of the period" to be "selected from an activity period and a rest period," meaning that a POSA practicing the claimed method could determine the nature of the period by selecting an "activity period." However, the next limitation in claims 1 and 8 requires "measuring at least one biosignal of the user during the **rest period**," and then requires "determining an activity summary for the **activity period**." '429 Patent at claims 1, 8 (emphasis added). If the method determines the nature of "**the** period" to be an "activity period" for example,

then there is no "rest period" as later limitations require. Likewise, if the method determines the nature of "***the*** period" to be a rest period, then there is no "activity period" for which a POSA could determine an activity summary.  In either case, it is unclear whether a POSA practicing the claims must repeatedly determine the nature of additional periods or if the claimed method simply terminates when the POSA only identifies either a rest or activity period.  As written, one of ordinary skill in the art would not be able to determine the scope of coverage of the claimed method. Thus, claims 1 and 8 fail the definiteness requirement of 35 U.S.C. § 112(b) because the disputed claim language—which goes to the heart of the claimed method—"'might mean several different things and no informed and confident choice is available among the contending definitions.'" *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1371 (Fed. Cir. 2015) (quoting *Nautilus*, 572 U.S. at 911 n. 8).

A district court may, however, interpret a claim term to correct an error in a patent "if (1) the correction is not subject to reasonable debate based on considerations of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003). To the extent the Court determines that such a correction by interpretation is appropriate here, the only plausible interpretation of this limitation is that a POSA should use the collected data regarding the user's movements to determine ***both*** an activity period and a rest period so as to be able to perform the subsequent method steps related to both of those periods. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*) ("the claims themselves provide substantial guidance concerning the meaning of particular claim terms.") (citation omitted); *see also ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) (noting that "the context of the

surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms") (internal citation omitted).

During the meet and confer process, counsel for Plaintiff offered to adopt substantially all of Circular's proposed construction of this term, but insisted on including "based on the collected data regarding the user's movements, identifying a period of time when the user is at rest **_or_** a period of time when the user is active" within the construction. Exhibit A (email exchange). While Plaintiff's proposal at least clarifies the antecedent basis issues with the language as written, it fails to clarify the fundamental question of whether a POSA would perform the claims method by only determining the nature of an activity period or a rest period. Moreover, the claim language itself, as well as the specification, describes embodiments "wherein the nature of the period is selected from the activity period **and** the rest period." '429 Patent at 2:20–21 (emphasis added), *see also id*. at 4:25–27, 5:18–19, claim 1, claim 9. Plaintiff's proposal therefor cannot be correct because it is contrary to the language of the claims and specification. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1218 (Fed. Cir. 2014) (explaining that claim construction "typically begins and ends with the intrinsic evidence. In fact, the specification is the single best guide to the meaning of the claim terms; it is usually dispositive.") (citing *Phillips*, 415 F.3d at 1318). Accordingly, the Court should find this limitation to be indefinite as a matter of law or should adopt Circular's proposed construction.

**B.    '429 Patent, Claim 5: "a sleep balance"**

| Circular's Proposal | Plaintiff's Proposal |
|---|---|
| "the sum of how much accumulated sleep over the previous weeks differs from individual sleep needs" | No construction is necessary. This term is self-explanatory within the context of the claim, and therefore should receive its plain and ordinary meaning. |

"A sleep balance" is neither a term of art nor a commonly understood term. The specification, however, defines this term as an example of a "concrete parameter[] that may be defined" ('429 Patent at 11:63–64):

> Sleep balance (sleep debt); the sum of how much accumulated sleep over past 1-3 weeks differs from individual sleep needs

*Id*. at 12:1–3. A "patentee may choose to be his own lexicographer" by providing a "special definition" that governs even if it contradicts the "ordinary and customary meaning." *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996). A patent's specification may define a claim term "expressly" or "by implication." *Id*. Plaintiff did so here and, accordingly, the Court should adopt Circular's construction in order to ensure clarity of the asserted claims.

### C.    '429 Patent, Claim 8: "means for measuring at least one biosignal of the user"

| CIRCULAR'S PROPOSAL | PLAINTIFF'S PROPOSAL |
|---|---|
| No construction needed | Governed by 35 U.S.C. § 112(f). <br><br> **CLAIMED FUNCTION**: <br> "measuring at least one biosignal of the user." <br><br> **PLAINTIFF'S PROPOSED STRUCTURE**: <br> "one or more of optical electronics, electrodes, or temperature sensor." |

The specification defines "biosignals" broadly to include "electrocardiogram (EKG or ECG), a photoplethysmogram (PPG), an electromyogram (EMG), an electroocylogram (EOG), a heart rate, a heart rate variability, body temperature, a resting heart rate, an average heart rate and signals related to breathing." *See e.g.,* '429 Patent at 6:7–15. Some of these biosignals are measured by specific structures understood in the art, as expressed in the specification. For example, electrocardiograms are known in the art to be measured by a pair of electrodes, (*see id*. at 6:61–67, claim 13), and photoplethysmograms can be measured using optical electronics, particularity

using the principle of transmittance or reflectance of light (*id*. at 7:15–25). However, some of the biosignals—specifically, a heart rate, a heart rate variability, body temperature, a resting heart rate, an average heart rate, and signals related to breathing—can be measured by a wide variety of different means. For example, the specification describes that "a breathing rate" could be measured by a variety of apparatus, including "with impedance measurement or thermistor[*sic*, thermistor], [a] sensor attached to bed, [a] microphone, [a] video recording," . . . etc. *Id*. at 23:2–5. This broad array of options relating to biosignals in the specification makes clear that the important limitations of this element of claim are ***that*** a biosignal is capable of being measured, not ***how*** it is measured.

Plaintiff seeks to narrow this broad element by reading in only certain structures from the specification. While the specification does describe certain embodiments of a ring configured to be worn by the user that include optical electronics (*e.g.* '429 Patent at FIG. 2, 7:26–35, 18:31–34), electrodes (*e.g.*, *id*. at 6:64–67), and/or temperature sensors (*e.g. id*. at 7:37–39), Plaintiff may not import limitations from these embodiments into claim 8. *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) ("While we read claims in view of the specification, of which they are a part, we do not read limitations from the embodiments in the specification into the claims."). The specification, in fact, specifically instructs that the exemplary ring "includes other electronic[s] 134 configured to collect and analyse[*sic*] raw data," ('429 Patent at 17:64–67), which makes clear that even the patentee did not understand the "means for measuring" as strictly limited to the three categories in Plaintiff's construction. Plaintiff's proposed structures are simply too narrow, even considering the "equivalents thereof" as directed by 35 U.S.C. § 112(f).

Given the specifically enumerated set of biosignals and the standard ways to measure those biosignals known in the art, there is no need to construe this term in the first place, and certainly no justification to significantly narrow this term as suggested by Plaintiff's construction.

**D.    '429 Patent, Claims 8, 9: "means for measuring the user's movements during an active period and the rest period"**

| CIRCULAR'S PROPOSAL | PLAINTIFF'S PROPOSAL |
|---|---|
| "means for collecting data regarding the user's movements during an activity period and during the rest period" | Governed by 35 U.S.C. § 112(f). <br><br> **CLAIMED FUNCTION**: <br> "measuring the user's movements" <br><br> **PLAINTIFFS' PROPOSED STRUCTURE**: <br> "at least one motion sensor." |

There is a fundamental ambiguity with this term in that it would not be clear to a POSA what "measuring the user's movements" means with regards to the rest of the claim. According to the specification, a POSA needs to do something more than just "measure" a user's movements; the POSA must quantify some sort of information about the movements in order to proceed with the remaining steps of the method. *See* '429 Patent at 7:4–5 ("The motion sensor is configured to generate motion data that is indicative of the movements of the user."). Circular's proposed construction clarifies that "measuring" means "collecting data," which data is necessary to perform the remainder of the steps in these claims.

Plaintiff's proposed structure of "at least one motion sensor" is incorrect for two independent reasons. First, Plaintiff's proposed construction, itself, includes an ambiguous term: "motion sensor." Proposing a construction that contains an ambiguous term invites a second round of claim construction, here to determine what "motion sensor" means in light of the claims and the specification. The specification gives examples of motion sensors (*e.g.*, '429 Patent at 7:1–4 ("In one embodiment, the ring thus includes at least one motion sensor, such an accelerometer, a gyroscope, a magnetic field sensor or a combination thereof, to measure user's movement."), *id.* at 17:62–64 ("at least one motion sensor 132 (such as an accelerometer, a gyroscope, a magnetic

field sensor or a combination thereof)")), but never makes clear exactly the scope of "motion sensors" envisioned by the patentee.

Second, and similar to Plaintiff's position on "means for measuring at least one biosignal of the user," Plaintiff is seeking to narrow this broad element by confining it to the examples the specification. The specification makes clear that motion data can be collected "from a motion artifact of a biosignal such as an electrocardiogram (EKG), a PPG, an electromyogram (EMG), or data from global positioning system (GPS)." '429 Patent at 22:57–67. A POSA would also know that a user can obtain motion information in other ways as well, for example via video or film, or via terrestrial location tracing (in addition to or instead of GPS). Claim 9 specifically requires that the "means for measuring the user's movements [can be] arranged … in an activity determination device," (*id.* at claim 9), which the parties agree is "a device other than the ring or the mobile device that measures activity and can communicate with the mobile communication device." The "means for measuring the user's movements," therefore, must include more than the few specific types of sensors disclosed as being part of embodiments of the ring.  Accordingly, the Court should adopt Circular's construction of this term.

### E.    '833 Patent, Claim 1: "inner surface"

| CIRCULAR'S PROPOSAL | PLAINTIFF'S PROPOSAL |
|---|---|
| "surface of the wearable electronic device that, when the device is worn, is in contact with the skin of the user and not externally visible" | No construction is necessary. This term is self-explanatory within the context of the claim, and therefore should receive its plain and ordinary meaning. |

"Inner surface," as it appears in claim, is ambiguous. While the figures label an "inner surface" in ring embodiments of the claimed invention (*see, e.g.*, '833 Patent at FIGs. 1, 3–5, 7A, 7C, 8, 9), such labeling may not be clear if the embodiment is something other than a ring. The limiting preamble ("a wearable electronic device") of claim 1 is significantly broader than a ring.

This is particularly evident from dependent claim 12, which limits the "wearable electronic device according to claim 1" to "a ring configured to be worn on a finger" (*id*. at claim 12). *See Liebel-Flarsheim*, 358 F.3d at 910 ("[T]he presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim."); *Hill-Rom*, 755 F.3d at 1374 (same).

Circular's construction finds support in the specification, which contrasts the inner and outer surfaces: "The inner surface contacts the skin of the user, whereas the outer surface is opposite to the inner surface and externally visible." '833 Patent at 4:23–25. Circular's construction thus adopts the specification's description of the "inner surface" in order to avoid the confusion that otherwise arises from this term.

Plaintiff advocates for no construction. However, "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute.'" *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc*., 815 F.3d 1314, 1318 (Fed. Cir. 2016) (quoting *O2 Micro Int'l. Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008)). "Inner surface" is described in the specification in contrast to the outer surface, and that description resolves the ambiguity over what surfaces are "inner" (versus "outer") in claimed embodiments other than rings. The Court should therefore adopt Circular's construction of "inner surface" in order to resolve the possible ambiguity of this term and the apparent dispute between the parties.

**F.    '833 Patent, Claim 6: "the cavity a bottom of the cavity"**

| CIRCULAR'S PROPOSAL | PLAINTIFF'S PROPOSAL |
|---|---|
| The term is indefinite under 35 U.S.C. § 112(b). | No construction is necessary. This term is self-explanatory within the context of the claim, and therefore should receive its plain and ordinary meaning. This term is not indefinite. |

The phrase "the cavity a bottom of the cavity" makes no grammatical sense and, as a matter of law, renders claim 6 indefinite. The specification does not define "the cavity a bottom of the cavity." Claim 1, from which claim 6 depends, defines "at least one cavity," and exclusively refers to it as "at least one cavity." *See* '833 Patent at claim 1. Claim 1 never defines "***the*** cavity." Accordingly, it is indefinite whether "the cavity" in claim 6 is the "at least one cavity" from claim 1, or something else.  Claim 1's reference to "at least one cavity" allows the claimed device to have more than one cavity.  In such cases, claim 6 would also be indefinite because nothing in the claim guides a POSA as to which of the multiple cavities is "the cavity" referenced in claim 6. These ambiguities render claim 6 invalid as indefinite as a matter of law. *See Via Vadis*, 2016 WL 5239626, at *7 (finding "the lack of antecedent basis and inability of a person of ordinary skill in the art to determine to what the term is referring renders the limitation indefinite.").

Moreover, a POSA has no idea how to attach the electronic part to "the cavity a bottom of the cavity." A POSA would understand what a "cavity" is (although, as discussed above, "the cavity" in claim 6 lacks an antecedent basis).  A POSA would also understand "a bottom of the cavity."  But "the cavity a bottom" has no understandable meaning in English. There are either extra words in, or missing words from, the phrase.  Regardless of which it is, the Federal Circuit "repeatedly and consistently has recognized that courts may not redraft claims, whether to make them operable or to sustain their validity." *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011) (citing *Chef Am., Inc. v. Lamb–Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004)). More succinctly, "[i]t is not the Court's job to rewrite (or proofread) claim language." *Hafeman v. LG Elecs., Inc.*, No. 621CV00696ADADTG, 2023 WL 2978968, at *14 (W.D. Tex. Apr. 17, 2023). Claim 6, simply "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 901. Accordingly, and

based on the undeniable error present in the limitation, the Court should find that this term is indefinite.

### G.    '833 Patent, Claim 7: "a bottom of the at least one cavity"

| CIRCULAR'S PROPOSAL | PLAINTIFF'S PROPOSAL |
|---|---|
| The term is indefinite under 35 U.S.C. § 112(b). | No construction is necessary. This term is self-explanatory within the context of the claim, and therefore should receive its plain and ordinary meaning. |

Claim 7 depends from the indefinite claim 6. The interjection of claim 6 in the dependency chain renders claim 7 indefinite because the electronic part that "is attached to the cavity a bottom of the cavity" in claim 6 cannot also be attached "to the at least one cavity at a bottom of the at least one cavity" in claim 7. Claim 7 thus falls as indefinite with claim 6. *See IQASR LLC v. Wendt Corp.*, 825 F. App'x 900, 901, 908 (Fed. Cir. 2020) (affirming district court's judgment holding that "independent claim 1 (**and thus the remaining claims, all dependent** from claim 1) indefinite.") (emphasis added).  Accordingly, the Court should find that claim 7 is indefinite.

### H.    '833 Patent, Claim 10: "ink"

| CIRCULAR'S PROPOSAL | PLAINTIFF'S PROPOSAL |
|---|---|
| "colorant" | No construction is necessary. This term is self-explanatory within the context of the claim, and therefore should receive its plain and ordinary meaning. |

The claims and the specification are clear that "ink" as used in claim 10 is simply a "colorant" of any kind. The specification expressly describes "the epoxy material is a mixture of an epoxy resin and a *colorant* (i.e., *the ink*)." '833 Patent at 6:3–5 (emphasis added). There can be no genuine dispute that this is the intended meaning of the term.  The Court should therefore adopt Circular's construction.

 Plaintiff refuses to accept the specification's definition of "ink" or to provide an alternative construction.  Plaintiff instead maintains that the word should receive its plain and ordinary

meaning, without saying what Plaintiff believes that is. There is therefore a dispute over the meaning of this term. As noted in connection with the other terms for which Plaintiff is trying to avoid construction, the Court finding that "ink" deserves its plain and ordinary meaning would be insufficient here. *See Eon Corp.*, 815 F.3d at 1318; *O2 Micro*, 521 F.3d at 1361. The Court should therefore construe this term to settle the apparent dispute between the parties over whether a POSA would understand "ink" in claim 10 to encompass any colorant, as it is clearly written. Because Plaintiff has not given any reason for disputing this construction, the Court should adopt Circular's plain-sense construction as set forth in the specification.

## VI.    Conclusion

Circular has proposed constructions for terms where there is either a material dispute between the parties or where the terms as written are ambiguous. Circular's proposed constructions clarify what the patentees described as their inventions in the specifications of the patents-in-suit. On the contrary, Plaintiff has either refused to provide meaningful explanations why it disagrees with Circular's positions, or has proposed narrowing constructions that are in conflict with the inventions described in the specifications. Circular thus respectfully requests that the Court adopt its claim constructions for the reasons addressed above.

Dated: October 31, 2023                    Respectfully submitted,

**DAVIS & SANTOS, PLLC**                    **ICE MILLER LLP**

Caroline Newman Small                      By: *Tom Rammer*_____
State Bar No. 24056037                         Tom Rammer, (*pro hac vice*)
E-mail: csmall@dslawpc.com                     200 W. Madison Street, Suite 3500
T: (210) 853-5882                              Chicago, IL 60606
F: (210) 200-8395                              Phone: 312-705-6016
719 S. Flores Street                           Facsimile: 312-726-7102
San Antonio, Texas 78204                       Tom.Rammer@icemiller.com

                                               T. Earl LeVere
                                               250 West Street, Suite 700
                                               Columbus, OH 43215
                                               Phone: 614-462-1095
                                               Facsimile: 614-462-5135
                                               Earl.LeVere@icemiller.com

*Attorneys for Defendant and Counterclaim Plaintiff*
*Circular SAS*

**CERTIFICATE OF SERVICE**

I, Tom Rammer, do certify that I have caused a true and correct copy of DEFENDANT CIRCULAR'S OPENING CLAIM CONSTRUCTION BRIEF to be electronically filed with the Clerk of the Court using the CM/ECF system which sent electronic notification of such filing to all those individuals currently electronically registered with the Court.

This, the 31st day of October, 2023.

*Tom Rammer*
Tom Rammer