UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| ŌURA HEALTH OY, <br><br> Plaintiff and Counterclaim Circular, <br><br> v. <br><br> CIRCULAR SAS, <br><br> Circular and Counterclaim Plaintiff. | Case No. 6:22-cv-478 <br><br> JURY TRIAL DEMANDED |

**DEFENDANT CIRCULAR'S REPLY CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................................ii

TABLE OF AUTHORITIES ......................................................................................................... iii

I.   Introduction ........................................................................................................... 1
II.  Level Of Ordinary Skill......................................................................................... 1
III. Disputed Claim Terms........................................................................................... 1
     A.  '429 Patent, Claims 1, 8: "using the obtained user's movements to determine a nature of the period, wherein the nature of the period is selected from an activity period and a rest period".............................................................................. 1
     B.  '429 Patent, Claim 5: "a sleep balance"................................................. 3
     C.  '429 Patent, Claim 8: "means for measuring at least one biosignal of the user"........................................................................................................ 4
     D.  '429 Patent, Claims 8, 9: "means for measuring the user's movements during an active period and the rest period"..................................................... 6
     E.  '833 Patent, Claim 1: "inner surface"..................................................... 7
     F.  '833 Patent, Claim 6: "the cavity a bottom of the cavity"
         '833 Patent, Claim 7: "a bottom of the at least one cavity" .............................. 9
     G.  '833 Patent, Claim 10: "ink"................................................................ 10
IV.  Conclusion .......................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*Chef Am., Inc. v. Lamb–Weston, Inc.*,
  358 F.3d 1371 (Fed. Cir. 2004) ............................................................................................... 9

*Cole v. Kimberly–Clark Corp.*,
  102 F.3d 524 (Fed. Cir. 1996) ......................................................................................... 5, 6, 7

*EMI Group N. Am., Inc. v. Cypress Semiconductor Corp.*,
  268 F.3d 1342 (Fed. Cir. 2001) ............................................................................................... 2

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*,
  815 F.3d 1314 (Fed. Cir. 2016) ......................................................................................... 8, 10

*Hafeman v. LG Elecs., Inc.*,
  No. 621CV00696ADADTG, 2023 WL 2978968 (W.D. Tex. Apr. 17, 2023) .......................... 9

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
  755 F.3d 1367 (Fed. Cir. 2014) ........................................................................................... 5, 8

*Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*,
  488 F.3d 982 (Fed. Cir. 2007) ................................................................................................. 4

*Honeywell Int'l, Inc. v. Int'l Trade Comm'n*,
  341 F.3d 1332 (Fed. Cir. 2003) ............................................................................................... 2

*IQASR LLC v. Wendt Corp.*,
  825 F. App'x 900 (Fed. Cir. 2020) ........................................................................................ 10

*Irdeto Access, Inc. v. Echostar Satellite Corp.*,
  383 F.3d 1295 (Fed. Cir. 2004) ............................................................................................... 4

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) ................................................................................................. 8

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) ................................................................................................... 4

*Maytag Corp. v. Electrolux Home Products, Inc.*,
  411 F. Supp. 2d 1008 (N.D. Iowa 2006) ................................................................................. 4

*Myco Indus., Inc. v. BlephEx, LLC*,
  955 F.3d 1 (Fed. Cir. 2020) ..................................................................................................... 4

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014) .............................................................................................................. 10

*O2 Micro Int'l. Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008) ............................................................................................... 9

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*,
  35 F.4th 1367 (Fed. Cir. 2022) ................................................................................................ 9

*Rembrandt Data Techs., LP v. AOL, LLC*,
  641 F.3d 1331 (Fed. Cir. 2011) ..................................................................................... 5, 6, 7, 9

*TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*,
  375 F.3d 1126 (Fed. Cir. 2004) ............................................................................................... 5

*Via Vadis, LLC v. Buffalo Americas, Inc.*,
  No. A-14-CV-808-LY, 2016 WL 5239626 (W.D. Tex. Sept. 20, 2016) ................................... 3
*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) ............................................................................................... 4

**<u>Statutes</u>**
35 U.S.C. § 112(b) ................................................................................................................. 1, 9
35 U.S.C. § 112(f) ............................................................................................................... 4, 5, 6

## I. Introduction

Defendant Circular ("Circular") has proposed constructions that clarify the meaning of ambiguous and poorly written claim terms in light of the claims as a whole and the disclosures of the specification. In responding, Plaintiff Ōura Health Oy ("Plaintiff" or "Ōura") repeatedly ignores the plain language of the patents' specifications, applies inconsistent logic, and defies bedrock principles of claim construction. In contrast, for the reasons explained in Circular's Opening Claim Construction Brief (ECF No. 37) ("Def. Br.") and below, Circular's proposed constructions are true to the intrinsic evidence and faithfully abide by the relevant case law. Accordingly, the Court should adopt Circular's constructions.

## II. Level Of Ordinary Skill

The parties have proposed different but substantially equivalent definitions of the relevant person of ordinary skill in the art ("POSA"). There are no meaningful distinctions between the parties' proposals that would impact the Court's claim construction determinations. Circular, however, reserves the right to advocate for the definition that Circular proposed when addressing issues of invalidity or noninfringement.

## III. Disputed Claim Terms

### A. '429 Patent, Claims 1, 8: "using the obtained user's movements to determine a nature of the period, wherein the nature of the period is selected from an activity period and a rest period"

| CIRCULAR'S PROPOSAL | PLAINTIFF'S PROPOSAL |
|---|---|
| The term is indefinite under 35 U.S.C. § 112(b) .<br><br>OR<br><br>"based on the collected data regarding the user's movements, identifying a period of time when the user is at rest and a period of time when the user is active" | No construction is necessary. This term is self-explanatory within the context of the claim, and therefore should receive its plain and ordinary meaning.<br><br>**Alternative Proposal:**<br>"based on the collected data regarding the user's movements, identifying a period of time when the user is at rest *or* a period of time when the user is active." |

The parties' positions are close. Both agree that "using the obtained user's movements" is properly construed as "based on the collected data regarding the user's movements." *See* Plaintiff's Resp. Brief ("Resp."), ECF No. 40 at 5. This construction clarifies how a POSA should "determine" a "nature" of a period. Def. Br. at 4–5.

The single difference between Circular's proposed construction and Plaintiff's is over a conjunction. Plaintiff's disjunctive "or" reads this claim term in a vacuum. Adoption of Plaintiff's construction would fail to address the fundamental problem that determining *either* an activity period *or* a rest period would render the remaining steps of the claimed method inoperable. Claims 1 and 8 require that the method practices steps of determining *both* an activity period and a rest period. *See* '429 Patent at claims 1, 8 (requiring the steps of "determining a rest summary for *the rest period*" and then "determining an activity summary for *the activity period*") (emphasis added). These later steps of the method cannot be completed if a POSA only determines the nature of an activity period *or* a rest period—the POSA must identify periods that belong to both categories. *See* Def. Br. at 5–6. Thus, Plaintiff's proposed "claim construction would render the claim invalid for lack of enablement…." *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1341 (Fed. Cir. 2003) (*citing EMI Group N. Am., Inc. v. Cypress Semiconductor Corp.*, 268 F.3d 1342, 1348 (Fed. Cir. 2001)).

In a footnote, Plaintiff states that it "is amenable to Defendant's proposed claim construction that rewrites the disputed phrase to a non-Markush format so long as the proposed construction accurately captures that the nature of *the* period is either an activity period or a rest period." Resp. at 7 n. 1 (emphasis added). But Plaintiff repeats the same fundamental flaw by requiring a POSA "to determine a nature of *the* period," without first defining what *a* period is (i.e., it has no antecedent basis). *See* Def. Br. at 5 (citing *Via Vadis, LLC v. Buffalo Americas, Inc.*,

No. A-14-CV-808-LY, 2016 WL 5239626, at *7 (W.D. Tex. Sept. 20, 2016) (subsequent history omitted) (finding "the lack of antecedent basis and inability of a person of ordinary skill in the art to determine to what the term is referring renders the limitation indefinite.")). A POSA would understand that any period of a user's movement (or lack of movement) is either a rest period or an activity period. *See* '429 Patent at 5:30–39 ("the step of measuring or obtaining the user's movements provides movement data …. The obtained movement data … is typically used to determine whether a moment of time belongs to the activity period or the rest period …."). Circular's construction is in line with this understanding and ensures that a POSA practicing the method and system of claims 1 and 8 (and their respective dependent claims) determines the nature of at least one activity period and at least one rest period.

Without collecting data on both types of periods, it would be impossible to complete the remaining steps of the claims. *See* '429 Patent at claims 1 and 8. The Court should therefore reject Plaintiff's proposal adopt Circular's construction.

**B.     '429 Patent, Claim 5: "a sleep balance"**

| CIRCULAR'S PROPOSAL | PLAINTIFF'S PROPOSAL |
|---|---|
| "the sum of how much accumulated sleep over the previous weeks differs from individual sleep needs" | No construction is necessary. This term is self-explanatory within the context of the claim, and therefore should receive its plain and ordinary meaning. |

"A sleep balance" has no common understanding nor is it a term of art known by a POSA, and Plaintiff makes no such argument. Instead, Plaintiff spends pages of its Response quibbling over punctuation in what is a clear explanation of how the inventors intended this term to be understood. Resp. 7–9. Even accepting Plaintiff's argument that the use of a semicolon instead of a colon renders the description of "sleep balance" as merely an example instead of an express definition, the specification at a minimum defines the term "by implication." *Vitronics Corp. v.*

*Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("The specification acts as a dictionary when it … defines terms by implication") (citing *Markman v. Westview Instruments., Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996)).

Beyond arguing punctuation, Plaintiff fails to explain how a POSA would understand the term "sleep balance." *See Maytag Corp. v. Electrolux Home Products, Inc.*, 411 F. Supp. 2d 1008, 1037–38 (N.D. Iowa 2006) ("The court does not agree with Maytag's assertion that terms to be given their 'ordinary meanings' do not require any construction."). Without a meaning of a term in the art, the specification usually supplies the best context for deciphering claim meaning. *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 991 (Fed. Cir. 2007) (*citing Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004)). Here, Circular's proposed construction draws clear support from the patent specification. Given the absence of any contrary explanation by Plaintiff, the Court should adopt Circular's construction.

### C. '429 Patent, Claim 8: "means for measuring at least one biosignal of the user"

| CIRCULAR'S PROPOSAL | PLAINTIFF'S PROPOSAL |
|---|---|
| No construction needed | Governed by 35 U.S.C. § 112(f).<br><br>**CLAIMED FUNCTION**:<br>"measuring at least one biosignal of the user."<br><br>**PLAINTIFF'S PROPOSED STRUCTURE**:<br>"one or more of optical electronics, electrodes, or temperature sensor." |

Plaintiff's response makes clear that its intention in invoking 35 U.S.C. § 112(f) for this term is to narrow this broad claim term down to three specific examples from the specification. *See* Resp. at 11–12. Plaintiff's proposed means for measuring improperly attempts to limit this term to only those types of sensors included in Ōura's commercial embodiment, i.e., product. *See Myco Indus., Inc. v. BlephEx, LLC*, 955 F.3d 1, 15 (Fed. Cir. 2020) ("[C]laim construction …

focuses on the recited limitations of the claims, not the features of a commercial embodiment of the invention."). Plaintiff's approach therefore violates black letter law of claim construction and should be rejected. *See Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) ("While we read claims in view of the specification, of which they are a part, ***we do not read limitations from the embodiments in the specification into the claims***." (emphasis added)).

Plaintiff does not—and cannot—dispute that the "means for measuring at least one biosignal of the user" limitation "convey[s] sufficient structure to one of ordinary skill in the art to overcome the presumption of treatment under § 112[(f)]." *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1341 (Fed. Cir. 2011); *see also TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.,* 375 F.3d 1126, 1135 (Fed. Cir. 2004) (holding that the "pumping means" limitation in a patent was not a means-plus-function limitation because the limitation recited not only a pumping means but also its structure, location, and operation). Here, the specification specifically defines "biosignals" to include "an electrocardiogram (EKG or ECG), a photoplethysmogram (PPG), an electromyogram (EMG), an electroocylogram (EOG), a heart rate, a heart rate variability, body temperature, a resting heart rate, an average heart rate and signals related to breathing." '429 Patent at 6:7–15. The specification tells a POSA precisely what structures the claims include. An express construction is thus unnecessary under section 112(f) because the specification clearly defines the universe of covered structures. *See Rembrandt*, 641 F.3d at 1341; *see also Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996).

Plaintiff's attempt to collapse "means for measuring at least one biosignal of the user" down to only the use of "one or more of optical electronics, electrodes, or temperature sensor [*sic*]" ignores express disclosures of other structures in the specification. Importantly, Plaintiff's narrow structures may fail to properly measure the "breathing rate" biosignal (which is plainly a signal

"related to breathing"), which the specification expressly teaches may be measured by a variety of apparatus, including with "[a] sensor attached to bed, [a] microphone, [and/or] [a] video recording," among other structures. '429 Patent at 23:2–5. Thus, if the Court accepts Plaintiff's insistence on invoking 35 U.S.C. § 112(f), Plaintiff's proposed structure cannot be adopted without including the wide variety of other structures disclosed in the specification.

### D. '429 Patent, Claims 8, 9: "means for measuring the user's movements during an active period and the rest period"

| CIRCULAR'S PROPOSAL | PLAINTIFF'S PROPOSAL |
|---|---|
| "means for collecting data regarding the user's movements during an activity period and during the rest period" | Governed by 35 U.S.C. § 112(f).<br><br>**CLAIMED FUNCTION**:<br>"measuring the user's movements"<br><br>**ALTERNATE CLAIMED FUNCTION**:<br>"collecting data regarding the user's movements during an activity period and during the rest period"<br><br>**PLAINTIFFS' PROPOSED STRUCTURE**:<br>"at least one motion sensor." |

The parties now agree that "measuring" means "collecting data," which data is necessary to perform the remainder of the steps in claims 8 and 9. Resp. at 13. The parties now only disagree whether a "means for collecting data regarding the user's movements" is "self-descriptive to one of ordinary skill in the art." *Rembrandt*, 641 F.3d at 1341; *see also Cole*, 102 F.3d at 531.

Here, again, Plaintiff insists on invoking Section 112(f), but Plaintiff's proposed structure of "at least one motion sensor" fails to provide any meaning or clarification to this term. Plaintiff's proposed construction is circular because Plaintiff provides no meaningful distinction between "measuring movements" and "sensing motion." Indeed, when attempting to point to *structures* identified as motion sensors in the specification, Plaintiff only quotes descriptions of the *function* of motion sensors:

> The specification of the '429 patent clearly explains that a "motion sensor is configured to generate motion data that is indicative of the movements of the user. For example, the motion sensor may be configured to determine linear motion information, rotational motion information, and the like." '429 patent at 7:4–8.

Resp. at 14. Plaintiff apparently agrees that a POSA would discern what structures could accomplish the goal of collecting data regarding the user's movements without specifically defining a "motion sensor." There is therefore no reason for the Court to engage in an analysis under Section 112(f). *See Rembrandt*, 641 F.3d at 1341 (finding that terms that are self-descriptive to a POSA do not implicate § 112(f)) ; *see also Cole*, 102 F.3d at 531 (same).

Moreover, Plaintiff's Response ignores the specification's teachings that motion data can be collected "from a motion artifact of a biosignal such as an electrocardiogram (EKG), a PPG, an electromyogram (EMG), or data from global positioning system (GPS)." '429 Patent at 22:57–67. While these specific structures are "means for collecting data regarding the user's movements" expressly disclosed in the specification, it would be inaccurate to call a motion artifact from an EKG a "motion sensor." The difficulty in precisely defining "motion sensor," coupled with the variety of types of movement described in the specification, explains why the inventors chose to use "means for" in this claim term: the limitation itself "convey[s] sufficient structure to one of ordinary skill in the art to overcome the presumption of treatment under § 112[(f)]." *Rembrandt*, 641 F.3d at 1341. This term therefore needs no express construction.

### E. '833 Patent, Claim 1: "inner surface"

| CIRCULAR'S PROPOSAL | PLAINTIFF'S PROPOSAL |
|---|---|
| "surface of the wearable electronic device that, when the device is worn, is in contact with the skin of the user and not externally visible" | No construction is necessary. This term is self-explanatory within the context of the claim, and therefore should receive its plain and ordinary meaning. |

Plaintiff's Response points to the single ring embodiment of the claimed invention to describe the "inner surface." Resp. at 15–16. Although "inner surface" may make sense were the

claims limited to this ring embodiment, claim 1 covers "wearable electronic devices" other than a ring. *Cf.* '833 Patent at dependent claim 12 (limiting the "wearable electronic device according to claim 1" to "*a ring* configured to be worn on a finger" (emphasis added)) to *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) ("[T]he presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim."); *Hill-Rom*, 755 F.3d at 1374 (same). It is not clear from the plain claim language what is meant by "inner surface" if the embodiment is something other than a ring.

Plaintiff's Response proposes a new construction for this term by stating that the "'inner surface' is simply a surface opposite to the 'outer surface.'" Resp. at 16 (citing '833 patent at 10:16–20). However, this construction requires a second construction of "outer surface" in order to understand to what the "inner surface" is opposite. The specification thankfully provides a description for both "inner surface" and "outer surface" by expressly explaining that the "inner surface contacts the skin of the user, whereas the outer surface is opposite to the inner surface and externally visible." '833 Patent at 4:23–25. The use of "whereas" means "while on the contrary."[1] The specification describes the important aspect of the "inner surface" (it "contacts the skin of the user") ***while, on the contrary,*** "the outer surface is opposite to the inner surface and externally visible." If the outer surface is externally visible "on the contrary" to the inner surface, then the inner surface must not be externally visible. Circular's construction thus adopts the specification's description of the "inner surface" along with Plaintiff's suggestion that it is "simply a surface opposite to the 'outer surface.'" The Court should therefore adopt Circular's construction of "inner surface" in order to resolve the possible ambiguity of this term and the apparent dispute between the parties. *See Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1318 (Fed. Cir. 2016)

---

[1] "Whereas," definition, *available at* https://www.dictionary.com/browse/whereas (last visited, Dec. 13, 2023).

(quoting *O2 Micro Int'l. Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008)) ("[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute.'").

### F. '833 Patent, Claim 6: "the cavity a bottom of the cavity"
### '833 Patent, Claim 7: "a bottom of the at least one cavity"

| CIRCULAR'S PROPOSAL | PLAINTIFF'S PROPOSAL |
|---|---|
| The term is indefinite under 35 U.S.C. § 112(b). | No construction is necessary. This term is self-explanatory within the context of the claim, and therefore should receive its plain and ordinary meaning. This term is not indefinite. |

Plaintiff fails to acknowledge the clear grammatical error in this phrase. Rather Plaintiff asks the Court to rewrite this claim to make it make sense. This is in direct contrast to the law set forth by the Federal Circuit, which "repeatedly and consistently has recognized that courts may not redraft claims, whether to make them operable or to sustain their validity." *Rembrandt*, 641 F.3d at 1339 (citing *Chef Am., Inc. v. Lamb–Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004)).

Claim 6 is meaningless as written. Plaintiff provides no explanation of what the claim term—which Plaintiff contends "is self-explanatory within the context of the claim, and therefore should receive its plain and ordinary meaning" (Resp. at 18 (quoting *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 35 F.4th 1367, 1373 (Fed. Cir. 2022)))—means to a POSA. Instead, Plaintiff's Response asks the Court to rewrite this claim to say what Plaintiff argues it was "intended" to say. Resp. at 17–19. But "[i]t is not the Court's job to rewrite (or proofread) claim language." *Hafeman v. LG Elecs., Inc.*, No. 621CV00696ADADTG, 2023 WL 2978968, at *14 (W.D. Tex. Apr. 17, 2023). Plaintiff provides no justification for the Court to redraft this claim language. Instead, the Court should find claim 6 indefinite because it "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572

U.S. 898, 901 (2014).

If the Court were to find claim 6 indefinite, Plaintiff does not dispute that claim 7 would also fall. For the reasons discussed above, the Court should find claim 7 indefinite for its dependency on indefinite claim 6. *See IQASR LLC v. Wendt Corp.*, 825 F. App'x 900, 901, 908 (Fed. Cir. 2020) (affirming district court's judgment holding that "independent claim 1 (***and thus the remaining claims, all dependent*** from claim 1) indefinite." (emphasis added)).

### G. '833 Patent, Claim 10: "ink"

| CIRCULAR'S PROPOSAL | PLAINTIFF'S PROPOSAL |
|---|---|
| "colorant" | No construction is necessary. This term is self-explanatory within the context of the claim, and therefore should receive its plain and ordinary meaning. |

Circular's proposed construction is not "simply for the sake of construing" (Resp. at 20), but, instead, is necessary to make clear that "ink" has the meaning expressed in the specification ("the epoxy material is a mixture of an epoxy resin and a *colorant* (i.e., *the ink*)." ('833 patent at 6:3–5) (emphasis added)), ***and does not include*** any functional aspect or purpose that Plaintiff is apparently planning to interject later on. Plaintiff's Response makes clear that Plaintiff plans to use the "plain and ordinary meaning" of the term "ink" to import functional limitations into the claims later in this litigation. For no apparent claim construction reason, Plaintiff describes the function and the "purpose" of the ink in a single embodiment. Resp. at 20 (citing '833 patent at 5:63–6:3). There is therefore a meaningful dispute between the parties necessitating the Court's intervention. *See Eon Corp.*, 815 F.3d at 1318; *O2 Micro*, 521 F.3d at 1361.

### IV. Conclusion

For at least the foregoing reasons, the disputed claim terms of the patents-in-suit, when considered in accordance with the intrinsic evidence, favor Circular's constructions. Circular respectfully requests that the Court adopt Circular's proposed constructions.

Dated: December 19, 2023                Respectfully submitted,

| | |
|---|---|
| **DAVIS & SANTOS, PLLC** | **ICE MILLER LLP** |
| Caroline Newman Small | By: *Tom Rammer* |
| State Bar No. 24056037 | Tom Rammer, (*pro hac vice*) |
| E-mail: csmall@dslawpc.com | 200 W. Madison Street, Suite 3500 |
| T: (210) 853-5882 | Chicago, IL 60606 |
| F: (210) 200-8395 | Phone: 312-705-6016 |
| 719 S. Flores Street | Facsimile: 312-726-7102 |
| San Antonio, Texas 78204 | Tom.Rammer@icemiller.com |
| | |
| | T. Earl LeVere |
| | 250 West Street, Suite 700 |
| | Columbus, OH 43215 |
| | Phone: 614-462-1095 |
| | Facsimile: 614-462-5135 |
| | Earl.LeVere@icemiller.com |

*Attorneys for Defendant and Counterclaim Plaintiff Circular SAS*

- 11 -

**CERTIFICATE OF SERVICE**

I, Tom Rammer, do certify that I have caused a true and correct copy of DEFENDANT CIRCULAR'S REPLY CLAIM CONSTRUCTION BRIEF to be electronically filed with the Clerk of the Court using the CM/ECF system which sent electronic notification of such filing to all those individuals currently electronically registered with the Court.

This, the 19th day of December, 2023.

*Tom Rammer*
Tom Rammer