IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| ŌURA HEALTH OY,<br><br>*Plaintiff,*<br><br>v.<br><br>CIRCULAR SAS,<br><br>*Defendant.* | **CASE NO. 6:22-cv-00478-ADA**<br><br>**JURY TRIAL DEMANDED** |
| CIRCULAR SAS,<br><br>*Counterclaim-Plaintiff,*<br><br>v.<br><br>ŌURA HEALTH OY,<br><br>*Counterclaim-Defendant.* | |

**PLAINTIFF OURA'S
<u>SUR-REPLY CLAIM CONSTRUCTION BRIEF</u>**

# TABLE OF CONTENTS

ARGUMENTS ..................................................................................................................................1

    A.    U.S. Patent No. 10,842,429 ........................................................................................1

        1.    Term No. 1: "using the obtained user's movements to determine a nature of the period, wherein the nature of the period is selected from an activity period and a rest period" ....................................................1

        2.    Term No. 2: "a sleep balance" ...................................................................3

        3.    Term Nos. 3 and 4: Means-plus-function limitations .................................4

    B.    U.S. Patent No. 10,893,833 ........................................................................................8

        1.    Term No. 5: "inner surface" ........................................................................8

        2.    Term Nos. 6 and 7: The definite terms ........................................................9

        3.    Term No. 8: "ink" .....................................................................................10

II.    CONCLUSION .....................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Lab'ys v. Baxter Pharm. Prod., Inc.*,
    334 F.3d 1274 (Fed. Cir. 2003)................................................................................................1

*Barco v. Alpine Silica, LLC*,
    No. 6:21-cv-01274-ADA-JCM, 2023 WL 2541980 (W.D. Tex. Feb. 2, 2023),
    report and recommendation adopted, 2023 WL 2544342 (W.D. Tex. Mar. 15,
    2023) ........................................................................................................................................4

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*,
    262 F.3d 1258 (Fed. Cir. 2001)............................................................................................3, 4

*Cole v. Kimberly-Clark Corp.*,
    102 F.3d 524 (Fed. Cir. 1996)...............................................................................................5, 6

*In re Downing*,
    754 F. App'x 988 (Fed. Cir. 2018) ...........................................................................................3

*Furnace Brook LLC v. Overstock.com, Inc.*,
    230 F. App'x 984 (Fed. Cir. 2007) .......................................................................................6, 8

*Hafeman v. LG Elecs., Inc.*,
    No. 6:21-cv-00696-ADA-DTG, 2023 WL 2978968 (W.D. Tex. Apr. 17, 2023)....................10

*Maxell, Ltd. v. Amperex Tech. Ltd.*,
    No. W-21-CV-00347-ADA, 2022 WL 16858824 (W.D. Tex. Nov. 10, 2022).........................2

*Paid Search Engine Tools, LLC v. Yahoo! Inc.*,
    No. 2:07-CV-403-DF-CE, 2010 WL 1904545 (E.D. Tex. May 10, 2010)................................2

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*,
    35 F.4th 1367 (Fed. Cir. 2022) .................................................................................................9

*Personalized User Model LLP v. Google Inc.*,
    No. 09-525-LPS, 2012 WL 295048 (D. Del. Jan. 25, 2012) ....................................................2

*Rembrandt Data Techs. v. AOL, LLC*,
    641 F.3d 1331 (Fed. Cir. 2011)................................................................................6, 7, 9, 10

*Thorner v. Sony Comput. Ent. Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012).................................................................................................3

*TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*,
    375 F.3d 1126 (Fed. Cir. 2004).................................................................................................5

*TriMed, Inc. v. Stryker Corp.*,
    514 F.3d 1256 (Fed. Cir. 2008)..................................................................................................5

**Statutes**

35 U.S.C. §112(f) ............................................................................................................... *passim*

iii

# ARGUMENTS

Despite a second chance in its Reply, Circular still hasn't supported its proposed claim constructions with intrinsic evidence. Circular also has not shown that its proposals reflect what a POSITA would have understood as the meaning of the claim terms in the context of the asserted patents. Accordingly, for the reasons set forth in Oura's Responsive brief and further discussed in detail below, Plaintiff Oura's proposed constructions should be adopted.

A.   U.S. Patent No. 10,842,429

   1.   **Term No. 1**: "using the obtained user's movements to determine a nature of the period, wherein the nature of the period is selected from an activity period and a rest period"

Defendant does not rebut Oura's position that the claim limitation is drafted in a Markush-type format that when rewritten in non-Markush structure means that the phrase "the nature of the period" is properly construed to be an activity period *or* rest period. *See* Def. Reply Br. (Dkt. 41) at 1-3; *Abbott Lab'ys v. Baxter Pharm. Prod., Inc.*, 334 F.3d 1274, 1280 (Fed. Cir. 2003) ("if 'wherein R is a material selected from the group consisting of A, B, C and D' is a proper limitation then 'wherein R is A, B, C or D' shall also be considered proper."). Defendant also acknowledges that a "POSA would understand that any period of a user's movement (or lack of movement) is *either* a rest period *or* an activity period." Dkt. 41 at 3.[1] On these bases alone, the Court should find that the phrase has a plain and ordinary meaning and would be understood by a POSITA.

Yet the Defendant insists that references to both the "activity period" and "rest period" in other portions of the claim must be tied to the specific limitation of "using the obtained user's movement to determine a nature of the period" otherwise the claim risks invalidity. Dkt. 41 at 1. Defendant's dispute, however, appears to be focused more on enablement rather than

---

[1] All emphasis added unless stated otherwise.

1

indefiniteness. *See* Dkt. 41 at 2 ("These later steps of the method cannot be completed if a POSA only determines the nature of an activity period *or* a rest period—the POSA must identify periods that belong to both categories. Thus, Plaintiff's proposed claim construction would render the claim invalid for lack of enablement . . . .") (internal citation omitted). Enablement is not an issue addressable through claim construction. *Maxell, Ltd. v. Amperex Tech. Ltd.*, No. W-21-CV-00347-ADA, 2022 WL 16858824, at *24 (W.D. Tex. Nov. 10, 2022) ("none of Defendant's arguments have anything to do with indefiniteness. Rather, Defendant's arguments appear to be directed towards enablement").

Even within the indefiniteness or enablement realm, Defendant's argument is flawed because it ignores that each step of the method claim does not need to be performed in any specific order or even during the same cycle. *Personalized User Model LLP v. Google Inc.*, No. 09-525-LPS, 2012 WL 295048, at *28 (D. Del. Jan. 25, 2012) (refusing to impose an order on the steps or require that every step occur in each cycle); *Paid Search Engine Tools, LLC v. Yahoo! Inc.*, No. 2:07-CV-403-DF-CE, 2010 WL 1904545, at *12 (E.D. Tex. May 10, 2010) (same). Indeed, the specification specifically notes that in assessing the readiness score, one or more steps can be "provided in a different sequence without departing from the scope of the claims herein." Ex. B ('429 patent) at 22:22-26. Thus, a POSITA would understand that the method, during one cycle, may determine that the "nature of the period" is an activity period (e.g., if the user is walking at that time) and perform the steps associated with the activity period, and in a separate cycle determine that the user is in the rest period (e.g., if the user is asleep) and therefore perform the steps associated with the rest period. Therefore, Defendant's implausibility argument that the "later steps of the method cannot be completed if a POSA only determines the nature of an activity period *or* a rest period" (Dkt. 41 at 2) during each cycle is contrary to the

case law, the plain reading of the claim, and the intrinsic record. Defendant is seeking to inject complexity where there is none.

Finally, as for Defendant's antecedent argument on "the period," Defendant ignores that "activity period" and "rest period" are associated with the entire phrase "a nature of the period" (and not simply the single term "period"). Ex. B ('429 patent) at 24:60-63 ("determine *a nature of the period*, wherein *the* nature of the period is selected from an activity period and a rest period"); 5:27-29 ("determine whether the user is active or resting, i.e., to select *the* nature of the period"). The lack of antecedent basis on the term "period" within the full phrase "a nature of the period" "does not render a claim indefinite as long as the claim 'apprises one of ordinary skill in the art of its scope and, therefore, serves the notice function required by § 112 ¶ 2.'" *In re Downing*, 754 F. App'x 988, 996 (Fed. Cir. 2018) (finding that lack of an antecedent basis for "the end user" did not render the claim indefinite).

For all the foregoing reasons, the Court should find that the disputed phrase has a plain and ordinary meaning. If any construction is necessary, Plaintiff requests that its alternative proposal be adopted.

**2.   Term No. 2: "a sleep balance"**

Tacitly conceding that there is no express lexicography, Defendant now argues that perhaps "the specification at a minimum defines the term 'by implication.'" Dkt. 41 at 3-4. But for a term to be redefined "by implication," "the 'implied' redefinition must be so clear that it equates to an explicit one." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1368 (Fed. Cir. 2012); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001) ("when a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'"). That is not the case here.

Defendant seeks to associate an example of calculating the sleep balance over a sample period (e.g., "past 1-3 weeks") as its definition "by implications." A single example, however, does not meet the clear, repeated, and consistent use standard for a term to be given an implied definition. *Id.* At best, the specification associates the term "sleep balance" to "sleep debt," both of which are well understood terms. *See* Ex. B ('429 patent) at 12:1 ("Sleep balance (sleep debt)"); *See also id.* at 11:21-27. A POSITA would have understood the plain and ordinary meaning of "sleep balance" in view of the specification. Thus, no construction is necessary because the term "sleep balance" is self-explanatory within the context of the claim and the specification, and therefore should receive its plain and ordinary meaning.

3.  **Term Nos. 3 and 4: Means-plus-function limitations**

    a.  **Term No. 3: "means for measuring at least one biosignal of the user"**

For the first time during the claim construction process, Defendant in its reply brief argues that the disputed "means for" phrase may convey sufficient structure to overcome the 35 U.S.C. §112(f) presumption. *See* Dkt. 41 at 5.[2] Waiver aside, Defendant's argument is also wrong on both the facts and the law.

Defendant first falsely claims that "Plaintiff does not—and cannot—dispute that the 'means for measuring at least one biosignal of the user' limitation 'conveys sufficient structure to

---

[2] In Defendant's opening brief, Circular contested the need for any construction on the basis that there may be "standard ways to measure [] biosignal known in the art," and therefore "there is no need to construe this term . . . ." Dkt. 37 at 9. Defendant never raised its new argument that the claim limitation itself might include sufficient structure to overcome the §112(f) presumption, a deficiency that Plaintiff highlighted. Dkt. 40 at 10 ("Defendant does not proffer any argument against the presumption that the two terms are governed by §112(f)."). By failing to raise this issue until the reply brief, Defendant has now waived its new line of argument. *Barco v. Alpine Silica, LLC*, No. 6:21-cv-01274-ADA-JCM, 2023 WL 2541980, at *4 (W.D. Tex. Feb. 2, 2023), report and recommendation adopted, 2023 WL 2544342 (W.D. Tex. Mar. 15, 2023) ("arguments raised for the first time in a reply brief are generally waived.'") (Internal citations omitted).

4

one of ordinary skill in the art to overcome the presumption of treatment under §112(f)." Dkt. 41 at 5 (internal citations omitted). But Plaintiff does (and in fact did) dispute this exact notion. *See* Dkt. 40 at 10 ("neither limitation includes sufficient structure to overcome the [§112(f)] presumption"). And as support, Plaintiff pointed to the Patent Office's similar conclusion that the disputed "means for" terms were governed by §112(f) because they lacked sufficient structure. *Id.*; *see also* Ex. C (Dkt. 40-3) at 3-4. Defendant ignores this inconvenient fact.

Defendant is also wrong in its interpretation of the case law. The test for whether the presumption of means-plus-function can be overcome is whether **the claim limitation** itself—not the specification—recites definite structure that performs the claimed function. *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259–60 (Fed. Cir. 2008) ("Sufficient structure exists when the **claim language specifies the exact structure** that performs the functions in question **without need to resort to other portions of the specification** or extrinsic evidence for an adequate understanding of the structure."). Defendant does not point to *any* structure in the claim limitation that could perform the claimed function. *See* Dkt 41 at 5. Instead, Defendant acknowledges that the "specification tells a POSA precisely what structures the claims include." *Id.* The simple fact that Defendant has to resort to the specification compels a finding that the disputed limitation is a means-plus-function limitation.

Even the cases that Defendant cites undercut its argument. *Id.* at 5. For example, in *TI Grp. v. VDO*, the Federal Circuit held that "pumping means" was not a means-plus-function limitation because the limitation itself recited not only the structure, but the location and the operation of the claimed function without the need to turn to the specification. *TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1135 (Fed. Cir. 2004). Likewise in *Cole v. Kimberly-Clark Corp.*, the Federal Circuit concluded that the "perforation means . . . for

5

tearing" limitation "describes the structure supporting the tearing function (i.e., perforations) . . . [and] also its location (extending from the leg band to the waist band) and extent (extending through the outer impermeable layer)." *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 531 (Fed. Cir. 1996). And, finally, in *Rembrandt v. AOL*, the Federal Circuit relied heavily on expert testimony that the structural qualifiers "fractional rate encoding means" and "trellis rate encoding" within the claim limitation itself were "self-descriptive to one of ordinary skill in the art." *Rembrandt Data Techs. v. AOL, LLC*, 641 F.3d 1331, 1341 (Fed. Cir. 2011). In contrast, the "means for measuring at least one biosignal of the user" limitation here lacks any structure.

Having failed to rebut the presumption, Defendant finally argues that "if the Court accepts Plaintiff's insistence on invoking 35 U.S.C. §112(f), Plaintiff's proposed structure cannot be adopted without including the wide variety of other structures disclosed in the specification." Dkt. 41 at 6. But Defendant does not provide any alternative proposals of its own. Defendant's insistence of including a "wide variety of other structures" does not point to any "specific structure for performing the claimed function; it describes only a generic class of structures" that cannot be treated as a corresponding structure under §112(f) and therefore should be "properly ignored." *Furnace Brook LLC v. Overstock.com, Inc.*, 230 F. App'x 984, 988 (Fed. Cir. 2007).

Thus, in light of Defendant's failure to rebut the §112(f) presumption *and* its failure to propose any alternative structures, this Court should adopt Plaintiff's proposal.

    **b.** **Term No. 4: "means for measuring the user's movements during an active period and the rest period"**

Similar to its flawed arguments on Term No. 3, Defendant repeats its misapplication of the requirement for overcoming the 35 U.S.C. §112(f) presumption. Defendant argues that the phrase "'means for collecting data regarding the user's movements' is 'self-descriptive to one of ordinary skill in the art'" and therefore does not require any construction. Dkt. 41 at 6. But "self-

6

descriptive" in the context of §112(f) presumption does not stand for the proposition that a POSITA could discern the meaning of the phrase or what structures could conceivably accomplish the claimed function, but rather if the structure *disclosed in the claim limitation* is sufficiently well known in the art to be self-descriptive. *Rembrandt Data*, 641 F.3d at 1340. Here, the disputed phrase does not include *any* structure (much less self-descriptive structure) to perform the claimed function of "measuring the user's movements during an active period and the rest period." Thus, §112(f) requires identification of corresponding structure.

Defendant, without proposing any alternative structures of its own, argues against adoption of Plaintiff's proposal because "motion sensor" is allegedly unclear. Dkt. 41 at 6-7. Defendant, however, does not explain why a POSITA would fail to understand the scope of motion sensor in view of the specification that expressly states that "motion sensors" include "accelerometer, a gyroscope, a magnetic field sensor or a combination thereof . . . to generate motion data that is indicative of the movements of the user." '429 patent at 7:1-5; *see also id.* at 7:6-13.[3] The only argument that Defendant musters on this point is that "Plaintiff provides no meaningful distinction between 'measuring movements' and 'sensing motion.'" Dkt. 41 at 6. Defendant's argument on any perceivable distinction between "measuring movements" and "sensing motion" is a red herring because Defendant's own proposed construction for "measuring the user's movements" (that Plaintiff agreed to adopt) is "collecting data regarding the user's movements." *See* Dkt. 40 at 13. And there is no dispute that a POSITA would recognize that a motion sensor "collect[s] data regarding the user's movements." *Id.*

Finally, Defendant argues that there might be additional structures that could collect data

---

[3] Dependent claim 11 that depends from claim 8 further recites that "the means for measuring the user's movements is selected from the group consisting of an accelerometer, a gyroscope and a magnetic field sensor." '429 patent at 26:33-37. Because of claim differentiation, the structure in the independent claim has to be broader than the three specific examples of motion sensors.

7

regarding user's movements outside of a motion sensor such as motion artifacts of a biosignal. Dkt. 41 at 7. But the Federal Circuit has cautioned that although the corresponding structure of a means-plus-function claim element covers all embodiments disclosed in the specification, a disclosure that only suggests a possible alternative embodiment should not be treated as a corresponding structure. *Furnace*, 230 Fed. Appx. at 988. And whether the motion artifacts from biosignals (or any other structures for that matter) should also be part of the corresponding structure is moot because Defendant had multiple opportunities throughout the claim construction process to propose additional structure(s) that it deemed were lacking in Plaintiff's proposal. But at every turn, Defendant chose to stay silent and not offer any proposals of its own. Defendant cannot now complain that Plaintiff's proposal is inadequate.

For the foregoing reasons, Plaintiff requests that Court find that the disputed terms invoke §112(f) and Plaintiff's proposed structure is a corresponding structure.

**B.    U.S. Patent No. 10,893,833**

**1.    Term No. 5: "inner surface"**

Defendant maintains that the term "inner surface" would be understood by a POSITA in the context of a ring form factor. Dkt. 41 at 7-8. But somehow Defendant also argues that "[i]t is not clear from the plain claim language what is meant by 'inner surface' if the embodiment is something other than a ring." Dkt. 41 at 8. In its reply brief, Defendant still does not explain *why* the term would be any less clear based on the type of form factor.

Defendant's entire argument rests on a single sentence in the '833 patent: "The inner surface contacts the skin of the user, whereas the outer surface is opposite to the inner surface and externally visible." '833 patent (Ex. A) at 4:23-25. Defendant argues that the inner surface has to be in complete contrast with all the properties to the outer surface. *See* Dkt. 41 at 8. But the plain reading of the sentence makes it clear that the "whereas" in the claim refers to the fact

that "the outer surface is opposite to the inner surface." Ex. A ('833 patent) at 4:23-25.

Indeed, Defendant's extreme interpretation defies common sense because whether the inner surface "when the device is worn" is visible or not would depend on a number of external factors such as size of the device, size of the user's appendage, and where the device is worn—none of which are accounted for in Defendant's proposed construction. For example, while the inner surface of the ring when worn on one finger may not be externally visible, the same ring when worn on another, perhaps smaller, finger may allow for the inner surface to be visible. Similarly, when the form factor of the device is a watch, a user can elect to wear the watch either tight or loose across his or her wrist contributing to the visibility (or lack thereof) of the inner surface. Defendant's incorporation of the functional use adds to its flawed interpretation.

In sum, "inner surface" has a plain and ordinary meaning that would be well understood by a skilled artisan. The understanding of the straightforward term does not change based on the type of form factor. The Court should therefore decline to construe the term.

**2.**     **Term Nos. 6 and 7: The definite terms**

A court may correct "'obvious minor typographical and clerical errors in patents.'" *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 35 F.4th 1367, 1373 (Fed. Cir. 2022). The issue before the Court on Term Nos. 6 and 7 is whether the reference to "the cavity" (instead of "the *at least one* cavity") and omission of the word "at" are minor typographical errors. The answer is "yes."

Here, the original claim limitation includes all the requisite elements with reference to both the "cavity" and the location where the electronic part is to be arranged (i.e., "bottom of the cavity"). Unlike the cases cited by Defendant, the corrections here are not seeking to insert any new elements or substitute any terms that were not present in the claim as originally drafted. Indeed, in *Rembrandt*, the plaintiff requested insertion of a missing element "'transmitter section for' into the final element . . . thereby adding an apparatus and rendering the claim valid."

9

*Rembrandt Data Techs,* 641 F.3d at 1339. In *Hafeman*, the plaintiff sought to change "the *additional* information" phrase to "the *recovery* information" that had different meaning. *Hafeman v. LG Elecs., Inc.*, No. 6:21-cv-00696-ADA-DTG, 2023 WL 2978968, at *14 (W.D. Tex. Apr. 17, 2023). Neither is the case here. The error here is a textbook example of a typographical error that courts can correct. Therefore, the Court should find that the claims are valid in view of Plaintiff's proposal.

### 3. Term No. 8: "ink"

Finally, Defendant argues that the phrase "ink" requires construction based not on any ambiguity with the term, but rather on an irrational fear that Plaintiff will insert a "functional aspect" or "purpose" of ink later on in the litigation. *See* Dkt. 41 at 10. And the sole support for this fear is Plaintiff's responsive brief providing background information on use of ink in the context of the '833 patent. *Id.* But Defendant suggests that Plaintiff's explanation was "[f]or no apparent claim construction reason" and therefore there is now "a meaningful dispute between the parties necessitating the Court's intervention." *Id.*

Defendant's request to construe "ink" is backwards. Defendant has never (and still has not) offered any explanation why a POSITA would not understand the term in the first place. Plaintiff did not provide any contextual information until its responsive brief, well after Defendant had already suggested that the term required construction. In other words, the alleged "meaningful dispute" did not arise until *after* Defendant had already served its opening brief. Defendant's after-the-fact rationale for why the term needs any construction is inadequate. Simply put, the term needs no construction as it is self-explanatory. Defendant is seeking to raise unnecessary disputes.

## II. CONCLUSION

For the foregoing reasons, Plaintiff's constructions should be adopted.

DATED: January 10, 2024                    Respectfully submitted,

*/s/ Shaun W. Hassett*
Michael E. Jones, State Bar No. 10929400
Shaun W. Hassett, State Bar No. 24074372
**POTTER MINTON**
102 North College, Suite 900
Tyler, TX 75702
Tel: 903.597.8311
mikejones@potterminton.com
shaunhassett@potterminton.com

**ARENTFOX SCHIFF LLP**
Janine A. Carlan (*pro hac vice*)
Jasjit S. Vidwan (*pro hac vice*)
1717 K Street, NW
Washington, DC 20006-5344
Tel: 202.857.6000
janine.carlan@afslaw.com
jasjit.vidwan@afslaw.com

*ATTORNEYS FOR PLAINTIFF ŌURA HEALTH OY*